UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LEROY M. DOUGLAS; and THE DOUGLAS CORP.
OF SILVER LAKE,

                              Plaintiffs,

v.

NEW YORK STATE ADIRONDACK PARK AGENCY;                8:10-CV-0299
PAUL VAN COTT, individually and as an emp. and attorney   (GTS/RFT)
for N.Y.S. Adirondack Park Agency; DOUGLAS MILLER,
individually and as an emp. of the N.Y.S. Adirondack Park
Agency;  MARK ROOKS, individually and as an emp. of the
N.Y.S. Adirondack Park Agency; JOHN BANTA, individually
and as an emp. and attorney for N.Y.S. Adirondack Park Agency;
CURT F. STILES, individually and as a comm'r of the N.Y.S.
Adirondack Park Agency; CECIL WRAY, individually and as a
comm'r of the N.Y.S. Adirondack Park Agency; ADIRONDACK
COUNCIL, INC.; BRIAN HOUSEAL, individually and as a dir.
of the Adirondack Council, Inc.; SCOTT M. LOREY, individually
and as an emp. and officer of the Adirondack Council, Inc.;
BRIAN RUDER, individually, and as member and Chairman of
the bd. of dir. of the Adirondack Council, Inc., and as a member,
dir. and officer of Hawkeye Conservationists, Inc.; HAWKEYE
CONSERVATIONISTS, INC.; and JOHN DOES 1 THROUGH
10 (representing as of yet unknown and unidentified emp. or
officers of N.Y.S. Adirondack Park Agency or emp. or officers of
the Adirondack Park Agency or emp. or officers of the Adirondack
Council, Inc., or Hawkeye Conservationists, Inc.),

                              Defendants.

_____

APPEARANCES:                              OF COUNSEL:

BRIGGS NORFOLK LLP                        MATTHEW D. NORFOLK, ESQ.
  Counsel for Plaintiffs
2296 Saranac Avenue
Lake Placid, New York 12946

HON. ERIC T. SCHNEIDERMAN                 GREGORY J. RODRIGUEZ, ESQ.
Attorney General for the State of New York   SUSAN L. TAYLOR, ESQ.
  Counsel for the APA Defendants          Assistant Attorneys General
The Capitol
Albany, New York 12224

BOND SCHOENECK & KING, PLLC               EDWARD R. CONAN, ESQ.
  Counsel for the AC Defendants
One Lincoln Center
Syracuse, New York 13202

BOUSQUET HOLSTEIN PLLC                    LAWRENCE M. ORDWAY, JR., ESQ.
  Counsel for Defendant Ruder            CECELIA R. CANNON, ESQ.
One Lincoln Center                        JAMES L. SONNEBORN, ESQ.
Syracuse, New York 13202

BRENNAN & WHITE, L.L.P.                   DANIEL J. STEWART, ESQ.
  Counsel for Defendant Hawkeye
163 Haviland Road
Queensbury, New York 12804

HON. GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

Currently pending before the Court, in this civil rights action filed by Leroy M. Douglas

Corporation of Silver Lake ("Plaintiffs") against the New York State Adirondack Park Agency

and six of its employees ("APA Defendants"),[1] the Adirondack Council, Inc., and two of its

---

[1]     The six employees of the New York State Adirondack Park Agency sued are Paul Van Cott, Douglas Miller, Mark Rooks, John Banta, Curt F. Stiles, and Cecil Wray.  (Dkt. No. 1.)

members ("AC Defendants"),[2] Brian Ruder, Hawkeye Conservationists, Inc., and ten John Does, are the following five motions: (1) the APA Defendants' motion to dismiss Plaintiffs' Complaint for failure to state a claim and/or lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(6) and/or 12(b)(1), or, in the alternative, to disqualify Plaintiffs' counsel pursuant to the New York Rules of Professional Conduct (Dkt. No. 40); (2) the AC Defendants' motion to dismiss the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 42); (3) Defendant Hawkeye's motion to dismiss the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 43); (4) Defendant Ruder's motion to dismiss the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 52); and (5) Plaintiffs' cross-motion for leave to amend their Complaint pursuant to Fed. R. Civ. P. 15(a)(2) (Dkt. No. 56).  For the reasons set forth below, the APA Defendants' motion to dismiss is granted in part and denied in part; the AC Defendants' motion to dismiss is granted in part and denied in part; Defendant Hawkeye's motion to dismiss is granted; Defendant Ruder's motion to dismiss is granted in part and denied in part; and Plaintiffs' cross-motion for leave to amend is granted in part and denied in part.

---

[2]     The two members of the Adirondack Council, Inc., referenced above are Brian Houseal and Scott M. Lorey.  (Dkt. No. 1.)  While Brian Ruder is also a member of the Adirondack Council, he is a member of the Hawkeye Conservationists, Inc., and he has appeared through separate counsel in this action.

# TABLE OF CONTENTS

I.     RELEVANT BACKGROUND

II.    GOVERNING LEGAL STANDARDS
       A.    Motion to Dismiss for Failure to State a Claim Pursuant to Fed. R. Civ. P.
             12(b)(6)
       B.    Motion to Dismiss for Lack of Subject-Matter Jurisdiction Pursuant to Fed. R.
             Civ. P. 12(b)(1)
       C.    Motion to Disqualify Opposing Counsel
       D.    Motion to Amend Pursuant to Fed. R. Civ. P. 15(a)(2)

III.   ANALYSIS
       A.    APA Defendants' Motion to Dismiss Plaintiffs' Complaint for Failure to State a
             Claim and/or Lack of Subject-Matter Jurisdiction Pursuant to Fed. R. Civ. P.
             12(b)(6) and/or 12(b)(1), and/or to Disqualify Counsel Pursuant to the New York
             Rules of Professional Conduct
             1.    Plaintiffs' Claims Against APA Defendants
             2.    Summary of APA Defendants' Arguments on Their Motion
             3.    Court's Findings and Conclusions
       B.    AC Defendants' Motion to Dismiss Plaintiffs' Complaint for Failure to State a
             Claim Pursuant to Fed. R. Civ. P. 12(b)(6)
             1.    Plaintiffs' Claims Against AC Defendants
             2.    Summary of AC Defendants' Arguments on Their Motion
             3.    Court's Findings and Conclusions
       C.    Defendant Hawkeye's Motion to Dismiss Plaintiffs' Complaint for Failure to
             State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6)
             1.    Plaintiffs' Claims Against Defendant Hawkeye
             2.    Summary of Defendant Hawkeye's Arguments on Its Motion
             3.    Court's Findings and Conclusions
       D.    Defendant Ruder's Motion to Dismiss Plaintiffs' Complaint for Failure to State a
             Claim Pursuant to Fed. R. Civ. P. 12(b)(6)
             1.    Plaintiffs' Claims Against Defendant Ruder
             2.    Summary of Defendant Ruder's Arguments on His Motion
             3.    Court's Findings and Conclusions
       E.    Plaintiffs' Cross-Motion for Leave to Amend Their Complaint Pursuant to Fed. R.
             Civ. P. 15(a)(2)
             1.    Plaintiffs' Proposed Amended Claims
             2.    Parties' Arguments Regarding Plaintiffs' Cross-Motion
             3.    Procedural Posture of Plaintiffs' Proposed Amended Complaint
             4.    Court's Findings and Conclusions

# I.      RELEVANT BACKGROUND

Generally, Plaintiffs' Complaint, filed on March 15, 2010, asserts the following 13 claims against Defendants arising from Defendants' alleged treatment of Plaintiffs in response to Plaintiffs' attempt to subdivide certain tracts of land that Plaintiffs own on Silver Lake in the Adirondack State Park, and Plaintiffs' speech regarding environmental policies promulgated by Defendants, between approximately 2005 and 2009: (1) a claim against all Defendants for selective treatment in an APA enforcement proceeding, denial of due process and/or denial of equal protection under the law (in violation of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. §§ 1983, 1985);  (2) a claim against all Defendants for unlawful search and seizure (in violation of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983); (3) a claim against all Defendants for malicious prosecution of an APA enforcement proceeding (in violation of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983);  (4) a claim against all Defendants for malicious prosecution of an APA enforcement proceeding (in violation of state law); (5) a claim against all Defendants for abuse of process in an APA enforcement proceeding and criminal action (in violation of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983); (6) a claim against all Defendants for abuse of process in an APA enforcement proceeding and criminal action (in violation of state law); (7) a claim against the APA Defendants for intentional/reckless supervisory misconduct (in violation of state law); (8) a claim against all Defendants for conspiracy (pursuant to 42 U.S.C. §§ 1983, 1985);  (9) a claim against all Defendants for intentional/reckless infliction of emotional distress (in violation of state law); (10) a claim against all Defendants for prima facie tort (in violation of state law);  (11) a claim against the APA Defendants for breach of contract (in violation of state law); (12) a claim against the APA Defendants for malicious prosecution of a criminal action (in

violation of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983); and (13) a claim against all Defendants for retaliation (in violation of the First Amendment, pursuant to 42 U.S.C. § 1983).  (Dkt. No. 1.)

Because the parties have (in their memoranda of law) demonstrated an accurate understanding of the factual allegations giving rise to these claims in Plaintiffs' Complaint, the Court will not summarize those factual allegations in this Decision and Order, which is intended primarily for the review of the parties.  Rather, the Court will reference those factual allegations only when necessary in Parts III.A. through III.D. of this Decision and Order.

Plaintiffs' proposed Amended Complaint reasserts the 13 claims asserted in their original Complaint, expands somewhat on the thirteenth claim, and asserts the following two new claims: (1) a claim against the AC Defendants, Defendant Hawkeye and Defendant Ruder for tortious interference with contract (in violation of state law); and (2) a claim against all Defendants for failure to prevent a conspiracy and wrongful acts (pursuant to 42 U.S.C. §§ 1985, 1986).  (Dkt. No. 56, Attach. 18-19.)   Again, because the parties have (in their memoranda of law) demonstrated an accurate understanding of the proposed amendments to Plaintiffs' original Complaint, the Court will not summarize those proposed amendments in this Decision and Order, but will merely reference them when necessary in Part III.E. of this Decision and Order.

## II.    GOVERNING LEGAL STANDARDS

### A.    Motion to Dismiss for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6)

In their memoranda of law, the parties have demonstrated an accurate understanding of the legal standard governing a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  (See, e.g., Dkt. No. 40, Attach. 1, at 24-25 [attaching pages "15" and "16" of APA Defs.' Memo. of Law]; Dkt. No. 42, Attach. 2, at 16 [attaching page "8" of AC Defs.'

6

Memo. of Law]; Dkt. No. 52, Attach. 1, at 11 [attaching page "4" of Def. Ruder's Memo. of

Law]; Dkt. No. 56, Attach. 3, at 13-15 [attaching pages "1" through "3" of Plfs.' Memo. of

Law].)  As a result, the Court will not repeat that standard in this Decision and Order, which

(again) is intended primarily for the review of the parties.

Rather, the Court will add only a few words regarding what documents are considered

when a dismissal for failure to state a claim is contemplated.  Generally, when contemplating a

dismissal pursuant to Fed. R. Civ. P. 12(b)(6), the following matters outside the four corners of

the complaint may be considered without triggering the standard governing a motion for

summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2)

documents incorporated by reference in the complaint (and provided by the parties), (3)

documents that, although not incorporated by reference, are "integral" to the complaint, or (4)

any matter of which the court can take judicial notice for the factual background of the case.[3]

---

[3]        *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit
to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-
573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion
to dismiss for failure to state a claim to a motion for summary judgment is not necessary under
Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached
to the complaint or answer, [2] documents incorporated by reference in the complaint (and
provided by the parties), [3] documents that, although not incorporated by reference, are
"integral" to the complaint, or [4] any matter of which the court can take judicial notice for the
factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir.
2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12[b][6]
"may consider the facts alleged in the complaint, documents attached to the complaint as
exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is
not incorporated by reference, the court may neverless consider it where the complaint relies
heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . .
However, even if a document is 'integral' to the complaint, it must be clear on the record that no
dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that
there exist no material disputed issues of fact regarding the relevance of the document.")
[internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147,
152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as
an exhibit or any statements or documents incorporated in it by reference.") (internal quotation
marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72
(2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or
incorporate by reference a [document] upon which it solely relies and which is integral to the

**B.**     **Motion to Dismiss for Lack of Subject-Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1)**

In reviewing a motion to dismiss for lack of subject-matter jurisdiction, under Fed. R. Civ. P. 12(b)(1), the court must accept as true all material factual allegations in the complaint. *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998).  However, unlike the procedure when reviewing a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the procedure when reviewing a motion for lack of subject-matter jurisdiction does not involve "draw[ing] inferences from the complaint favorable to Plaintiffs."  *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).[4]  This is because, as explained more

---

complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

[4]        *See also Norton v. Larney*, 266 U.S. 511, 515 (1925); *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998); *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003); *Hijazi v. Permanent Mission of Saudi Arabia to United Nations*, 403 F. App'x 631, 632 (2d Cir. 2010) (summary order, cited for "persuasive value" in accordance with the Advisory Committee Notes to Fed. R. App. P. 32.1 [a], and cited to "acknowledge[ ] the continued precedential effect" of *J.S. Attica Cent. Sch.*, 386 F.3d 107, 110 [2d Cir. 2004], in accordance with Second Circuit Local Rule § 0.23 as applied by the Second Circuit in *Khan v. Ashcroft*, 352 F.3d 521, 525 [2d Cir. 2003].)  The Court acknowledges that there appears to be some Second Circuit cases suggesting that, when reviewing a motion to dismiss for lack of subject-matter jurisdiction, the court may draw inferences from the complaint favorable to the plaintiff.  *See, e.g.*, *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000) (affirming district court dismissal, pursuant to Fed. R. Civ. 12[b][1], which was issued after district court "constr[ed] all ambiguities and [drew] all inferences in" plaintiff's favor).  The Court finds such a construction of those cases to be against the weight of better-reasoned Second Circuit case law.  The Court  acknowledges that it has issued a decision that may be read as implicitly suggesting a contrary interpretation of the law.  *See Weber v. Align Tech., Inc.*, 07-CV-0535, 2010 WL 2265418, at *9 (N.D.N.Y. June 22, 2010) (Suddaby, J.) (stating that, for purposes of pleading subject-matter jurisdiction, a plaintiff "need only plead allegations from which damages attributable to the defendant's conduct might be reasonably inferred").  However, in *Weber*, the Court meant only that the plaintiff need plead factual allegations from which damages attributable to the defendant's conduct might be plausibly suggested.  The Court notes that the jurisdictional outcome of *Weber v. Align Tech., Inc.* (i.e., a ruling that plaintiff had alleged facts plausibly suggesting that the amount in controversy exceeded the jurisdictional amount for class action lawsuits of $5,000,000), turned on factual allegations plausibly suggesting that a proposed class of some 33,100 orthodontia patients suffered a material interruption or cessation of their treatment before completion, resulting in damage to them.  *Weber*, 2010 WL 2265418, at *4, 9.

fully below, "when the question to be considered is one involving the jurisdiction of a federal

court, jurisdiction must be shown affirmatively [by the party asserting such jurisdiction], and that

showing is not made by drawing from the pleadings inferences favorable to the party asserting

it." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998).  Similarly, unlike

the procedure when reviewing a motion to dismiss for failure to state a claim pursuant to Fed. R.

Civ. P. 12(b)(6), the procedure when reviewing a motion to dismiss for lack of subject-matter

jurisdiction permits the court to "consider affidavits and other materials beyond the pleadings to

resolve the jurisdictional issues." *J.S. ex rel. N.S.*, 386 F.3d at 110.  However, the court "may

not rely on conclusory or hearsay statements contained in the affidavits."  *Id*.

### C.      Motion to Disqualify Opposing Counsel

In their memoranda of law, the parties have demonstrated an accurate understanding of

the legal standard governing a motion to disqualify opposing counsel pursuant to the New York

Rules of Professional Conduct.  (*See, e.g.,* Dkt. No. 40, Attach. 1, at 65-68 [attaching pages "56"

through "59" of APA Defs.' Memo. of Law]; Dkt. No. 56, Attach. 4, at 15-16 [attaching pages

"49" and "50" of Plfs.' Memo. of Law].)  As a result, the Court will not repeat that standard in

this Decision and Order, which (again) is intended primarily for the review of the parties.

### D.      Motion to Amend Pursuant to Fed. R. Civ. P. 15(a)(2)

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "[t]he court should

freely give leave [to] amend when justice so requires."  Fed. R. Civ. Proc. 15(a)(2); *Foman v.

Davis*, 371 U.S. 178, 182 (1962); *Manson v. Stacescu*, 11 F.3rd 1127, 1133 (2d Cir. 1993).

Elaborating on this standard, the Supreme Court has explained as follows:

> In the absence of any apparent or declared reason– such as undue
> delay, bad faith or dilatory motive on the part of the movant, repeated
> failure to cure deficiencies by amendments previously allowed, undue
> prejudice to the opposing party by virtue of allowance of the
> amendment, futility of amendment, etc.– the leave sought should . . .
> be 'freely given.'

9

*Foman*, 371 U.S. at 182, *accord*, *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) ("[Leave to amend] should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility.").

For example, with regard to the "undue delay" factor, the Second Circuit has held that "despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000).

In addition, with regard to the "undue prejudice" factor, while as a general rule permission to amend a complaint should be freely given, "'the trial court [is] required to take into account any prejudice' that might result to the party opposing the amendment." *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) (leave to amend denied where new claim concerned different period of time and different theory of recovery from original claim) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 [1971]). For example, in *Ansam Assocs.*, the Second Circuit held that permitting Plaintiff to allege a "new set of operative facts" would have been "especially prejudicial [to the defendant] given the fact that discovery had already been completed and [defendant] had already filed a motion for summary judgment." *Ansam Assocs.*, 760 F.2d at 446.

Finally, with regard to the "futility" factor, a court measures futility under the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Nettis v. Levitt*, 241 F.2d 186, 194 n.4 (2d Cir 2001); *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).

III.     **ANALYSIS**

   A.     **APA Defendants' Motion to Dismiss Plaintiffs' Claims Against Them for Failure to State a Claim and/or Lack of Subject-Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(6) and/or 12(b)(1), and/or to Disqualify Counsel Pursuant to the New York Rules of Professional Conduct**

      1.     **Plaintiffs' Claims Against APA Defendants**

As stated above in Part I of this Decision and Order, Plaintiffs' Complaint asserts the following 13 claims against the APA Defendants: (1) a claim for selective enforcement, denial of equal protection, and/or denial of due process (in violation of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. §§ 1983, 1985); (2) a claim  for unlawful search and seizure (in violation of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983); (3) a claim for malicious prosecution of an APA enforcement proceeding (in violation of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983); (4) a claim for malicious prosecution of an APA enforcement proceeding (in violation of state law); (5) a claim for abuse of process in an APA enforcement proceeding and criminal action (in violation of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983); (6) a claim for abuse of process in an APA enforcement proceeding and criminal action (in violation of state law); (7) a claim for intentional/reckless supervisory misconduct (in violation of state law); (8) a claim for conspiracy (pursuant to 42 U.S.C. §§ 1983, 1985); (9) a claim for intentional/reckless infliction of emotional distress (in violation of state law); (10) a claim for prima facie tort (in violation of state law); (11) a claim for breach of contract (in violation of state law); (12) a claim for malicious prosecution of a criminal action (in violation of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983); and (13) a claim for retaliation (in violation of the First Amendment, pursuant to 42 U.S.C. § 1983).  (Dkt. No. 1.)

## 2.    Summary of APA Defendants' Arguments on Their Motion

In support of their motion, the APA Defendants assert arguments based on the following 15 grounds: (1) the existence of sovereign immunity; (2) the existence of absolute immunity; (3) the absence of personal involvement; (4) the absence of subject-matter jurisdiction over Plaintiffs' due process and equal protection claims; (5) the absence of one or more elements of a due process claim; (6)  the absence of one or more elements of an equal protection claim; (7) the absence of one or more elements of a retaliation claim; (8) the absence of one or more elements of a malicious-prosecution claim; (9) the absence of one or more elements of an abuse-of-process claim; (10) the absence of one or more elements of an unlawful-search-and-seizure claim; (11) the absence of one or more elements of a class-based conspiracy claim; (12) the existence of qualified immunity; (13) the discretion to dismiss Plaintiffs' state-law claims; (14) the absence of a "short and plain statement" of Plaintiffs' claims, pursuant to Fed. R. Civ. P. 8(a)(2); and (15) the existence of grounds for attorney disqualification.  (Dkt. No. 40, Attach. 1 [APA Defs.' Memo. of Law].)

## 3.    Court's Findings and Conclusions

### a.    Sovereign Immunity

As indicated above in Part III.A.2. of this Decision and Order, in support of their motion, the APA Defendants argue, *inter alia*, that Plaintiffs' damages claims against them in their official capacities are barred by the doctrine of sovereign immunity under the Eleventh Amendment.  (Dkt. No. 40, Attach. 1, at 25-26 [attaching pages "16" and "17" of APA Defs.' Memo. of Law].)  Generally, Plaintiffs oppose this argument on the following three grounds: (1) the APA Defendants have failed to meet their burden of showing that the APA is an arm of New York State of the type to be protected from suit in federal court by the Eleventh Amendment; (2)

Plaintiffs' claims against the APA Defendants in their individual capacities are not barred by the Eleventh Amendment; and (3) Plaintiffs' claim for prospective injunctive relief is not barred by the Eleventh Amendment.  (Dkt. No. 56, Attach. 3, at 19-30 [attaching pages "7" through "18" of Plfs.' Opp'n Memo. of Law].)  Generally, in reply, the APA Defendants argue, *inter alia*, that Plaintiffs' first argument is contrary to (1) certain allegations in their Complaint, which can only be construed as plausibly suggesting that the APA is, in fact, a state agency, and (2) certain case law, issued by this District, finding that the APA is entitled to Eleventh Amendment immunity.  (Dkt. No. 65, at 9-11 [attaching pages "5" through "7" of APA Defs.' Reply Memo. of Law].)

In addition, in the sovereign-immunity section of their memoranda of law, the APA Defendants argue that Plaintiffs' Section 1983 claims against the Adirondack Park Agency must be dismissed because that agency is not a "person" amenable to suit under Section 1983.  (Dkt. No. 40, Attach. 1, at 25-26 [attaching pages "16" and "17" of APA Defs.' Memo. of Law].)  In their memorandum of law, Plaintiffs do not appear to oppose this argument.  (*See generally* Dkt. No. 56, Attach. 3, at 19-30 [attaching pages "7" through "18" of Plfs.' Opp'n Memo. of Law].)

After carefully considering the matter, the Court accepts the APA Defendants' arguments that Plaintiffs have pled themselves out of court with respect to their damages claims, which are barred by the relevant case law.[5]  As a result, Plaintiffs' damages claims against the APA Defendants in their official capacities are dismissed.  The Court notes that this dismissal is based

---

[5]     In reaching this conclusion, the Court relies not only on the cases (and arguments) offered by the APA Defendants in their memoranda of law but also on the following two other cases, which the Court finds to be instructive: *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 39-40 (2d Cir. 1977) (finding that Palisades Interstate Park Commission was arm of New York State that was protected by sovereign immunity); *Schorpp v. Lake George Park Com'n*, 94-CV-0660, 1995 WL 283768, at *1 (N.D.N.Y. Apr. 24, 1995) (McAvoy, C.J.) (explaining that, by prior order, court dismissed plaintiff's damages claims against Lake George Park Commission because of sovereign immunity).

on a lack of subject-matter jurisdiction (due to the doctrine on sovereign immunity).[6]

Furthermore, after carefully considering the matter, the Court accepts the APA Defendants' argument that Plaintiffs' Section 1983 claims against the Adirondack Park Agency must be dismissed because that agency is not a "person" amenable to suit under Section 1983.[7] The Court notes that, because Plaintiffs failed to oppose this argument, the APA Defendants' burden with regard to it is lightened such that, in order to succeed on it, they need only show their entitlement to the relief requested with regard to it, which has appropriately been characterized as a "modest" burden. *Dottolo v. Byrne Dairy, Inc.*, 08-CV-0390, 2010 WL 2560551, at *7, n.13 (N.D.N.Y. June 22, 2010) (Suddaby, J.) (collecting authorities). The Court finds that the APA Defendants have met that modest burden. The Court adds only that the Court would accept this argument even if it subjected it to the more rigorous scrutiny appropriate for a contested motion. As a result, Plaintiffs' Section 1983 claims against the Adirondack Park Agency are also dismissed.

---

[6]     *See Perry v. State Ins. Fund*, 83 F. App'x 351, 353 (2d Cir. 2003) (affirming district court's dismissal with prejudice of plaintiff's Title I claim on ground of lack of subject-matter jurisdiction due to sovereign immunity); *Ceparano v. Suffolk Cnty.*, 10-CV-2030, 2010 WL 5437212, at *5 (E.D.N.Y. Dec. 15, 2010) ("In so far as the plaintiff names the New York Unified Court System as a defendant, it too is considered an arm of the state and is thus immune from suit by the Eleventh Amendment. . . . Thus, plaintiff's claims against the New York State Unified Court System are not plausible and are dismissed with prejudice."); *Emmons v. City Univ. of New York*, 715 F. Supp.2d 394, 418 (E.D.N.Y. 2010) ("Once again, sovereign immunity mandates dismissal with prejudice of the FMLA claims against CUNY and Jackson and Guada in their official capacities."); *Fisk v. Letterman*, 401 F. Supp.2d 362, 379, n.11 (S.D.N.Y. 2005) ("[T]he claims against the State of Connecticut should be dismissed with prejudice since they are barred by sovereign immunity.").

[7]     In reaching this conclusion, the Court relies not only on the cases (and argument) offered by the APA Defendants in their memorandum of law but also on the following other case: *Perry v. State Ins. Fund*, 83 F. App'x 351, 353 (2d Cir. 2003) ("[T]he [district] court found that even if the complaint were construed liberally to include a § 1983 claim, such a claim would not be cognizable because a 'state agency' is not a 'person' for § 1983 purposes. . . . The district court was also correct in its determination that the [state agency] is not a "person" within the meaning of § 1983 . . . .").

**b.      Absolute Immunity**

As indicated above in Part III.A.2. of this Decision and Order, in support of their motion, the APA Defendants argue, *inter alia*, that Plaintiffs' damages claims against them are barred by the doctrine of absolute immunity under 42 U.S.C. § 1983, because Defendants are either (1) judicial or quasi-judicial officials or (2) prosecutorial officials.  (Dkt. No. 40, Attach. 1, at 26-28 [attaching pages "17" through "19" of APA Defs.' Memo. of Law].)  Generally, Plaintiffs oppose this argument on the following two grounds: (1) Defendants Stiles, Wray and Banta are not entitled to absolute immunity because Plaintiffs' Complaint does not allege facts plausibly suggesting that those three Defendants were acting as judicial or quasi-judicial officials but as policymaker and supervisors; and (2) Defendants Van Cott, Miller and Rooks are not entitled to absolute immunity because Plaintiffs' Complaint does not allege facts plausibly suggesting that those three Defendants were acting as prosecutors but as administrators and investigators.  (Dkt. No. 56, Attach. 3, at 30-36 [attaching pages "18" through "24" of Plfs.' Opp'n Memo. of Law].) Generally, in reply, the APA Defendants argue that (1) Plaintiffs' arguments are inconsistent with certain other arguments and admissions made by Plaintiffs in their opposition memorandum of law, and (2) Plaintiffs' claims against Defendants Stiles, Wray and Banta, premised on a late-blossoming respondeat-superior theory of liability, are barred by *City of Canton v. Harris*, 489 U.S. 378 (1989), due those Defendants' lack of personal involvement in the alleged civil rights violations.  (Dkt. No. 65, at 11-12 [attaching pages "7" and "8" of APA Defs.' Reply Memo. of Law].)

After carefully considering the matter, the Court agrees with the APA Defendants (for the reasons stated in their memoranda of law) that certain of Plaintiffs' claims against the APA Defendants should be dismissed on the ground of absolute immunity; and the Court agrees with

Plaintiffs (for the reasons stated in their memorandum of law) that certain of Plaintiffs' claims

against the APA Defendants should survive the APA Defendants' absolute-immunity argument.

More specifically, the Court reaches the following three conclusions.  First, it is true that

the bulk of Plaintiffs' claims against Defendants Stiles, Wray and Banta appear premised on

conduct taken by them in a supervisory role.  (*See, e.g.*, Dkt. No. 1, at ¶¶ 19, 21, 23, 156, 178-79,

181, 211-12, 228, 229, 250-51, 261-62, 284-85, 307-08, 315, 352-53.)  However, certain of

Plaintiffs' claims against Defendants Stiles and Wray appear premised on conduct taken by them

in a quasi-judicial, if not judicial, role (e.g., denying a motion to dismiss Administrative

Enforcement Proceeding No. E2007-047, ordering an administrative hearing be conducted, and

rendering a decision in that administrative proceeding, etc).  (Dkt. No. 1, at ¶¶ 129, 190.)[8]  As a

result, Plaintiffs' claims against Defendants Stiles and Wray are dismissed to the extent they

arise from the factual allegations asserted in Paragraphs 129 and 190 of Plaintiffs' Complaint.[9]

---

[8]        In reaching this conclusion, the Court relies not only on the cases (and arguments)
offered by the APA Defendants in their memoranda of law but also on the following two other
cases: *Brookhaven Aggregates, Ltd. v. Williams*, 85-CV-0355, 1985 WL 6062, at *2-4 (E.D.N.Y.
July 24, 1985) (holding that the Commissioner of the New York State Department of
Environmental Conservation, when he issued an "Interim Decision and Modified Order of
Summary Suspension," was protected from liability as a matter of law by doctrine of absolute
immunity); *Winn v. Lynn*, 88-CV-7794, 1990 WL 210608, at *2 (E.D. Pa. Dec. 18, 1990)
(holding that chairman of Pennsylvania Department of Environmental Resources, when he
issued an order suspending the operating permit of a landfill owned by plaintiff during an
administrative proceeding, was protected from liability as a matter of law by doctrine of absolute
immunity), *aff'd on other grounds*, 941 F.2d 236, 241 (3d Cir. 1991) ("While it may be a closer
case as to whether appellees are entitled to absolute immunity, we need not decide the absolute
immunity issue here since we hold that the appellees are entitled to qualified immunity.").

[9]        *See Leshore v. Comm'r of Long Beach P.D.*, 10-CV-6067, 2012 WL 1032643, at
*5 (E.D.N.Y. March 21, 2012) ("Even liberally construed, plaintiff alleges no acts performed by
Chief Judge Donnino or Judge Kase that fall outside the scope of absolute judicial immunity.
Therefore, plaintiff's claims against these defendants are dismissed with prejudice."); *Cameron v.
Wise*, 09-CV-0967, 2011 WL 3479295, at *4 (S.D.N.Y. Aug. 4, 2011) ("Magistrate Judge Cott
correctly concluded that all of the actions plaintiff complains of–denying his bail application,
denying a motion to dismiss, dismissing the habeas petition, and presiding over a criminal trial

Second, it is true that some of Plaintiffs' claims against the APA Defendants (presumably

Defendants Von Cott, Miller and Rooks) appear premised on conduct taken by them in an

investigatory role.  (*See, e.g.*, Dkt. No. 1, at ¶¶ 77, 156, 162-63, 235, 242, 258, 260, 267-69, 290-

92, 312.)  However, other of those claims appear premised on conduct taken by various of them

in a prosecutorial role.  (*See, e.g.*, Dkt. No. 1, at ¶¶ 77, 107-08, 132, 136, 143, 148-50, 152-55,

164-65, 168, 174, 197, 206, 217, 220, 223-24, 234-37, 240, 240-43, 255-60, 266, 274, 289, 297,

319-20, 347, 349-51, 359.)  Of particular concern to the Court are Plaintiffs' claims against

Defendants Van Cott and Banta arising from their prosecution (and/or their supervision of the

prosecution) of Administrative Enforcement Proceeding No. E2007-047, which the Court finds

to be barred by the doctrine of absolute immunity.  (*See, e.g.,* Dkt. No. 1, at ¶¶ 99, 100, 103, 111,

115, 183, 198, 199.)[10]  As a result, Plaintiffs' claims against Defendants Van Cott and Banta are

---

and sentencing–are acts performed within the judicial capacities of the four justices. . . .  This
Court adopts the recommendation that all claims against the four justices be dismissed with
prejudice."); *Rios v. Third Precinct Bay Shore*, 08-CV-4641, 2009 WL 2601303, at *3 (E.D.N.Y.
Aug. 20, 2009) ("Accordingly, defendant Judge Hudson is entitled to absolute immunity from
the instant lawsuit, and the complaint is dismissed as to him, with prejudice.") (collecting cases).

[10]       In reaching this conclusion, the Court relies not only on the cases (and arguments)
offered by the APA Defendants in their memoranda of law but also on the following four other
cases: *U.S. v. Colbert*, 87-CV-4789, 1991 WL 183376, at *2 (S.D.N.Y. Sept. 11. 1991 (holding
that governmental officials, when they initiated response actions conducted by the EPA pursuant
to CERCLA to abate emergency conditions on plaintiff's property in an administrative
enforcement proceeding, were protected from liability as a matter of law by doctrine of absolute
immunity); *Light v. Haws*, 472 F.3d 74, 77-80 (3d Cir. 2007) (holding that employee of
Pennsylvania Department of Environmental Protection, when he initiated an enforcement
proceeding against plaintiff, was protected from liability as a matter of law by doctrine of
absolute immunity); *Log Creek, LLC v. Kessler*, 717 F. Supp.2d 1239, 1244 (N.D. Fla. 2010)
(holding that chair of county commission, when he moved to revoke a conditional-use permit to
a developer in a county commission meeting, was protected from liability as a matter of law by
doctrine of absolute immunity); *McGuire v. Ciecko*, 08-CV-1098, 2009 WL 4456313, at *7 (D.
Or. Oct. 26, 2009) (holding that county official, who made statements about plaintiff in contempt
hearing arising from plaintiff's disobeying an order to discontinue use of building on property,
was protected from liability as a matter of law by doctrine of absolute immunity).

dismissed to the extent they are arise from their prosecution of Administrative Enforcement

Proceeding No. E2007-047, as referenced in Paragraphs 99, 100, 103, 111, 115, 183, 198 and

199 of Plaintiffs' Complaint.[11]

Third, under the circumstances, the remainder of APA Defendants' absolute-immunity

argument is more appropriate for a motion for summary judgment (filed after the record has been

better developed) than on a motion to dismiss.  (The Court notes that it addresses the APA

Defendants' respondeat-superior argument below in Part III.A.3.c. of this Decision and Order.)

### c.    Personal Involvement

As indicated above in Part III.A.2. of this Decision and Order, in support of their motion,

the APA Defendants argue, *inter alia*, that Plaintiffs' Complaint fails to allege facts plausibly

suggesting that Defendants APA, Banta, Stiles, and Wray (all supervisors) were personally

involved in the alleged civil rights violations.  (Dkt. No. 40, Attach. 1, at 28-30 [attaching pages

"19" through "21" of APA Defs.' Memo. of Law].)  Generally, Plaintiffs oppose this argument

on the ground that they have alleged facts plausibly suggesting that (1) the four Defendants in

question participated directly in the alleged civil rights violations and/or (2) they knew of, but

failed to remedy, the violations by report or appeal.  (Dkt. No. 56, Attach. 3, at 4-6 [attaching

pages "38" through "40" of Plfs.' Opp'n Memo. of Law].)  Generally, in reply, the APA

Defendants argue that Plaintiffs have failed to allege facts plausibly suggesting that any of the

---

[11]    *See Leshore*, 2012 WL 1032643, at *5 ("Although plaintiff names D.A. Rice and A.D.A. Haran as defendants, their conduct, as alleged by the plaintiff, falls squarely within the scope of prosecutorial immunity defined by the Second Circuit.  Accordingly, plaintiff's claims against D.A. Rice and A.D.A Haran are dismissed with prejudice."); *Cameron*, 2011 WL 3479295, at *5 ("Magistrate Judge Cott correctly determined that the claims against ADA Guglielmo and ADA Birns are based upon prosecutorial activities. . . .  This Court adopts the recommendation that the claims against ADA Guglielmo and ADA Birns be dismissed with prejudice.").

four Defendants in question create a policy or custom under which the unconstitutional practices occurred, or allowed the continuation of such a policy or custom.  (Dkt. No. 65, at 21-22 [attaching pages "17" and "18" of APA Defs.' Reply Memo. of Law].)

After carefully considering the matter, the Court agrees with the APA Defendants (for the reasons stated in their memoranda of law) that certain of Plaintiffs' claims against the APA Defendants should be dismissed on the ground of lack of personal involvement, and the Court agrees with Plaintiffs (for the reasons stated in their memorandum of law) that certain of Plaintiffs' claims against the APA Defendants should survive the APA Defendants' lack-of-personal-involvement argument.

More specifically, the Court reaches the following two conclusions.  First, any claims against the four APA Defendants in question (i.e., Defendants APA, Banta, Stiles, and Wray) arising from the factual allegations asserted in Paragraph 156 of Plaintiffs' Complaint are dismissed based on those Defendants' lack of personal involvement in the alleged civil rights violations.  In addition to reaching this conclusion for the reasons offered by the APA Defendants, the Court reaches this conclusion because this paragraph of the Complaint does not allege facts plausibly suggesting (1) direct participation in the alleged civil rights violations, (2) gross negligence in the supervision of subordinates, or (3) the existence of an unconstitutional policy or custom.[12]  As a result, these claims are dismissed.

Second, any claims against the four APA Defendants in question (i.e., Defendants APA, Banta, Stiles, and Wray) arising from the other factual allegations of Plaintiffs' Complaint (including those asserted in Paragraphs 178 through 181 of the Complaint) survive the APA

---

[12]     The Court notes that, generally, a policy or custom may not be ordinarily inferred from a single incident of illegality.  *White v. City of Syracuse*, 11-CV-1098, 2012 WL 254075, at *1, n.1 (N.D.N.Y. Jan. 27, 2012) (Suddaby, J.) (collecting cases).

Defendants' lack-of-personal-involvement argument for the reasons stated by Plaintiffs in their

opposition memorandum of law.

### d.       Subject-Matter Jurisdiction

As indicated above in Part III.A.2. of this Decision and Order, in support of their motion,

the APA Defendants argue, *inter alia*, that Plaintiffs have failed to establish that the Court has

subject-matter jurisdiction over Plaintiffs' unripe due process and equal protection claims against

the APA Defendants, which remain under the exclusive jurisdiction of an administrative law

judge (along with that judge's jurisdiction over Administrative Enforcement Proceeding No.

E2007-047).  (Dkt. No. 40, Attach. 1, at 30-32 [attaching pages "21" through "23" of APA

Defs.' Memo. of Law].)  Generally, Plaintiffs' opposition papers do not appear to specifically

address Defendants' subject-matter jurisdiction argument; however, liberally construed those

papers argue that, while the resolution of Administrative Enforcement Proceeding No. E2005-

200 is being overseen by an administrative law judge at the New York State Department of

Environmental Conservation, Administrative Enforcement Proceeding No. E2007-047 (which

gives rise to the essence of this action) has been discontinued with prejudice.  (Dkt. No. 56,

Attach. 3, at 45-47 [attaching pages "33" through "35" of Plfs.' Opp'n Memo. of Law]; Dkt. No.

74, at ¶¶ 6-14 [Plfs.' Suppl. Opp'n to Motion to Disqualify]; Dkt. No. 82, Attach. 1 [Ltr. from

ALJ].)  Generally, in their reply, the APA Defendants do not appear to address the point made by

Plaintiffs, nor does it appear to further assert their subject-matter jurisdiction argument.  (*See

generally* Dkt. No. 65 [APA Defs.' Reply Memo. of Law].)

After carefully considering the matter, the Court rejects the APA Defendants' subject-

matter jurisdiction argument for the reasons stated by Plaintiffs' in their opposition papers.

However, because subject-matter jurisdiction issues can be raised at any time pursuant to Fed. R.

Civ. P. 12(h)(3), and because this issue is likely to be better presented on a more fully developed record (i.e., on a motion for summary judgment), the Court denies this part of Defendants' motion only without prejudice.

**e.**     **Due Process Claims**

As indicated above in Part III.A.2. of this Decision and Order, in support of their motion, the APA Defendants argue, *inter alia*, that Plaintiffs' Complaint fails to allege facts plausibly suggesting (a) a due process claim against them to the extent that it is duplicative of a claim under the First or Fourth Amendments, (b) the elements of a substantive due process claim against them, or (c) the elements of a procedural due process claim against them.  (Dkt. No. 40, Attach. 1, at 32-41 [attaching pages "23" through "32" of APA Defs.' Memo. of Law].) Generally, Plaintiffs oppose this argument on the ground that they have alleged facts plausibly suggesting a substantive due process claim against the APA Defendants.  (Dkt. No. 56, Attach. 3, at 39-42 [attaching pages "27" through "30" of Plfs.' Opp'n Memo. of Law].)  Generally, in reply, the APA Defendants argue that (1) Plaintiffs have failed to respond to their argument regarding a procedural due process claim, and (2) Plaintiffs have failed to state a substantive due process claim, because they have alleged neither that they were deprived of a fundamental constitutional right, or that there was governmental action that was arbitrary, outrageous or conscience-shocking.  (Dkt. No. 65, at 15-18 [attaching pages "11" through "14" of APA Defs.' Reply Memo. of Law].)

After carefully considering the matter, the Court agrees with the APA Defendants (for the reasons stated in their memoranda of law) that certain of Plaintiffs' due process claims against the APA Defendants should be dismissed, and the Court agrees with Plaintiffs (for the reasons stated in their memorandum of law) that other of Plaintiffs' due claims against the APA Defendants should survive the APA Defendants' due process argument.

More specifically, the Court reaches the following three conclusions.  First, Plaintiffs'
due process claims against the APA Defendants are dismissed to the extent that they are
premised on acts of retaliation and/or unlawful search and seizure, which are more properly
asserted in claims arising under the First and/or Fourth Amendments.[13]

Second, Plaintiffs' procedural due process claims against the APA Defendants are
dismissed in their entirety on the ground that Plaintiffs' Complaint fails to allege facts plausibly
suggesting the elements of a procedural due process claim against them.  The Court notes that,
because Plaintiffs fail to respond to this argument in their opposition memorandum of law, the
APA Defendants' burden with regard to the argument is "modest."  *Dottolo*, 2010 WL 2560551,
at *7, n.13.  The Court finds that the APA Defendants have met that modest burden.  The Court
adds only that the Court would accept this argument even if it subjected it to the more rigorous
scrutiny appropriate for a contested motion.

Third, Plaintiffs' substantive due process claims against the APA Defendants survive the
APA Defendants' argument that those claims should be dismissed in their entirety on the ground
that Plaintiffs' Complaint fails to allege facts plausibly suggesting the elements of a substantive
due process claim against them.

---

[13]      In reaching this conclusion, the Court relies not only on the cases (and arguments)
offered by the APA Defendants in their memoranda of law but also on the following four other
cases: *United States v. Lanier*, 520 U.S. 259, 272, n.7 (1997) ("[I]f a constitutional claim is
covered by a specific constitutional provision, such as the Fourth . . . Amendment, the claim
must be analyzed under the standard appropriate to that specific provision, not under the [more
generalized notion] of substantive due process."); *Conn v. Gabbert*, 526 U.S. 286, 291-93 (1999)
(offering similar recitation of law before refusing to analyze claim of unlawful search under
Fourteenth Amendment's Due Process Clause); *Decayette v. Goord*, 06-CV-0783, 2009 WL
1606753, at *1-3, 9-11 (N.D.N.Y. June 8, 2009) (McAvoy, J. adopting Report-Recommendation
of Lowe, M.J.) (dismissing plaintiff's substantive due process claim and his procedural due
process claim "[b]ecause the Court has already analyzed Plaintiff's claims under the appropriate
specific legal standards," including the standard governing a retaliation claim under the First
Amendment).

Here, Plaintiffs argue that the right in question was a fundamental one, under the Constitution, for the following three reasons: (1) it encompasses their right to use and enjoy their property; (2) it encompasses their right to privacy and freedom from illegal searches; and (3) it encompasses their right to have the APA's comply with its prior settlement agreement with Plaintiffs.

With regard to Plaintiffs' first reason, it is true that various courts have, on occasion, characterized the right to use and enjoy one's property for lawful purposes as a "fundamental" one under the Constitution.[14]  However, generally, one does not possess a substantive due process right to use or enjoy one's property, especially in a manner wholly unfettered by any regulatory restriction.[15]  For this reason, the Court rejects Plaintiffs' argument that their right to use and enjoy their property, in and of itself, constitutes a fundamental one for purposes of their substantive due process claim.

---

[14]      *See, e.g., Phillip v. Univ. of Rochester*, 316 F.3d 291, 295 (2d Cir. 2003) (listing one of the "fundamental" rights protected by 42 U.S.C. § 1981 as "the right to acquire and possess property"); *Goodspeed Airport, LLC v. E. Haddam Land Trust*, 01-CV-0403, 2005 WL 1403822 (D. Conn. June 13, 2005) ("[T]he right to use property for lawful purposes is one of the most fundamental rights protected by our Constitution . . . ."); *Gladstone Dev. Corp. v. Town of Bethlehem*, 92-CV-0558, 1992 WL 233432, at *5 (N.D.N.Y. Sept. 15, 1992) (Scullin, J.) ("The acquisition, enjoyment, use and alienation of property is a 'personal' right which is 'fundamental.'") (citation omitted).

[15]      *See Beaulieu v. Alabama Onsite Wastewater Bd.*, 373 F. App'x 3, 5 (11th Cir. 2010) ("[N]o fundamental right exists [for purpose of a substantive due process claim] to self-install a wastewater system on one's property . . . free from state licensing requirements."); *Keller v. Los Osos Cmty. Servs. Dist.*, 39 F. App'x 581, 538 (9th Cir. 2002) (There is no recognized fundamental right [four purpose of a substantive due process claim] to live free of governmental regulation, to use septic tanks, or to have access to cheap sewers."); *cf. In the Matter of Upstate Land and Props., LLC v. Town of Bethel*, 905 N.Y.S.2d 284, 286-87 (N.Y. App. Div., 3d Dept., 2010) (holding that plaintiff had sufficiently pled a substantive due process claim pursuant to 42 U.S.C. § 1983, where the protectable property interest he alleged was "based upon [the] blanket denial of any and all access to the 60-acre western portion of its property" without the "assert[ion of] any valid reason upon which they base the denial of all access").

With regard to Plaintiffs' second reason, as the Court explained above, Plaintiffs' right to privacy is more properly asserted in his claim arising under the Fourth Amendment.  For this reason, the Court rejects Plaintiffs' argument that their right to privacy renders their property right in question a fundamental one under the Constitution.

However, with regard to Plaintiffs' third reason, the Court finds that Plaintiffs' right to have the APA's comply with its prior settlement agreement with Plaintiffs does appear to render their property right in question a fundamental one under the Constitution.  In particular, the Court is persuaded by the fact that not only have Plaintiffs attached to their Complaint a fully executed copy of the settlement agreement, but they have alleged facts plausibly suggesting that they substantially relied on the settlement agreement to their detriment (e.g., giving up their defense of Administrative Enforcement Proceeding No. E2005-200, performing remediation work on their property, and ceasing such work upon the instruction of one of the APA's agents).  (*See, e.g.,* Dkt. No. 1, at ¶¶ 84-98 & Ex. B.)  While the Court has been unable to find a case specifically involving a settlement agreement regarding the building of roads on land, it has found a case involving a settlement agreement regarding, inter alia, the development (through the grading) of land.  *See Deninno v. Davidson*, 10-CV-0280, 2012 WL 1448312, at *1-2, 6, 9 (W.D. Pa. Apr. 26, 2012) ("In the case at issue, DeNinno's substantive due process claim alleges that Defendants arbitrarily interfered with his occupancy of land and his intended use of the property to sell aggregate pursuant to a mercantile license, even after entering into the 2007 Settlement Agreement specifically permitting him to do so. The Court is satisfied that DeNinno's ownership and use of his property are interests implicated and protected by substantive due process.").[16]

_____

[16]     In addition, the Court has found a case suggesting that a claim arising from an arbitrary restriction on the ability to place fill soil on one's own land may implicate one's

Cases to finding no fundamental property right in circumstances involving settlement agreements appear distinguishable.  *See, e.g., Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1085-86 (10th Cir. 2006) (holding that property owner's prior settlement agreement with Bureau of Land Management did not give him substantive right, as required for protected property interest under Due Process Clause of Fifth Amendment, because agreement gave him *right to procedure only*) (emphasis added); *Bench Billboard Co. v. City of Cincinnati*, 07-CV-0589, 2008 WL 2220625, at *10 (S.D. Ohio May 28, 2008) ("Bench Billboard has not adequately alleged the deprivation of a fundamental right in this matter. It has not cited any legal authority for the proposition that a special street license granted as part of the settlement of a lawsuit against a municipality is a right that is either deeply rooted in the Nation's history nor implicit in the concept of ordered liberty.").[17]

Finally, the Court finds that Plaintiffs have alleged facts plausibly suggesting that there was governmental action that was arbitrary, outrageous or conscience-shocking, for the reasons offered in Plaintiffs' opposition memorandum of law.  (Dkt. No. 56, Attach. 3, at 39-42 [attaching pages "27" through "30" of Plfs.' Opp'n Memo. of Law].)

---

substantive due process rights.  *See Benckini v. Upper Saucon Tp.*, 04-CV-4304, 2005 WL 2649316, at *7 (E.D. Pa. Oct. 17, 2005) (dismissing plaintiff's substantive due process claim arising from placement of fill soil on land only because plaintiff "cannot argue that placing fill soil on land *that does not belong to him* violates his substantive due process rights") [emphasis added].

[17]      The Court notes that it does *not* liberally construe Plaintiffs' Complaint as alleging that the November 2006 dismissal of Administrative Enforcement Proceeding No. E2005-200 possessed the nature of an order issued by the APA.  It is conceivable that such an allegation could further implicate Plaintiffs' right to substantive due process.  *Cf. Cabassa v. Gummerson*, 01-CV-1039, 2008 WL 4416411, at *17 (N.D.N.Y. Sept. 24, 2008) (Suddaby, J.) ("[C]ourts have specifically held that a prison official's knowing refusal to obey a state court order directing an inmate's release from S.H.U. would make that official liable also for infringing upon the inmate's personal liberty protected by the substantive due process clause of the Fourteenth Amendment.").

As a result, Plaintiffs' procedural process claims against the APA Defendants are dismissed; Plaintiffs' substantive due process claims against the APA Defendants are dismissed to the extent that they are premised on acts of retaliation and/or unlawful search and seizure; and the remainder of Plaintiffs' substantive due process claims against the APA Defendants survives this aspect of the APA Defendants' motion to dismiss.

### f.   Equal Protection Claim

As indicated above in Part III.A.2. of this Decision and Order, in support of their motion, the APA Defendants argue, *inter alia*, that Plaintiffs' Complaint fails to allege facts plausibly suggesting the elements of either (1) a selective-enforcement equal protection claim against them or (2) a class-of-one equal protection claim against them.  (Dkt. No. 40, Attach. 1, at 41-47 [attaching pages "32" and "38" of APA Defs.' Memo. of Law].)  More specifically, the APA Defendants argue that the first claim is defective because it is unsupported by factual allegations plausibly suggesting that (a) Plaintiffs were selectively treated, compared with others similarly situated, or (b) any such selective treatment was based on a malicious intent to injure Plaintiffs. (*Id.*)  Moreover, the APA Defendants argue that the second claim is defective because it is unsupported by factual allegations plausibly suggesting (a) the identity, or even the existence, of anyone similarly situated, or (2) a lack of a rational basis for the enforcement decision.  (*Id.*) Generally, in response, Plaintiffs largely if not entirely abandon their selective-enforcement equal protection claim and focus on their class-of-one equal protection claim, arguing that they have stated the latter claim because they have alleged that they were treated differently from others similarly situated based on a malicious intent to punish and harass them.  (Dkt. No. 56, Attach. 3, at 37-39 [attaching pages "25" and "27" of Plfs.' Opp'n Memo. of Law].)  Generally, in reply, the APA Defendants argue that Plaintiffs have failed to state a class-of-one equal protection claim for the reasons offered in their initial memorandum of law, and because of the

clarified pleading standard set forth by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  (Dkt. No. 65, at 13-15 [attaching pages "9" and "11" of APA Defs.' Reply Memo. of Law].)

After carefully considering the matter, the Court accepts the APA Defendants' argument regarding a difference in treatment from others similarly situated for the reasons stated in their memoranda of law.  The Court adds one point.  Because Plaintiffs fail to sufficiently respond to the APA Defendants' selective-enforcement argument, the APA Defendants' burden with regard to the argument is modest; while the APA Defendants have met that modest burden with regard to that argument, the Court would accept that argument even if it were to subject that argument to the more rigorous scrutiny appropriate for a contested motion.

### g.      Retaliation Claim

As indicated above in Part III.A.2. of this Decision and Order, in support of their motion, the APA Defendants argue, *inter alia*, that Plaintiffs' Complaint fails to state a retaliation claim because it fails to allege facts plausibly suggesting (1) that Plaintiffs engaged in speech protected by the First Amendment before being subjected to the APA Defendants' actions, (2) the APA Defendants' actions were sufficiently serious to chill Plaintiffs' speech for purposes of the First Amendment, and (3) any such adverse action was taken because of Plaintiffs' protected speech, as opposed to being taken for some other, legitimate reason.  (Dkt. No. 40, Attach. 1, at 47-49 [attaching pages "38" and "40" of APA Defs.' Memo. of Law].)  Plaintiffs' opposition memorandum of law appears devoid of any response to this argument.  (Dkt. No. 56, Attach. 3-4 [Plfs.' Opp'n Memo. of Law].)  Generally, in reply, the APA Defendants argue that, by failing to respond to this argument, Plaintiffs' have effectively abandoned their retaliation claim.  (Dkt. No. 65, at 6-7 [attaching pages "2" and "3" of APA Defs.' Reply Memo. of Law].)

After carefully considering the matter, the Court finds that this claim should be dismissed for the reasons offered by the APA Defendants in their memoranda of law.  The Court adds one point.  Because Plaintiffs fail to sufficiently respond to the APA Defendants' argument, the APA Defendants' burden with regard to the argument is modest; again, while the APA Defendants have met that modest burden with regard to that argument, the Court would accept that argument even if it were to subject that argument to the more rigorous scrutiny appropriate for a contested motion for the reasons stated in the APA Defendants' memoranda of law.

### h.    Malicious-Prosecution Claim

As indicated above in Part III.A.2. of this Decision and Order, in support of their motion, the APA Defendants argue, *inter alia*, that Plaintiffs' Complaint fails to allege facts plausibly suggesting the elements of a malicious-prosecution claim against them for the following two reasons: (1) Administrative Enforcement Proceeding No. E2007-047 was not criminal in nature (implicating any rights secured by Plaintiffs under the Fourth Amendment), nor was it terminated on its merits in terms that exonerated Plaintiffs (but rather it was settled with the assistance of a DEC Administrative Law Judge); and (2) the criminal complaint lodged against Plaintiff Douglas by APA Enforcement Officer Miller on September 7, 2007 (charging them with Harassment in the Second Degree), was not "initiated" by Defendants, nor was it terminated on its merits in terms that exonerated Plaintiffs (but rather it was adjourned in contemplation of dismissal pursuant to N.Y. C.P.L. § 170.55, and ultimately dismissed).  (Dkt. No. 40, Attach. 1, at 50-54 [attaching pages "41" through "45" of APA Defs.' Memo. of Law].)

Generally, in response, Plaintiffs oppose the APA Defendants' first argument (regarding Administrative Enforcement Proceeding No. E2007-047) by arguing that (1) the administrative enforcement proceeding need not be criminal in nature if it caused the plaintiff to sustain special

damages or injury, (2) Plaintiffs have alleged facts plausibly suggesting that they sustained such special damages or injury, and (3) Plaintiffs have also sufficiently alleged that the proceeding was terminated in their favor, and that it was initiated by the APA Defendants with malice and without probable cause.  (Dkt. No. 56, Attach. 3, at 42-46, and Attach. 4, at 1 [attaching pages "30" through "35" of Plfs.' Opp'n Memo. of Law].)  However, Plaintiffs do not appear to address the APA Defendants' second argument (regarding the criminal complaint lodged against Plaintiff Douglas).  (*Id*.)

Generally, in reply, the APA Defendants assert five arguments: (1) the state court decisions cited by Plaintiffs do not salvage their federal malicious prosecution claims arising from Administrative Enforcement Proceeding No. E2007-047; (2) in any event, those claims should be dismissed because the administrative enforcement proceeding was based on probable cause (according to Plaintiffs' own factual allegations) and it was not pursued with the requisite malice; (3) turning to Plaintiffs' malicious prosecution claims arising from the criminal complaint lodged against Plaintiff Douglas, by failing to respond to the APA Defendants' arguments for the dismissal of those claims, Plaintiffs' have effectively abandoned those claims; (4) in any event, to the extent those claims arise under state law, they should be dismissed with prejudice because they are barred by a one-year statute of limitations; and (5) finally, in the event that all of Plaintiffs' federal claims of malicious prosecution are dismissed, the Court should decline to exercise jurisdiction over Plaintiffs' state-law claims of malicious prosecution. (Dkt. No. 65, at 18-19 [attaching pages "14" and "15" of APA Defs.' Reply Memo. of Law].)

After carefully considering the matter, the Court dismisses Plaintiffs' malicious prosecution claims arising from the criminal complaint lodged against Plaintiff Douglas by APA Enforcement Officer Miller on September 7, 2007 (charging them with Harassment in the

Second Degree).  While the Court is not persuaded by the APA Defendants' argument that the criminal complaint lodged against Plaintiff Douglas was not "initiated" by Defendants, the Court accepts the APA Defendants' argument that Plaintiffs have alleged facts plausibly suggesting that the criminal action was not terminated in Plaintiff Douglas' favor, for the reasons offered by the APA Defendants.  The Court adds two points.  First, because Plaintiffs fail to sufficiently respond to the APA Defendants' arguments in favor of the dismissal of these claims, the APA Defendants' burden with regard to those arguments is modest; again, while the APA Defendants have met that modest burden with regard to their termination-not-in-Plaintiffs'-favor argument, they have not done so with regard to their initiation-of-prosecution argument.  Second, even though the APA Defendants' termination-not-in-Plaintiffs'-favor argument depends on a document not attached to Plaintiffs' Complaint (i.e., an Order of Adjournment in Contemplation of Dismissal), that document may be considered by the Court on the APA Defendants' motion to dismiss for failure to state a claim, because the Court can take judicial notice of that judicial order, the accuracy of which Plaintiffs have not disputed.  *See, supra,* Part II.A. of this Decision and Order.[18]

However, with regard to Plaintiffs' malicious prosecution claims arising from Administrative Enforcement Proceeding No. E2007-047, the Court agrees with Plaintiffs that those claims should not be dismissed for failure to state claim, for the reasons offered by Plaintiffs.  The Court adds two points.  First, the APA Defendants' termination-not-in-Plaintiffs' favor argument depends on documents that the Court cannot consider on the APA Defendants'

---

[18]     *See Gary Alan Green & Broadway Sound & Video*, 36 F. App'x 663, 669-70 (2d Cir. 2002) ("Plaintiffs' requests that we take judicial notice of New York state court orders . . . are granted."); *Reed v. Friedman Mgt. Corp.*, 11-CV-7547, 2012 WL 1267972, at *3 (S.D.N.Y. Apr. 12, 2012) ("It is proper for the Court to take judicial notice of the state court's order").

motion to dismiss for failure to state a claim: the documents are not attached to Plaintiffs'

Complaint, incorporated by reference in that Complaint, or integral to that Complaint.  *See,*

*supra,* Part II.A. of this Decision and Order.[19]  Second, the issue of whether to dismiss these

claims based on a lack of sufficient evidence shall be addressed on a motion for summary

judgment, should the APA Defendants choose to file one.

### i.      Abuse-of-Process Claim

As indicated above in Part III.A.2. of this Decision and Order, in support of their motion,

the APA Defendants argue, *inter alia,* that Plaintiffs' Complaint fails to allege facts plausibly

suggesting an abuse-of-process claim against them for the following two reasons: (1) with regard

to Plaintiffs' abuse-of-process claims arising from Administrative Enforcement Proceeding No.

E2007-047, the opening of an administrative enforcement proceeding is not the "issuance of

legal process," the abuse of civil process may not give rise to an abuse-of-process claim under

Section 1983, and/or the existence of probable cause (based on Plaintiffs' own factual

allegations) precludes a finding that the APA Defendants used process in order to obtain a

collateral objective that is outside the legitimate ends of the process; and (2) with regard to

Plaintiffs' abuse-of-process claims arising from the criminal complaint lodged against Plaintiff

Douglas by APA Enforcement Officer Miller on September 7, 2007 (charging them with

Harassment in the Second Degree), those claims are not supported by any factual allegation that

Miller acted with sufficient ulterior motive, or played a sufficient role in the post-initiation phase

of the criminal proceeding, for him to have acted to obtain a collateral objective that is outside

---

[19]      In any event, the Court notes that the ALJ's memorandum, adduced by the APA
Defendants, does not resolve the issue of whether Administrative Enforcement Proceeding No.
E2007-047 was terminated in Plaintiffs' favor.  (Dkt. No. 40, Attach. 35, at 36-37.)  Nor is the
issue resolved by the relevant individuals post-conference written communications.  (*See
generally* Dkt. No. 40. Attach. 35.)

the legitimate ends of the process.  (Dkt. No. 40, Attach. 1, at 55-58 [attaching pages "46"

through "49" of APA Defs.' Memo. of Law].)

Generally, Plaintiffs oppose this argument on the ground that, with regard to all of their

abuse-of-process claims, Plaintiffs have alleged (for example, in Paragraph 276 of their

Complaint) facts plausibly suggesting that, when the APA Defendants employed the regularly

issued processes in question, they intended to harm Plaintiffs without excuse or justification, and

they used the processes in a perverted manner to obtain a collateral objective that is outside the

legitimate ends of the processes.  (Dkt. No. 56, Attach. 4, at 1-4 [attaching pages "35" through

"38" of Plfs.' Opp'n Memo. of Law].)

Generally, in reply, the APA Defendants assert the following four arguments: (1) it is

unclear whether Plaintiffs' oppose the APA Defendants' request for dismissal of the abuse-of-

process claims arising from the criminal complaint; (2) Plaintiffs ignore the APA Defendants'

argument that Plaintiffs have failed to allege facts plausibly suggesting that APA Enforcement

Officer Miller played a sufficient role in the criminal proceeding, *after* it was initiated, for him to

have acted to obtain a collateral objective that is outside the legitimate ends of the process; (3) in

any event, to the extent those claims regarding the criminal charges arise under state law, they

should be dismissed with prejudice because they are barred by a one-year statute of limitations;

(4) with regard to Plaintiffs' abuse-of-process claims arising from the Administrative

Enforcement Proceeding No. E2007-047, Plaintiffs ignore the APA Defendants' previously

asserted argument that the opening of an administrative enforcement proceeding is not the

"issuance of legal process," and in any event the abuse of civil process may not give rise to a

claim of abuse-of-process claim under Section 1983.  (Dkt. No. 65, at 19-20 [attaching pages

"15" and "16" of APA Defs.' Reply Memo. of Law].)

After carefully considering the matter, the Court agrees with the APA Defendants that Plaintiffs' federal abuse-of-process claims arising from Administrative Enforcement Proceeding No. E2007-047 must be dismissed, because the abuse of *civil* process may not give rise to a claim of abuse-of-process claim under Section 1983, for the reasons stated by the APA Defendants in their memoranda of law.  The Court adds one point.  Because Plaintiffs fail to sufficiently respond to the APA Defendants' *civil* process argument, the APA Defendants' burden with regard to the argument is modest; again, while the APA Defendants have met that modest burden with regard to that argument, the Court would accept that argument even if it were to subject that argument to the more rigorous scrutiny appropriate for a contested motion.

However, with regard to Plaintiffs' abuse-of-process claims arising from their criminal prosecution, the Court agrees with Plaintiffs that those claims should not be dismissed for failure to state claim, for the reasons offered by Plaintiffs.  The Court adds two points.  First, the APA Defendants too narrowly construe Plaintiffs' claim as arising only from the initiation of the criminal Complaint, when it fact the claim arises also from the "subsequent pursuit of the criminal action against [Plaintiff] Douglas."  (Dkt. No. 1, at ¶¶ 278, 301.)  For example, not only do Plaintiffs allege that the APA Defendants instructed Miller to file the criminal charges, Plaintiffs allege that the APA Defendants "facilitated [the] criminal action," and "controlled and pursued the criminal proceeding."  (*See, e.g., id.* at ¶¶ 178, 179, 182.)[20]  Second, liberally

---

[20]     While the Court cannot, and does not, consider this letter on the APA Defendants' motion to dismiss for failure to state a claim, the Court cannot help but note that the APA Defendants themselves adduced a letter indicating that the disposition of the criminal charge against Plaintiff Douglas occurred only after the APA agreed to that disposition, and agreed "not [to] appear at the scheduled trial . . . ."  (Dkt. No. 40, Attach. 15, at 2.)

construed,[21] Plaintiffs' Complaint does allege facts plausibly suggesting that the APA

Defendants acted in order to obtain a collateral objective that is outside the legitimate ends of the

process.  (*Id*. at ¶¶ 182, 278 [alleging that the collateral objective was "to intimidate plaintiffs,

cover-up Miller's trespassing on the Premises, and to force plaintiffs to acquiesce and admit guilt

in the ongoing AP A administrative enforcement"].)  *Cf. Norton v. Town of Islip*, 04-CV-3079,

2009 WL 804702, at *6, 11 (E.D.N.Y. March 27, 2009) ("Plaintiff could have stated a claim for

malicious abuse of process [based on his allegation that the Town's collateral objective in

bringing a criminal enforcement action was (1) to have the criminal court assist in the Town's

unlawful deprivation of the Plaintiff's property right without due process of law, and/or (2) to

provoke Plaintiff, through settlement of the criminal prosecution, to submit to a de novo review

before the Town Zoning Board of Appeals in order to shift to Plaintiff the burden of proving the

legitimacy of his Premises' non-conforming status].") , *rev'd on other grounds*, 378 F. App'x 85

(2d Cir. 2010).

### j.      Unlawful-Search-and-Seizure Claims

As indicated above in Part III.A.2. of this Decision and Order, in support of their motion,

the APA Defendants argue, *inter alia*, that Plaintiffs' Complaint fails to state an unlawful-

search-and-seizure claim against them for the following four reasons: (1) with regard to the

---

[21]      The Court notes that *all* complaints (not just *pro se* complaints) must be construed liberally.  *See* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."); *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001) ("In making this assessment [of the pleading sufficiency of a complaint], we must . . . construe the complaint liberally.") (internal quotation marks omitted).  In addition, even when a plaintiff is represented by counsel, his complaint must be construed extra liberally if it alleges civil rights violations.  *See U.S. v. City of New York*, 359 F.3d 83, 91 (2d Cir. 2004) ("Complaints alleging civil rights violations must be construed especially liberally."); *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001) ("[The mandate to construe pleadings liberally] . . . is especially true when dealing with civil rights complaints like this one.").

unlawful-search claim asserted by Plaintiffs, Plaintiffs had no reasonable expectation of privacy under the circumstances because "[i]t is undisputed" that (a) the property had no structures or fencing on it, and was in open view of a public road, (b) the search was the result of an allegation of a wetland violation, during a pending enforcement proceeding regarding another alleged wetland violation, (c) APA Enforcement Officer Miller and APA Biologist Rooks advised the APA Defendants' lawyer of the search before it occurred, (d) Plaintiff Douglas himself escorted Rooks onto the property after excluding Miller from the property; (2) in any event, the APA Defendants are protected from liability on that unlawful-search claim as a matter of law by the doctrine of qualified immunity, based on Plaintiffs' own factual allegations; (3) with regard to any wrongful-seizure claim asserted by Plaintiffs, Plaintiffs fail to allege facts plausibly suggesting that they were "seized" or subjected to excessive force during the search that occurred on September 6, 2007; and (4) to the extent that Plaintiffs' unlawful-search-and-seizure claims are premised on the Sixth and Eighth Amendments, they should be dismissed because those constitutional amendments do not support such claims.  (Dkt. No. 40, Attach. 1, at 58-60 [attaching pages "49" through "51" of APA Defs.' Memo. of Law].)

Liberally construed, Plaintiffs' opposition memorandum of law responds to the APA Defendants' arguments on the ground that Plaintiffs did have a reasonable expectation of privacy under the circumstances, because (1) Plaintiffs did not give APA Enforcement Officer Miller prior permission to enter Plaintiffs' land, (2) Plaintiffs did not know about the alleged complaint of a wetland violation in question (which was ex parte), and (3) the enforcement proceeding in question regarded different alleged wetland violations, and in any event was wrongful.  (Dkt. No. 56, Attach. 3, at 39-42 [attaching pages "27" through "30" of Plfs.' Opp'n Memo. of Law].)

Generally, in reply, the APA Defendants argue that (1) by failing to respond to the APA Defendants' arguments regarding Plaintiffs' search-and-seizure claims, Plaintiffs' have effectively abandoned their search-and-seizure claims, and (2) in any event, to the extent those claims arise under state law, they should be dismissed with prejudice because they are barred by a one-year statute of limitations.  (Dkt. No. 65, at 21 [attaching page "17" of APA Defs.' Reply Memo. of Law].)

After carefully considering the matter, the Court accepts the APA Defendants' argument that Plaintiffs' wrongful-seizure claim against them should be dismissed for failure to state a claim.  The Court adds one point.  Because Plaintiffs fail to sufficiently respond to this argument, the APA Defendants' burden with regard to the argument is modest; again, while the APA Defendants have met that modest burden with regard to that argument, the Court would accept that argument even if it were to subject that argument to the more rigorous scrutiny appropriate for a contested motion.

However, with regard to Plaintiffs' unlawful-search claim, the Court agrees with Plaintiffs that this claim should not be dismissed for failure to state claim, for the reasons offered by Plaintiffs.   The Court adds three points.  First, liberally construed, Plaintiffs' Complaint does allege facts plausibly suggesting that (1) the search occurred without their prior permission, (2) they were not notified of the complaint by a neighboring environmentalist (which turned out to be unfounded), and (3) the then-pending enforcement proceeding regarded a different alleged wetland violation (and in any event was wrongful).  (*See, e.g.,* Dkt. No. 1, at ¶¶ 175-77, 182, 183, 208, 218, 219, 225, 226, 242, 249, 260, 272, 319, 320.)  Moreover, contrary to Defendants' argument, Plaintiffs' Complaint does not appear to allege that (1) the property had no structures or fencing on it, and was in open view of a public road, or (2) APA Enforcement Officer Miller

36

and APA Biologist Rooks advised the APA Defendants' lawyer of the search before it occurred. (*See generally* Dkt. No. 1.)  Indeed, to the contrary, one of the documents attached to the Complaint expressly states that Miller only "attempted" to contact Plaintiff Douglas and his attorney.  (Dkt. No. 1, Attach. 4, at 2 [attaching Miller Affid., stating, "Prior to leaving Agency headquarters for the subject property, I attempted to contact Mr. Douglas and his attorney by telephone to advise them of the complaint and to see if someone could meet us at the subject property."].)

Second, the Second Circuit case cited by the APA Defendants appears distinguishable because (1) it involved an inspection of a dock that was open to public view, (2) the property was specifically subject to a permit, and in any event (3) the inspection was in response to the plaintiff's own application to extend the dock.  *Palmieri v. Lynch*, 392 F.3d 73, 75-76, 82-85 (2d Cir. 2004).  This third fact played a significant role in the Second Circuit's reasoning.[22]  It should be noted that the Second Circuit did not hold in *Palmieri* that any warrantless visit to premises under any environmental regime is permissible, but merely that an environmental regulatory scheme involving warrantless searches may be subject to a special-needs "fact-specific balancing" test.  *Palmieri*, 392 F.3d at 86.  Here, that fact-specific analysis is appropriately decided on a motion for summary judgment, not a motion to dismiss for failure to state a claim.

---

[22]    *See, e.g., Palmieri*, 392 F.3d at 83, 85 ("Palmieri's asserted privacy expectation was diminished for other reasons as well. For one, he had applied for a construction permit and was on notice that the application process would involve some form of site inspection. . . . [The official's] intention . . . was merely to perform her duties relative to the evaluation of Palmieri's most recent permit application . . . .  Indeed, it was Palmieri himself who set in motion the government conduct in question."); *accord, Manbeck v. Town of Lewisboro*, 333 F. App'x 599, 602 (2d Cir. 2009) ("Summary judgment was also properly entered in favor of defendants on Plaintiffs' Fourth Amendment claims because . . . the plaintiffs had significantly diminished expectations of privacy because they had applied for construction permits . . . .").

Third, and finally, Plaintiffs have not pled facts plausibly suggesting that the APA

Defendants are protected from liability as a matter of law by the doctrine of qualified immunity.

*See, infra,* Part III.A.3.l. of this Decision and Order.

### k.    Class-Based Conspiracy Claim

As indicated above in Part III.A.2. of this Decision and Order, in support of their motion,

the APA Defendants argue, *inter alia*, that Plaintiffs' Complaint fails to allege facts plausibly

suggesting a class-based conspiracy claim against them pursuant to 42 U.S.C. § 1985(3), because

the Complaint alleges only animus based on Plaintiffs' political affiliation (as opposed to their

race or other protected classification).  (Dkt. No. 40, Attach. 1, at 61-63 [attaching pages "52"

through "54" of APA Defs.' Memo. of Law].)  In the alternative, the APA Defendants request

that Paragraphs 75 and 76 of the Complaint be struck, pursuant to Fed. R. Civ. P. 12(f)(2), due to

their use of "derogatory terms unbefitting a pleading prepared by an officer of this Court."  (*Id.*

at 62.)  Generally, Plaintiffs respond by arguing, conclusorily, that they have alleged facts

plausibly suggesting that the APA Defendants conspired with the AC Defendants, Defendant

Ruder, and Defendant Hawkeye Conservationists, Inc., for purposes of 42 U.S.C. § 1985.  (Dkt.

No. 56, Attach. 4, at 14 [attaching page "48" of Plfs.' Opp'n Memo. of Law].)  Generally, in

reply, the APA Defendants argue, by failing to respond to the APA Defendants' argument

regarding Plaintiffs' Section 1985 claims, Plaintiffs' have effectively abandoned those Section

1985 claims.  (Dkt. No. 65, at 6-7 [attaching pages "2" and "3" of APA Defs.' Reply Memo. of

Law].)

After carefully considering the matter, the Court accepts the APA Defendants' argument

for the reasons stated by them in their memoranda of law.  The Court adds two points.  First,

because Plaintiffs fail to sufficiently respond to that argument, the APA Defendants' burden with

regard to the argument is modest; again, while the APA Defendants have met that modest burden

with regard to the argument, the Court would accept the argument even if it were to subject the

argument to the more rigorous scrutiny appropriate for a contested motion.  Second, the APA

Defendants' motion to strike is denied.  The two paragraphs in question allege as follows:

> 75.    That APA has evolved from a zoning and land planning
> agency to a State funded enforcement regime driven by personal
> agendas and pressures from environmental organizations and zealots,
> including the Environmentalists, who seek to prevent private property
> owners from building sensible, needed projects that in no way threaten
> the environment, even when there clearly is no law or regulation
> against them, and who seek to extract or remove the human population
> from the Adirondack State Park, or at the very least, corral the human
> population to limited places in the Park.

> 76.    That plaintiffs hereby allege, many members of the
> public, including many Adirondackers, believe, that AP A is used as a
> tool of environmentalists and wealthy downstate residents or residents
> of other States to create their own private playground in the
> Adirondack State Park, to the exclusion of native Adirondackers, or
> individuals who live full-time in the Park.

(Dkt. No. 1, at ¶¶ 75-76.)  Based on the briefing of the APA Defendants, the Court is simply not

persuaded that these allegations are "redundant, immaterial, impertinent, or scandalous," for

purposes of Fed. R. Civ. P. 12(f).

## l.    Qualified Immunity

As indicated above in Part III.A.2. of this Decision and Order, in support of their motion,

the APA Defendants argue, *inter alia*, that all of Plaintiffs' claims against them are barred as a

matter of law by the doctrine of qualified immunity for the following two alternative reasons: (1)

the facts, even viewed in the light most favorable to Plaintiffs, do not establish a constitutional

violation, because (for the reasons described earlier) Plaintiffs' Complaint fails to state a claim

upon which relief can be granted, under Section 1983, 1985, the First Amendment, Fourth

Amendment or the Fourteenth Amendment; and (2) it would not be clear to a reasonable official

that his conduct was unlawful in the situation confronted, because the state of the applicable law was not clearly settled in favor of Plaintiffs, such that the relevant APA Defendants could have been on notice that their conduct with respect to the prosecution of the 2007 civil wetlands enforcement proceeding or the 2007 criminal complaint against Mr. Douglas violated any rights secured to Plaintiffs under the Constitution or laws of the United States.  (Dkt. No. 40, Attach. 1, at 63-64 [attaching pages "54" and "55" of APA Defs.' Memo. of Law].)

Generally, Plaintiffs oppose this argument on the following three grounds: (1) a defendant presenting a qualified immunity defense on a motion to dismiss for failure to state a claim faces a relatively high burden in order to succeed, because the facts supporting the defense must be clear from the face of the complaint; (2) here, the factual allegations of Plaintiffs' Complaint do establish a constitutional violation, because the Complaint sufficiently states the claims described by the APA Defendants; and (3) in any event, based on the factual allegations of Plaintiffs' Complaint, it would have been clear to a reasonable official that his conduct was unlawful in the situation confronted, because the state of the applicable law was clearly settled in favor of Plaintiffs during the time in question.  (Dkt. No. 56, Attach. 3, at 36-37 [attaching pages "24" and "25" of Plfs.' Opp'n Memo. of Law].)

Generally, in reply, the APA Defendants (1) point out that the issue of qualified immunity should be decided as early as possible in a case, and can be decided on a motion to dismiss for failure to state a claim, and (2) elaborate on previously asserted arguments.  (Dkt. No. 65, at 13 [attaching page "9" of APA Defs.' Reply Memo. of Law].)

After carefully considering matter, the Court rejects the APA Defendants' argument for the reasons stated by Plaintiffs in their opposition memorandum of law.  As a result, Plaintiffs' claims against the APA Defendants are not dismissed on this ground.  The Court adds three

points.  First, to the extent that the APA Defendants argue that Plaintiffs' Complaint does not

establish a constitutional violation because it fails to state a claim upon which relief can be

granted, the Court rejects that argument as either moot or unpersuasive.  (To the extent the Court

agrees with the APA Defendants that various of Plaintiffs' claims against them fail to state a

claim, the Court has already dismissed those claims, rendering the APA Defendants' qualified-

immunity argument moot.  To the extent the Court disagrees with the APA Defendants regarding

the actionability of other of Plaintiffs' claims, the Court is not persuaded that Plaintiffs'

Complaint fails to establish a constitutional violation.)

Second, to the extent that the APA Defendants argue that it would not be clear to a

reasonable official that his conduct was unlawful in the situation confronted because the state of

the applicable law was not clearly settled in favor of Plaintiffs during the time in question, the

Court disagrees.  Based on the facts alleged by Plaintiffs, it appears that it would have been clear

to a reasonable official that his conduct was unlawful in the situation confronted.

Third, in addition to the cases cited by Plaintiffs, the Court relies on two other Second

Circuit cases.  *See Green v. Maraio*, 722 F.2d 1013, 1018 (2d Cir. 1983) ("Usually, the defense

of qualified immunity cannot support the grant of a [Fed. R. Civ. P.] 12(b)(6) motion for failure

to state a claim upon which relief can be granted."), *accord, Terranova v. New York*, 144 F.

App'x 143, 146 (2d Cir. 2005).  The Court acknowledges, of course, that there are circumstances

in which a plaintiff may plead himself out of court based on this defense; however, this is simply

not one of those circumstances.

### m.     State-Law Claims

As indicated above in Part III.A.2. of this Decision and Order, in support of their motion,

the APA Defendants argue, *inter alia*, that Plaintiffs' state-law claims against them should be

dismissed based on (a) the Court's discretion, (b) the same grounds that any parallel federal

claims against them were dismissed, or (c) the governing one-year statute of limitations.  (Dkt. No. 40, Attach. 1, at 64-65 [attaching pages "55" and "56" of APA Defs.' Memo. of Law].) Generally, Plaintiffs oppose this argument on the ground that their state-law claims (i.e., for malicious prosecution, abuse of process, and reckless supervisory misconduct) do state a claim upon which relief can be granted.  (*See, e.g.,* Dkt. No. 56, Attach. 3, at 42-46, and Attach. 4, at 1-6 [attaching pages "30" through "40" of Plfs.' Opp'n Memo. of Law].)  Generally, in their reply, the APA Defendants do not appear to expand on their previously asserted arguments.  (*See generally* Dkt. No. 65 [attaching APA Defs.' Reply Memo. of Law].)

After carefully considering the matter, the Court accepts the APA Defendants' statute-of-limitations argument with regard to five of the six state-law claims asserted by Plaintiffs against the APA Defendants.  Generally, Plaintiffs' Complaint asserts the following six state claims against the APA Defendants: (1) a claim for malicious prosecution of an APA enforcement proceeding; (2) a claim for abuse of process in an APA enforcement proceeding and criminal action; (3) a claim for intentional/reckless supervisory misconduct; (4) a claim for intentional/reckless infliction of emotional distress; (5) a claim for prima facie tort; and (6) a claim for breach of contract.  (*See generally* Dkt. No. 1.)  Except for the breach of contract claim (which is governed by a six-year limitations period set forth in N.Y. C.P.L.R. § 213), each of those claims is governed by the one-year limitations period set forth in N.Y. C.P.L.R. § 215.[23]

---

[23]      *See, e.g., Bronx Chrysler Plymouth, Inc. v. Chrysler Corp.*, 212 F. Supp.2d 233, 247 (S.D.N.Y. 2002) ("As a claim involving an intentional tort, the Paladinos' claim against Chrysler Credit for intentional infliction of emotional distress is governed by the one-year limitations period set forth in C.P.L.R. 215(3)."); *Havell v. Islam*, 739 N.Y.S.2d 371, 372 (N.Y. App. Div., 1st Dept., 2002) ("[W]here, as here, a reading of the factual allegations discloses that the essence of the cause of action is an intentional tort, plaintiff cannot avoid a Statute of Limitations bar by labeling the action as one to recover damages for a prima facie tort . . . .") (citations omitted); *Bittner v. Cummings*, 591 N.Y.S.2d 429, 431 (N.Y. App. Div., 2d Dept., 1992) ("Abuse of process and malicious prosecution are both intentional torts which are governed by CPLR 215, the one-year Statute of Limitations . . . .") (citation omitted).

Because the Complaint in this action was filed on March 15, 2010, and the Court finds that all of Plaintiffs' state-law claims against the APA Defendants are in fact predicated on alleged events that occurred well before March 15, 2009 (e.g., the telephonic and email communications with Defendant Ruder in March of 2007, the search of Plaintiff's property in September of 2007, and the criminal proceeding against Plaintiff Douglas in or about September of 2007), each of those state-law claims–except the claim for breach of contract–is dismissed based on the governing one-year statute of limitations.

The Court adds three points.  First, because Plaintiffs fail to sufficiently respond to the APA Defendants' statute-of-limitations argument, the APA Defendants' burden with regard to the argument is modest; again, while the APA Defendants have met that modest burden with regard to that argument, the Court would accept that argument even if it were to subject that argument to the more rigorous scrutiny appropriate for a contested motion.

Second, to extent any federal claims parallel to the state-law claims have otherwise been dismissed by this Decision and Order, the state-law claims are dismissed on the same grounds that the parallel federal claims were dismissed, as an alternative basis for dismissal.  For example, such state-law claims include Plaintiffs' state-law malicious-prosecution claims against the APA Defendants arising from the criminal complaint, and any state-law claims premised on the APA Defendants' alleged wrongful seizure of Plaintiffs' property.

Third, Court rejects the APA Defendants' discretionary argument because it hinges on the dismissal of all of Plaintiffs' federal claims against the APA Defendants; and all of those federal claims have not, in fact, been dismissed.

n.      Fed. R. Civ. P. 8(a)(2)

As indicated above in Part III.A.2. of this Decision and Order, in support of their motion, the APA Defendants argue, *inter alia*, that Plaintiffs' 69-page, 375-paragraph Complaint should be dismissed as unnecessarily prolix and unduly burdensome to the APA Defendants and the Court, pursuant to Fed. R. Civ. P. 8(a)(2).  (Dkt. No. 40, Attach. 1, at 65 [attaching page "56" of APA Defs.' Memo. of Law].)  Generally, Plaintiffs oppose this argument on the ground that, while their Complaint is admittedly long, it must be so because of the factual history of the case and the number of parties and claims.  (Dkt. No. 56, Attach. 4, at 15 [attaching page "49" of Plfs.' Opp'n Memo. of Law].)  Generally, in their reply, the APA Defendants do not appear to expand on their previously asserted argument.  (*See generally* Dkt. No. 65 [attaching APA Defs.' Reply Memo. of Law].)

It is true that not only is Plaintiffs' Complaint 69 pages in length, but it references and attaches 177 pages of exhibits.  (Dkt. No. 1.)  It is also true that Plaintiffs' Complaint appears to contain a certain degree of redundancy, immateriality and/or excessive detail about various matters.  However, the Court is largely persuaded by Plaintiffs' necessity argument: generally, the 13 claims in their Complaint arise from events occurring over an approximately four-year period and involving 22 Defendants.  Moreover, not all of the factual allegations and claims in the Complaint regard the APA Defendants; as a result, the Court is not persuaded that the APA Defendants have standing to request the dismissal of the Complaint in its entirety.  Finally, to the extent that the APA Defendants are implicitly requesting that the Court strike various portions of Plaintiffs' Complaint under Fed. R. Civ. P. 8(a)(2), the APA Defendants have not identified those portions, and the Court is not inclined to *sua sponte* comb through the Complaint yet another time, to weed out redundancy, immateriality and excessive detail.

As a result, the Court rejects the APA Defendants' argument that Plaintiffs' Complaint should be dismissed under Fed. R. Civ. P. 8(a)(2).  However, the Court hastens to remind Plaintiffs' counsel that, generally, such lengthy complaints impose a significant burden on defendants in terms framing a response, and on the Court in terms of reviewing the allegations and claims.  The Court also respectfully reminds Plaintiffs' counsel that what is required by Fed. R. Civ. P. 8 is not necessarily detail but merely enough fact to plausibly suggest an actionable claim.[24]

### o.    Attorney Disqualification

As indicated above in Part III.A.2. of this Decision and Order, in support of their motion, the APA Defendants argue, *inter alia*, that Plaintiffs' counsel should be disqualified from representing them in this proceeding, pursuant to Rule 3.7 of the New York Rules of Professional Conduct and the relevant case law, because he is a material witness with respect to whether Administrative Enforcement Proceeding No. E2007-047 was resolved by settlement or whether it terminated in Plaintiffs' favor for purposes of Plaintiffs' malicious prosecution claim. (Dkt. No. 40, Attach. 1, at 65-68 [attaching pages "56" through "59" of APA Defs.' Memo. of Law].)

Generally, Plaintiffs oppose this argument on the following grounds: (1) under the relevant case law, attorneys should not be disqualified under the advocate-witness rule unless he or she is the only individual, other than the parties, who had knowledge of a significant issue of fact; (2) here, Plaintiffs' counsel is not the only individual, other than the parties, who had

---

[24]    The Court notes that Plaintiffs' proposed Amended Complaint is not much short that their original Complaint–being 72 pages in length, and referencing and attaching 167 pages of exhibits.  (Dkt. No. 56, Attach. 10-17.)

knowledge of whether Administrative Enforcement Proceeding No. E2007-047 was resolved by settlement or whether it was discontinued with prejudice without settlement.  (Rather, in addition to Plaintiff Leroy Douglas and Defendant Paul Van Cott, non-party witness Molly McBride, Esq., also had knowledge of that fact.)  (Dkt. No. 56, Attach. 4, at 15-16 [attaching pages "49" and "50" of Plfs.' Opp'n Memo. of Law].)  In addition, in two affidavits adduced by Plaintiffs' counsel, Plaintiffs present the following additional five arguments: (1) the APA Defendants' motion to disqualify is improper because it is non-dispositive in nature but did not comply with Local Rule 7.1(b)(2); (2) the APA Defendants have not established that the Administrative Enforcement Proceeding No. E2007-047 was not discontinued with prejudice (for example, by adducing the affidavit of Defendant Paul Van Cott on the subject); (3) Plaintiffs' counsel swears that he will not offer testimony on Plaintiffs' behalf at trial, and the APA Defendants have not even argued that they in fact intend to call Plaintiffs' counsel as a witness at trial; (4) any testimony that Plaintiffs' counsel could present would be regarding only one of Plaintiffs' numerous claims in this action; and (5) Plaintiffs would be unduly prejudiced by an Order of disqualification, given Plaintiffs' counsel's familiarity with the case and the lack of other appropriate and willing counsel in the region.  (Dkt. No. 56, Attach. 1, at ¶¶ 3-11 [Douglas Affid.]; Dkt. No. 56, Attach. 2, at ¶¶ 8-13 [Norfolk Affid.].)

Generally, in reply, the APA Defendants argues as follows: (1) the only other non-party witness besides Plaintiffs' counsel that Plaintiffs acknowledge exists with regard to the factual issue in question is Molly McBride, who was the New York State Department of Environmental Conservation Administrative Law Judge presiding over the Administrative Enforcement Proceeding No. E2007-047; and (2) limiting the available pool of such non-party witnesses to ALJ McBride would undermine Fed. R. Evid. 605 and Canon 2 of the Code of Judicial Conduct.

(Dkt. No. 65, at 22-24 [attaching pages "18" through "20" of APA Defs.' Reply Memo. of Law].)

After carefully considering the matter, the Court denies this portion of the APA Defendants' motion for each of the numerous reasons stated by Plaintiffs in their opposition memorandum of law and two affidavits.  The Court adds four points.  First, the APA Defendants have not briefed the Court on whether there exists a transcript, audio recording, or judicial notes of the conference held on November 9, 2009; such evidence would appear to diminish, or perhaps eliminate, the need for witness testimony.[25]

Second, the APA Defendants have not persuaded the Court that effectively requiring ALJ McBride to testify at trial in this action will undermine Fed. R. Evid. 605 and Canon 2 of the Code of Judicial Conduct.  Rule 605 of the Federal Rules of Evidence provides merely that "[t]he presiding judge may not testify as a witness at the trial."  Fed. R. Evid. 605.  Furthermore, Canon 2(C) of the New York State Code of Judicial Conduct provides merely that "[a] judge shall not testify *voluntarily* as a *character* witness."  N.Y. Code of Judicial Conduct, Canon 2(C) [emphasis added].  In addition to the fact that the ALJ would not be testifying as a character witness but a fact witness, the commentary to Canon 2(C) clearly explains that "[a] judge may, however, testify when properly summoned." N.Y. Code of Judicial Conduct, Commentary to Canon 2(C).

Third, the case before the Court appears distinguishable from the case relied on by the APA Defendants–*U.S. v. Roth*, 332 F. Supp.2d 565 (S.D.N.Y. 2004).  As an initial matter, the pertinence of ALJ McBride's testimony in this case appears to far exceed the pertinence of the

---

[25]      The Court notes that evidence exists indicating that the proceeding may have been audio-recorded by Plaintiffs.  (Dkt. No. 40, Attach. 35, at 35 [attaching email message from Attorney Norfolk to ALJ McBride dated Nov. 12, 2009].)

state court judge's testimony in *Roth*, which merely involved providing background information under Fed. R. Evid. 404.  *Roth*, 332 F. Supp.2d at 56869.[26]  Furthermore, unlike the state court judge in *Roth*, ALJ McBride would not be needed to testify regarding her "mental processes" but merely her factual knowledge regarding what was stated by the parties during the conference. *Id*. at 567-68.  Finally, while the Court does have concerns regarding the purported unavailability of other sources of evidence, the Court finds that the APA Defendants have not met their burden on this issue: for example, the APA Defendants' argument that ALJ McBride would not need to testify because Plaintiffs' counsel could testify is circular in nature, because it ignores the fact that Plaintiffs' counsel may be ethically barred from testifying.

Fourth, because it appears to the Court that the APA Defendants may be able to show cause for disqualification on a more fully developed record, the Court denies this portion of the APA Defendants' motion only without prejudice (unless Plaintiffs should decide to voluntarily discontinue their malicious-prosecution claim premised on Administrative Enforcement Proceeding No. E2007-047).

**B.    AC Defendants' Motion to Dismiss Plaintiffs' Claims Against Them for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6)**

**1.    Plaintiffs' Claims Against AC Defendants**

As stated above in Part I of this Decision and Order, Plaintiffs' Complaint asserts the following 10 claims against the AC Defendants: (1) a claim for selective enforcement, denial of equal protection, and/or denial of due process (in violation of the Fourth and Fourteenth

---

[26]    *Cf. Cooper v. City of Ashland*, 116 F. App'x 64, 66 (9th Cir. 2004) ("The settlement agreement specifically assigned to Judge Hogan the role of determining whether the City had furnished a satisfactory letter from the engineering department. Because the sufficiency of the City's performance was the central issue at trial, Judge Hogan's testimony on this point was highly probative.").

Amendments, pursuant to 42 U.S.C. §§ 1983, 1985); (2) a claim for unlawful search and seizure

(in violation of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983); (3) a

claim for malicious prosecution of an APA enforcement proceeding (in violation of the Fourth

and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983); (4) a claim for malicious

prosecution of an APA enforcement proceeding (in violation of state law); (5) a claim for abuse

of process in an APA enforcement proceeding and criminal action (in violation of the Fourth and

Fourteenth Amendments, pursuant to 42 U.S.C. § 1983); (6) a claim for abuse of process in an

APA enforcement proceeding and criminal action (in violation of state law); (7) a claim for

conspiracy (pursuant to 42 U.S.C. §§ 1983, 1985); (8) a claim for intentional/reckless infliction

of emotional distress (in violation of state law); (9) a claim for prima facie tort (in violation of

state law); and (10) a claim for retaliation (in violation of the First Amendment, pursuant to 42

U.S.C. § 1983).  (Dkt. No. 1.)

### 2.      Summary of AC Defendants' Arguments on Their Motion

In support of their motion, the AC Defendants assert arguments based on the following

12 grounds: (1) the fact that the AC Defendants are not "state actors" for purposes of 42 U.S.C. §

1983; (2) protection from liability by New York Civil Rights Law §§ 70-a and 76-a; (3) the fact

that the public interest privilege will prevent Plaintiffs from being able to establish that the AC

Defendants sent the complaints at issue in this case; (4) protection from liability by the First

Amendment and the *Noerr-Pennington* Doctrine; (5) the absence of one or more elements of a

malicious-prosecution claim (under state or federal law); (6) the absence of one or more

elements of an abuse-of-process claim (under state or federal law); (7) the absence of one or

more elements of a claim for intentional/reckless infliction of emotional harm; (8) the absence of

one or more elements of a claim for prima facie tort; (9) the absence of one or more elements of

a claim for selective enforcement, denial of equal protection, and/or denial of due process; (10)

the absence of one or more elements of an unlawful-search-and-seizure claim; (11) the absence

of one or more elements of a conspiracy claim; and (12) the absence of one or more elements of

a claim for retaliation.  (Dkt. No. 42, Attach. 2 [AC Defs.' Memo. of Law].)  In addition, the AC

Defendants request attorneys' fees.  (*Id*.)

### 3.        Court's Findings and Conclusions

#### a.        Status as "State Actors"

As indicated above in Part III.B.2. of this Decision and Order, in support of their motion,

the AC Defendants argue, *inter alia*, that Plaintiffs' federal claims against them should be

dismissed because Plaintiffs' Complaint lacks factual allegations plausibly suggesting that the

AC Defendants are "state actors" for purposes of 42 U.S.C. § 1983 under the legal standard

governing whether private individuals or entities have acted under color of state law.  (Dkt. No.

42, Attach. 2, at 16-21 [attaching pages "8" through "13" of AC Defs.' Memo. of Law].)

Generally, Plaintiffs oppose this argument on the ground that (1) a private individual may be

subject to liability if he willfully collaborated or conspired with an official state actor in the

deprivation of a federal right, and (2) here, Plaintiffs have alleged that the AC Defendants

collaborated or conspired with the APA Defendants in the deprivation of a federal right.  (Dkt.

No. 56, Attach. 4, at 14 [attaching page "48" of Plfs.' Opp'n Memo. of Law].)  Generally, in

reply, the AC Defendants argue that (1) for such a collaboration or conspiracy to exist, there

must be an agreement between the AC Defendants and APA Defendants, to act in concert to

inflict an unconstitutional injury on Plaintiffs, and an overt act done in furtherance of that goal,

and causing some harm, and (2) here, Plaintiffs have not alleged *facts plausibly suggesting* each

of those three elements.  (Dkt. No. 67, at 8-10 [attaching pages "4" through "6" of AC Defs.'

Reply Memo. of Law].)

After carefully considering the matter, the Court must reject the AC Defendants'

arguments.  Liberally construed, Plaintiffs' Complaint alleges facts plausibly suggesting that the

AC Defendants and the APA Defendants reached a meeting of the minds as to what actions to

take against Plaintiffs.  (*See, e.g.,* Dkt. No. 1, at ¶¶ 26-27, 103-18, 184-91 [Plfs.' Compl.]; Dkt.

No. 1, Attach. 1, at 17-22 [attaching Ex. C and D to Plfs.' Compl.]; Dkt. No. 1, Attach. 5

[attaching Ex. H to Plfs.' Compl.].)

Moreover, liberally construed, Plaintiffs' Complaint alleges facts plausibly suggesting

that the actions agreed-upon by the AC Defendants and APA Defendants included the opening of

a new enforcement proceeding against Plaintiffs notwithstanding the settlement of a previous

such enforcement proceeding (allegedly in violation of Plaintiffs' Fourteenth Amendment right

of substantive due process and/or their Fourth Amendment right against malicious prosecution).

(*See, e.g.,* Dkt. No. 1, at ¶ 94, and Attach. 1, at 17-18 [attaching Ex. C to Plfs.' Compl., alleging

that the APA issued a "non-jurisdictional letter" when it entered into the Settlement Agreement

in November of 2006, and attaching an email message indicating that Def. Ruder knew of, but

disregarded, the "letter of non-jurisdiction sent to Douglas in November, 2006"].)[27]

---

[27]       Without further briefing of the parties, the Court is unwilling to conclude that the
fact that Defendants Van Cott and Banta are protected from liability as a matter of law by the
doctrine of prosecutorial immunity (with respect to the bulk of Plaintiffs' Fourth Amendment
malicious-prosecution claim arising from Administrative Enforcement Proceeding No. E2007-
047) bars the liability of a co-conspirator (such as the AC Defendants) with respect to that claim.
*Compare Dennis v. Sparks,* 449 U.S. 24, 28 (1980) ("[T]he private parties conspiring with the
judge were acting under color of state law; and it is of no consequence in this respect that the
judge himself is immune from damages liability. Immunity does not change the character of the
judge's action or that of his co-conspirators.") *with Sparkman v. McFarlin*, 601 F.2d 261, 262 (7th
Cir. 1979) ("Inasmuch as the plaintiffs sought to hold the private defendants liable on a theory
that they conspired with the judge to bring about the allegedly unconstitutional acts, the district
court held that the judge being immune, and no other state action being properly alleged, the
constitutional claims against the other defendants should also be dismissed.").

Finally, liberally construed, Plaintiffs' Complaint alleges facts plausibly suggesting that the AC Defendants committed an overt act in furtherance of that goal, and causing some harm to Plaintiffs.  Most notably, after the alleged agreement was reached orally by telephone, Defendant Ruder committed the act of sending Defendant Miller a lengthy email message that, inter alia, (1) memorialized their mutual understanding of events and agreed-upon plan of action, (2) directed the APA Defendants to send a letter to Plaintiff Douglas about an alleged wetland violation, send another letter to two town officials on the subject, commence a new enforcement action against Plaintiffs (and to aggressively take other actions against Plaintiffs), request in writing that the town not grant Plaintiffs a subdivision permit, and copy Defendant Ruder on any such letters to town officials, (3) promised to conduct legal research on a related issue for the APA Defendants, and brief Defendant Miller on the results of that research, and (4) offered to "back [] up" the APA Defendants with Defendant Ruder's "own legal team," helping the APA Defendants "with research and other tasks."  (*See, e.g.,*  Dkt. No. 1, at ¶ 107; Dkt. No. 1, Attach. 1, at 17-18 [Ex. C to Plfs.' Compl.].)

Of course, the reporting of potential regulatory violations to the government, and/or urging the government to enforce its regulations, does not, in and of itself, constitute state action.[28] Moreover, the giving of legal advice to the government does not, in and of itself, constitute state action.[29]  However, here, Plaintiffs have alleged something more.  Plaintiffs have

---

[28]    *Associated Contract Loggers, Inc. v. U.S. Forest Serv.*, 84 F. Supp.2d 1029, 1032-34 (D. Minn. 200) (rejecting plaintiffs' argument that "nonprofit [private-party] defendants have so entangled themselves in the Forest Service's affairs that they must be considered state actors for purposes of [constitutional claim]," despite fact that nonprofit defendants were active advocates and participants in administrative process).

[29]    *See Glacken v. Incorporated Village of Freeport*, 09-CV-4832, 2012 WL 894412, at *5 (E.D.N.Y. March 15, 2012) ("[T]he fact that the Village retained Warren, a private attorney, to represent it in the Water Works suits, alone, is not enough to confer state action upon him."); *Watson v. Grady*, No. 09-CV-3055, 2010 WL 3835047, at *8 (S.D.N.Y. Sept. 30, 2010) ("Defendant Sims cannot be held liable pursuant to § 1983 as a state actor simply because she was hired as a private attorney for the [School] District.").

alleged (albeit barely) facts plausibly suggesting that the AC Defendants reached an agreement with the APA Defendants to violate Plaintiffs's constitutional rights and committed an over act in furtherance of that goal, crossing the line from private entity to state actor.[30]

> **b.    New York Civil Rights Law §§ 70-a and 76-a**

As indicated above in Part III.B.2. of this Decision and Order, in support of their motion, the AC Defendants argue, *inter alia*, that all of Plaintiffs' claims against them should be dismissed because of the presence of factual allegations plausibly suggesting that the AC Defendants are protected from liability as a matter of law by New York Civil Rights Law §§ 70-a and 76-a.  (Dkt. No. 42, Attach. 2, at 21-23 [attaching pages "13" through "15" of AC Defs.' Memo. of Law].)

Generally, Plaintiffs oppose this argument on the ground that New York Civil Rights Law §§ 70-a and 76-a does not apply for three reasons: (1) that statute merely permits a defendant to maintain an action, claim or cross-claim for damages against a plaintiff who violates the statute, and does not provide grounds for dismissal of the plaintiff's claims against the defendant (even when considered in conjunction with N.Y. C.P.L.R. Rules 3211[g] and

---

[30]    *See Koehler ex rel. Koehler v. Juniata Cnty. Sch. Dist.*, 07-CV-0117, 2008 WL 1787632, at *9-11 (M.D. Pa. Apr. 17, 2008) (finding that members of nonprofit corporation acted in concert with school district to render those members state actors for purposes of 42 U.S.C. § 1983, because members and school district willfully "acted as a team" to deprive plaintiff of his constitutional rights); *Kufalk v. Hart*, 610 F. Supp. 1178, 1186 (N.D. Ill. 1985) (finding that members of nonprofit corporation acted in concert with state department of mental health and developmental disabilities to render those members state actors for purposes of 42 U.S.C. § 1983, because plaintiff alleged "specific instances in which the [members of the nonprofit corporation] acquiesced in, or affirmatively repeated, various false, misleading and pretextual statements uttered by the state defendants"); *Ray v. Edwards*, 557 F. Supp. 664, 670-71 (D.C. Ga. 1982) (finding that issue of fact existed as to whether state defendants and private nonprofit association of retarded citizens conspired to deprive former superintendent of his constitutional rights by dismissing him from his position, where plaintiff has alleged that the decision to terminate him was reached jointly and through a conspiracy among the state and private defendants).

3212[h], which do not apply in federal court); (2) in any event, that statute does not apply to federal claims; and (3) that statute does not apply to Plaintiffs' state claims against the AC Defendants in this action, which arise solely from an administrative enforcement proceeding (and not the application for a zoning or land-use permit), and which in any event have a substantial basis in law.  (Dkt. No. 56, Attach. 4, at 9-14 [attaching pages "43" through "48" of Plfs.' Opp'n Memo. of Law].)

Generally, in reply, the AC Defendants argue that New York Civil Rights Law §§ 70-a and 76-a applies to bar Plaintiffs' state-law claims against the AC Defendants because it "constitutes a burden of proof provision that is substantive, rather than procedural," for the reasons stated in Defendant Ruder's reply memorandum of law, which the AC Defendants attempt to incorporate by reference.  (Dkt. No. 67, at 5, n.1 [attaching page1 "1" of AC Defs.' Reply Memo. of Law].)

After carefully considering the matter, the Court agrees with Plaintiffs that New York Civil Rights Law §§ 70-a and 76-a does not bar Plaintiffs *federal* claims against the AC Defendants, for the reasons stated by Plaintiffs in their memorandum of law.  The Court adds two points.  First, in their reply memorandum of law, the AC Defendants do not bother to even respond to Plaintiffs' arguments regarding their federal claims, instead focusing on Plaintiffs' arguments regarding their state claims.  The Court interprets this as a concession that Plaintiffs' arguments have merit.  Second, even if the Court were not to so interpret the AC Defendants' arguments, the Court would agree with Plaintiffs for the reason offered by Plaintiffs.  In addition to the cases offered by Plaintiffs, the Court relies on two other cases.[31]  As a result, Plaintiffs'

---

[31]     *See Ginx, Inc. v. Soho Alliance*, 720 F. Supp.2d 342, 366 (S.D.N.Y. Aug. 19, 2010) ("In every other case this Court has located, federal courts have declined to apply Anti–SLAPP statutes to federal claims."); *Chofetz Chaim Radin, Inc. v. Village of New*

federal claims against the AC Defendants (recited above in Part III.B.1. of this Decision and Order) survive the AC Defendants' arguments premised on New York Civil Rights Law §§ 70-a and 76-a.

Moreover, after carefully considering the matter, the Court agrees with Plaintiffs that New York Civil Rights Law §§ 70-a and 76-a does not bar Plaintiffs *state* claims against the AC Defendants, for the reasons stated by Plaintiffs in their memorandum of law.  The Court adds two points.  First, the AC Defendants' attempt to incorporate by reference, in their own reply memorandum of law, arguments asserted by Defendant Ruder in his reply memorandum of law is unsuccessful.[32]  As a result, the Court need not consider those arguments in deciding the AC Defendants' motion.

Second, even if the Court were to incorporate the arguments by reference, the Court would reject those arguments.  Even assuming for the sake of argument that New York Anti-SLAPP suit rules are substantive in nature, those rules do not warrant dismissal of Plaintiffs'

---

*Hempstead by its Bd.*, 98 F. Supp.2d 347, 360 (S.D.N.Y.2000) (rejecting application of Anti-SLAPP statute because "[t]here is no reason why a federal claim, brought in a federal court for an alleged violation of the plaintiffs' federal statutory or constitutional rights, should be subjected to different standards of pleading or proof than are called for under the Federal Rules").

[32]     In particular, because such an incorporation by reference of the seven-page section from Defendant Ruder's reply memorandum of law would effectively enlarge the AC Defendants' reply memorandum of law from ten pages in length to seventeen pages in length, that incorporation would violate Local Rule 7.1(b)(1), which establishes a limit of ten pages on reply memoranda of law.  *See Topliff v. Wal-Mart Stores East LP*, 04-CV-0297, 2007 WL 911891, at *9 n.65 (N.D.N.Y. Mar. 22, 2007) (Lowe, M.J.) ("A party may not articulate a legal argument simply by 'incorporating by reference' the argument presented in another document. Such a practice violates the Local Rule on page limitations.")*, accord, Nissan Motor Acceptance Corp. v. Dealmaker Nissan, LLC*, 09-CV-0196, 2012 WL 2522651, at *2 (N.D.N.Y. June 27, 2012) (Suddaby, J.).  While it is conceivable that the AC Defendants (which consist of three parties) may have filed three separate motions to dismiss (and thus three separate reply memoranda of law, each totaling ten pages in length), they did not request leave to do so.

state-law claims against the AC Defendants for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). This is because Plaintiffs have not alleged facts plausibly suggesting that their role as the *subject* of APA administrative enforcement proceeding E2007-47 (the initiation of which gives rise to Plaintiffs' state-law claims against the AC Defendants) somehow rendered Plaintiffs "public applicants or permittees" for purposes of New York Civil Rights Law § 76-a.[33] Nor have Plaintiffs alleged facts plausibly suggesting that their *settlement* of APA Administrative Enforcement Proceeding No. E2005-200 either (a) effectively rendered them "public applicants or permittees" for purposes of New York Civil Rights Law § 76-a,[34] or (b) was directly reported on, commented on, challenged or opposed by the AC Defendants' in their communications with the APA Defendants (which occurred more than four months after the settlement occurred). Indeed, to the contrary, Plaintiffs allege that the settlement was essentially *ignored* by all Defendants. Finally, in any event, Plaintiffs have not alleged facts plausibly suggesting that their state-law claims lack a substantial basis in fact and law; to the contrary, Plaintiffs have alleged facts plausibly suggesting that their state-law claims possess such a substantial basis.

---

[33]     *See OSJ, Inc. v. Work*, 691 N.Y.S.2d 302, 307 (N.Y. Sup. Ct., Madison Cnty., 1999) (finding that a bar's defense of an administrative proceeding by state liquor authority to revoke its liquor license did not render the bar a "public applicant or permittee" for purposes of New York Civil Rights Law § 76-a).

[34]     Indeed, the settlement agreement expressly recognized that Plaintiffs had never sought a permit. (Dkt. No. 1, Attach. 1 at 1 ["No permit was obtained from the Agency prior to the deposit of this fill."].) Furthermore, the settlement agreement conferred on Plaintiff none of the benefits of a permit; rather, it merely discontinued the administrative enforcement proceeding upon Plaintiffs' agreement to remove the fill in question. (*Id.*) *See Hariri v. Amper*, 854 N.Y.S.2d 126, 130 (N.Y. Sup. Ct., App. Div. 1st Dept., 2008) ("[P]laintiff cannot be deemed a public applicant or permittee [for purposes of New York Civil Rights Law § 76-a] based upon the fact that he aggressively advocated a particular agenda directly to Town Board members and at public meetings, and took steps to commence litigation against the Town. . . . [P]laintiff made [no] attempt to comply with, or initiate an application process under, the Town of Riverhead's specific procedures governing applications for zoning variances").

For all these reasons, like their federal claims, Plaintiffs' state claims against the AC

Defendants (recited above in Part III.B.1. of this Decision and Order) survive the AC

Defendants' arguments premised on New York Civil Rights Law §§ 70-a and 76-a (and N.Y.

C.P.L.R. 3211[g] and/or 3212[h]).

### c.      Public-Interest Privilege

As indicated above in Part III.B.2. of this Decision and Order, in support of their motion,

the AC Defendants argue, *inter alia*, that all of Plaintiffs' claims against them should be

dismissed because the public interest privilege will prevent Plaintiffs from being able to establish

at trial that the AC Defendants sent the emails and other communications at issue in this case.

(Dkt. No. 42, Attach. 2, at 24 [attaching page "16" of AC Defs.' Memo. of Law].)  Plaintiffs do

not appear to specifically address this argument in their opposition memorandum of law.  (*See*

*generally* Dkt. No. 56, Attach. 3-4 [Plfs.' Opp'n Memo. of Law].)  Nor do the AC Defendants

appear to elaborate on this argument in their reply.  (*See generally* Dkt. No. 67 [AC Defs.' Reply

Memo. of Law].)

After carefully considering the matter, the Court rejects this argument for two alternative

reasons.  First, the AC Defendants have not persuaded the Court that the public interest privilege

will, in fact, prevent Plaintiffs from being able to introduce at trial evidence of the fact that the

AC Defendants sent the emails and other communications in question.  In addition to not

persuading the Court that they are entitled to the privilege under the circumstances, the AC

Defendants have not persuaded the Court that the privilege extends to trial; rather, it appears to

exist only in the context of discovery.[35]

---

[35]      *See Goel v. U.S. Dept. of Justice*, 03-CV-0579, 2003 WL 22471945, at *3
(S.D.N.Y. Oct. 30, 2003) ("[The public-interest-privilege] protection only exists in the context of
discovery . . . ."); *In re World Trade Ctr. Bombing Litig. v. Port Auth. of N.Y. and N.J.*, 93
N.Y.2d 1, 8 (N.Y. 1999) ("[The public-interest] privilege permits appropriate parties to protect

Second, and more important, whether or not a privilege will likely prevent a plaintiff from obtaining certain evidence during discovery (or even introducing certain evidence at trial) regarding an element of a claim has no bearing on whether that plaintiff has alleged facts plausibly suggesting that element in its complaint.[36]  Simply stated, this argument is more appropriate for a motion for summary judgment than a motion to dismiss for failure to state a claim.

### d.    *Noerr-Pennington* **Doctrine**

As indicated above in Part III.B.2. of this Decision and Order, in support of their motion, the AC Defendants argue, *inter alia*, that all of Plaintiffs' claims against them should be dismissed because of the presence of factual allegations plausibly suggesting that the AC Defendants are protected from liability as a matter of law by the First Amendment and the *Noerr-Pennington* Doctrine.  (Dkt. No. 42, Attach. 2, at 25-27 [attaching pages "17" through "19" of AC Defs.' Memo. of Law].)

---

information from ordinary disclosure, as an exception to liberal discovery rubrics . . . .") (citation omitted); *Dunivan v. New York State Elec. and Gas Corp.*, 889 N.Y.S.2d 882, at *3 (N.Y. Sup. Ct., Chemung Cnty. 2009) ("The public interest privilege is applied as an exception to generally liberal discovery rules . . . .").

[36]     *See Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 123-24 (2d Cir. 1991) ("Under Rule 8(a), a plaintiff  is not required to prove his case at the pleading stage. . . . Thus, though admissibility of a document would properly be considered in the context of a motion for summary judgment in opposition to which the plaintiff has purported to adduce the proof on which he would rely at trial, evidentiary flaws in documents described in a pleading are not a basis for dismissal for failure to state a claim."); *Szoke v. Carter*, 165 F.R.D. 34, 36 (S.D.N.Y. 1996) ("The trial court's role [when deciding a motion to dismiss for failure to state a claim] is to appraise the legal merits of the complaint and not to weigh the evidence which might be introduced at trial."); *Zatz v. Hertz, Neumark and Warner*, 262 F. Supp. 928, 930 (S.D.N.Y. 1966) ("The complaint contains sufficient allegations of a conspiracy involving Factor to survive a motion to dismiss (it being immaterial at this point whether or not plaintiff will establish a conspiracy at the trial.").

Generally, Plaintiffs oppose this argument on the following four grounds: (1) the Second Circuit has not applied the *Noerr-Pennington* doctrine in cases other than antitrust cases; (2) the doctrine applies only in cases of governmental petitioning that was public in nature, unlike the case here; (3) the doctrine applies only in cases in which the petitioning party sought administrative, judicial or legislative relief from the government, which did not happen here; and (4) even where the doctrine applies, an exception to it exists where, as here, (a) the petitioner's conduct leads to public official misconduct or an unconstitutional result, or (b) the petitioning involved unlawful corrupt or unethical means.  (Dkt. No. 56, Attach. 3, at 6-9 [attaching pages "40" through "45" of Plfs.' Opp'n Memo. of Law].)

Generally, in reply, the AC Defendants assert the following three arguments: (1) while it is true that the Second Circuit has not applied the *Noerr-Pennington* doctrine in cases other than antitrust cases, recent district court decisions from within the Second Circuit have done so, including in cases asserting federal civil rights claims and state-law tort claims; (2) Plaintiffs are incorrect that the *Noerr-Pennington* doctrine applies only in cases of governmental petitioning that was public in nature, as is evident from a case that petitioners themselves cite; and (3) the first doctrine exception to which Plaintiffs refer (i.e., for conduct that leads to either public official misconduct or an unconstitutional result) applies only where the conduct is egregious and overly corrupt such as bribery, which is not the case here, and the second doctrine exception to which Plaintiffs refer (i.e., for petitioning that involves unlawful, corrupt or unethical means, also known as the "sham exception") applies only where the political actor as no real interest in the outcome.  (Dkt. No. 67, at 5-7 [attaching pages "1" through "3" of AC Defs.' Reply Memo. of Law].)

After carefully considering the matter, the Court rejects the AC Defendants' reliance on the *Noerr-Pennington* doctrine as a ground for the dismissal of Plaintiffs' claims against them for the third and fourth reasons offered by Plaintiffs (i.e., the fact that the doctrine applies only in cases in which the petitioning party sought administrative, judicial or legislative relief from the government, which is not the case here, and, in any event, the fact that one or both of two exceptions to the doctrine apply under the circumstances).

The Court adds three points.  First, the AC Defendants do not reply to the third reason offered by Plaintiff, suggesting their acknowledgment of the reason's merit.  Inherent in the notion of petitioning the government for redress would appear to be a requirement that there is a request for administrative, judicial or legislative relief.  Furthermore, based on the allegations of the Complaint, the Court can find no administrative, judicial or legislative relief for which the AC Defendants petitioned the government.  Indeed, based on the allegations of the Complaint, the AC Defendants were seeking something other than mere "administrative relief."  Second, in any event, the Court finds that, based on the facts alleged in Plaintiffs' Complaint, the AC Defendants' conduct led to public official misconduct or an unconstitutional result, and/or the petitioning involved unlawful corrupt or unethical means (e.g., a directive to the APA Defendants to commence a new enforcement action against Plaintiffs in disregard of the settlement of a previous such enforcement proceeding, accompanied by an agreement to extend legal assistance to the APA Defendants if they would do so).  Third, under the circumstances, the AC Defendants' *Noerr-Pennington* doctrine defense is more appropriately relied on by them on a motion for summary judgment than a motion to dismiss for failure to state a claim.

**e.      Malicious-Prosecution Claim**

As indicated above in Part III.B.2. of this Decision and Order, in support of their motion, the AC Defendants argue, *inter alia*, that Plaintiffs' malicious-prosecution claim against them should be dismissed on the following four grounds: (1) Plaintiffs have failed to allege facts plausibly suggesting that the AC Defendants initiated the APA enforcement proceeding against them; (2) Plaintiffs have failed to allege facts plausibly suggesting a lack of probable cause for that proceeding; (3) Plaintiffs have failed to allege facts plausibly suggesting that the alleged proceeding in question–which was civil in nature–caused Plaintiffs to suffer an interference with a provisional remedy; and (4) based on Plaintiffs' factual allegations, this claim is barred by the applicable one-year limitations period.  (Dkt. No. 42, Attach. 2, at 27-28 [attaching pages "19" and "20" of AC Defs.' Memo. of Law].)

Generally, Plaintiffs oppose this argument on the following three grounds: (1) Plaintiffs have alleged facts plausibly suggesting a lack of probable cause for Administrative Enforcement Proceeding No. E2007-047; (2) Plaintiffs have alleged facts plausibly suggesting actual malice; (3) interference with a provisional remedy is not necessary where a plaintiff has sustained special damages or injury, and here, Plaintiffs have alleged facts plausibly suggesting that they sustained such special damages or injury.  (Dkt. No. 56, Attach. 3, at 42-46 [attaching pages "30" through "34" of Plfs.' Opp'n Memo. of Law]; Dkt. No. 56, Attach. 4, at 1 [attaching page "35" of Plfs.' Opp'n Memo. of Law].)  Plaintiffs do not appear to specifically respond to the AC Defendants' argument that Plaintiffs have not alleged facts plausibly suggesting that the AC Defendants initiated Administrative Enforcement Proceeding No. E2007-047 against them.  (*Id.*)  Nor do Plaintiffs appear to specifically respond to the AC Defendants' argument that, based on Plaintiffs' factual allegations, Plaintiffs' malicious-prosecution claim against them is barred by the applicable one-year limitations period.

Generally, in reply, the AC Defendants argue that (1) to give rise to an actionable claim, the proceeding in question must have been criminal in nature, and it was not, and (2) in any event, the proceeding in question was not terminated in Plaintiffs' favor.  (Dkt. No. 67, at 12 [attaching page "8" of AC Defs.' Reply Memo. of Law].)

After carefully considering the matter, the Court rejects the AC Defendants' arguments that (1) based on the factual allegations of the Complaint, there was probable cause for the proceeding, (2) Plaintiffs have failed to allege facts plausibly suggesting that the alleged proceeding in question caused Plaintiffs to suffer an interference with a provisional remedy, (3) the proceeding in question must have been criminal in nature, and (4) based on the factual allegations of the Complaint, the proceeding was not terminated in Plaintiffs' favor.

However, the Court accepts the AC Defendants' argument that (1) Plaintiffs have failed to allege facts plausibly suggesting that the AC Defendants initiated the APA enforcement proceeding against them, and (2) based on Plaintiffs' factual allegations, Plaintiffs' state-law claim of malicious-prosecution against the AC Defendants is barred by the applicable one-year limitations period.  The Court adds two points.  First, because Plaintiffs fail to sufficiently respond to both of these two arguments for the dismissal of this claim, the AC Defendants' burden with regard to those arguments is modest; again, while the AC Defendants have met that modest burden with regard to those arguments, the Court would accept those arguments even if it were to subject them to the more rigorous scrutiny appropriate for a contested motion.  Second, the Court's agreement with the AC Defendants' statute-of-limitations argument extends only to the state-law claim of malicious prosecution against them; the Court finds that the federal claim of malicious prosecution is governed by a three-year statute of limitations, pursuant to 42 U.S.C. § 1983.[37]

---

[37]     *See Brown v. Seniuk*, 01-CV-1248, 2002 WL 32096576, at *3 (E.D.N.Y. March 25, 2002) ("The Statute of Limitations for actions for malicious prosecution is three years under 42 U.S.C. § 1983, and one year under New York state law. McKinney's CPLR § 215.").

### f.      Abuse-of-Process Claim

As indicated above in Part III.B.2. of this Decision and Order, in support of their motion, the AC Defendants argue, *inter alia*, that Plaintiffs' abuse-of-process claim against them should be dismissed for six reasons: (1) based on the factual allegations of the Complaint, to the extent this claim is based on a criminal proceeding, the AC Defendants did not commence that criminal proceeding or initiate the process issued in that proceeding; (2) use of process in a civil proceeding cannot give rise to a Section 1983 abuse-of-process claim; (3) based on the factual allegations of the Complaint, regardless of whether this claim is based on a criminal or civil action, there was no process used by the AC Defendants after the filing of that action; (4) based on the factual allegations of the Complaint, regardless of whether this claim is based on a criminal or civil action, the AC Defendants did not intend to harm Plaintiffs; (5) based on the factual allegations of the Complaint, regardless of whether this claim is based on a criminal or civil action, there was no use of process in a perverted manner to obtain a collateral objective; and (6) based on the factual allegations of the Complaint, regardless of whether this claim is based on a criminal or civil action, the claim is barred by the applicable one-year limitations period.  (Dkt. No. 42, Attach. 2, at 28-30 [attaching pages "20" through "22" of AC Defs.' Memo. of Law].)

Generally, Plaintiffs oppose this argument on the ground that they have alleged (for example, in Paragraph 276 of their Complaint) facts plausibly suggesting that, when the AC Defendants employed the regularly issued processes in question, they intended to harm Plaintiffs without excuse or justification, and they used the processes in a perverted manner to obtain a collateral objective that is outside the legitimate ends of the process.  (Dkt. No. 56, Attach. 4, at 1-4 [attaching pages "35" through "38" of Plfs.' Opp'n Memo. of Law].)  Plaintiffs do not appear to specifically respond to the AC Defendants' first, second or sixth arguments.  (*Id*.)

Generally, in reply, the AC Defendants argue that (1) the abuse of process must occur in a criminal proceeding, which it did not do so in this case, and (2) in any event, Plaintiffs must allege facts plausibly suggesting their success in that proceeding, which they have not done in this case. (Dkt. No. 67, at 12 [attaching page "8" of AC Defs.' Reply Memo. of Law].)

After carefully considering the matter, the Court accepts the AC Defendants' arguments with regard to both the state and federal abuse-of-process claims against them arising from the criminal proceeding in question, for the reasons stated in their initial memorandum of law. The Court adds only that the Complaint alleges facts plausibly suggesting that it was the APA Defendants, and only the APA Defendants, who engaged in the abuse of process in the criminal proceeding. (*See, e.g.,* Dkt. No. 1, at ¶¶ 178, 179, 181, 182, 183, 273, 278, 296, 301.)

Moreover, the Court accepts the AC Defendants' argument with regard to both the state and federal abuse-of-process claim against them arising from the civil proceeding in question, for the second, third and sixth reasons stated in their initial memorandum of law. The Court adds three points. First, the second reason stated by the AC Defendants applies to only Plaintiffs' federal abuse-of-process claim, not their state abuse-of-process claim. Second, the sixth reason stated by the AC Defendants applies only to Plaintiffs' state abuse-of-process claim, not their federal abuse-of-process claim (which is governed by a three-year statute of limitations).[38] Third, the Court is not persuaded by the fourth and fifth reasons stated by the AC Defendants in their memorandum of law with regard to any of Plaintiffs' abuse-of-process claims against the AC Defendants.

---

[38]    *See Ferran v. Town of Grafton*, 979 F. Supp. 944, 947 (N.D.N.Y.1997) (Scullin, J.) ("[B]ecause any cause of action for malicious abuse of process would have accrued when Judge Cholakis issued his favorable ruling on July 10, 1985, these claims are also barred by the three year statute of limitations applicable to § 1983 claims.").

g.      **Intentional/Reckless-Infliction-of-Emotional-Harm claim**

As indicated above in Part III.B.2. of this Decision and Order, in support of their motion, the AC Defendants argue, *inter alia*, that Plaintiffs' intention/reckless-infliction-of-emotional-harm claim against them should be dismissed for four reasons: (1) the absence of factual allegations plausibly suggesting the extreme and outrageous conduct; (2) a corporate Plaintiff such as the Douglas Corporation cannot suffer emotional distress; (3) the public interest privilege will prevent Plaintiffs from being able to establish this claim at trial; and (4) based on Plaintiffs' factual allegations, this claim is barred by the applicable one-year limitations period. (Dkt. No. 42, Attach. 2, at 31-32 [attaching pages "23" and "24" of AC Defs.' Memo. of Law].) Generally, in their opposition memorandum of law, Plaintiffs do not appear to specifically address the AC Defendants' arguments regarding this claim. (*See generally* Dkt. No. 56, Attach. 3-4 [Plfs.' Opp'n Memo. of Law].)  Nor do the AC Defendants appear to elaborate on their arguments in their reply.  (*See generally* Dkt. No. 67 [AC Defs.' Reply Memo. of Law].)

After carefully considering the matter, the Court agrees that this claim should be dismissed for the first, second and fourth reasons offered by the AC Defendants in their memorandum of law.  The Court adds three points.  First, because Plaintiffs fail to sufficiently respond to the APA Defendants' argument for the dismissal of this claim, the APA Defendants' burden with regard to that argument is modest; again, while the APA Defendants have met that modest burden with regard to their first, second and fourth reasons for dismissal of this claim, the Court would accept those reasons even if it were to subject them to the more rigorous scrutiny appropriate for a contested motion.  Second, while the Court agrees with the APA Defendant that Plaintiff Douglas do not allege facts plausibly suggesting that he experienced emotional distress that was *severe* in nature, this question does present somewhat of a close call, given that he does allege facts plausibly suggesting that he suffered at least some emotional

distress.  (*See, e.g.,* Dkt. No. 1, at ¶¶ 236, 243, 248.)  Third, while the Court finds that several alternative reasons exist to dismiss this claim,  none of those reasons is the public interest privilege, for the reasons stated above in Part III.B.3.c. of this Decision and Order.

### h.    Prima-Facie-Tort Claim

As indicated above in Part III.B.2. of this Decision and Order, in support of their motion, the AC Defendants argue, *inter alia*, that Plaintiffs' prima-facie-tort claim against them should be dismissed for five reasons: (1) Plaintiffs have failed to allege facts plausibly suggesting any exclusively malicious intent possessed by the AC Defendants to inflict harm on Plaintiffs; (2) Plaintiffs have failed to allege facts plausibly suggesting the lack of any excuse or justification for the AC Defendants' actions; (3) Plaintiffs have failed to allege facts plausibly suggesting any special damages resulting from the AC Defendants' alleged intentional infliction of harm on Plaintiffs; (4) the governmental actions allegedly influenced by the AC Defendants must be presumed to have been supported by good cause; and (5) based on Plaintiffs' factual allegations, this claim is barred by the applicable one-year limitations period.  (Dkt. No. 42, Attach. 2, at 33-35 [attaching pages "25" through "27" of AC Defs.' Memo. of Law].)  Generally, in their opposition memorandum of law, Plaintiffs do not appear to specifically address the AC Defendants' arguments regarding this claim.  (*See generally* Dkt. No. 56, Attach. 3-4 [Plfs.' Opp'n Memo. of Law].)  Generally, in reply, the AC Defendants argue that, in their opposition memorandum of law, Plaintiffs have failed to oppose the AC Defendants' arguments in support the dismissal of this claim against them.  (Dkt. No. 67, at 12-13 [attaching pages "8" and "9" of AC Defs.' Reply Memo. of Law].)

After carefully considering the matter, the Court agrees that this claim should be dismissed for the first, third and fifth reasons offered by the AC Defendants in their memorandum of law.  The Court adds four points.  First, because Plaintiffs fail to sufficiently

respond to the APA Defendants' argument for the dismissal this claim, the APA Defendants' burden with regard to that argument is modest; again, while the APA Defendants have met that modest burden with regard to their first, second, third, and fifth reasons for dismissal of this claim, the Court would accept those reasons even if it were to subject them to the more rigorous scrutiny appropriate for a contested motion.

Second, with regard to the first reason offered by the AC Defendants for the dismissal of this claim, the Court notes that the possession of a partial intent to protect the environment appears to defeat a cause of action for prima facie tort. *SRW Assoc. v. Bellport Beach Property Owners*, 517 N.Y.S.2d 741, 744 (N.Y. App. Div., 2d Dep't 1987) (motivation was, in part, protecting neighborhood from development). While the Court has some trouble discerning a genuine intent to protect the environment possessed by the AC Defendants based on the facts alleged in the Complaint, the Court notes that "self-interest" may also defeat a cause of action for prima facie tort. *Squire Records, Inc. v. Vanguard Recording Soc., Inc.*, 268 N.Y.S.2d 251, 253-54 (N.Y. App. Div., 1st Dep't 1966), *order aff'd*, 19 N.Y.2d 797 (N.Y. 1967).

Third, with regard to the third reason offered by the AC Defendants for the dismissal of this claim, the Court finds that, even when construed with the utmost of special liberality, the Court is unable to find special damages alleged consisting of a specific and measurable loss that is ordinarily not able to be recovered through a traditional tort claim. *See, e.g., Squire Records v. Vanguard Rec. Socy.*, 19 N.Y.2d 797, 798-99 (N.Y. 1967) (finding that complaint sufficiently alleged special damages for purposes of prima facie tort claim, where it named specific customers lost). For example, the Court notes that the physical, psychological, or financial demands of defending the second enforcement proceeding does not appear to be enough. *See, e.g., Cardo v. Bd. of Managers, Jefferson Village Condo 3*, 817 N.Y.S.2d 315, 317 (N.Y. App. Div., 2d Dep't 2006) (ruling that condominium board failed to establish a cause of action for

prima facie tort, absent allegations of special damages beyond the physical, psychological or financial demands of defending the lawsuit by condominium owner seeking judgment declaring invalid an assessment imposed by the board).[39]

Fourth, while the Court finds that several alternative reasons exist to dismiss this claim, the Court finds that neither of those reasons is the second or fourth reason offered by the AC Defendants.

### i.      Selective-Enforcement Claim

As indicated above in Part III.B.2. of this Decision and Order, in support of their motion, the AC Defendants argue Plaintiffs' selective-enforcement claim against them should be dismissed for four reasons: (1) Plaintiffs have failed to allege facts plausibly suggesting that the AC Defendants possessed the enforcement authority necessary for them to have been able to selectively enforce anything; (2) Plaintiffs have failed to allege facts plausibly suggesting that the AC Defendants treated any other developer in the Adirondack Park differently than they treated Plaintiffs; (3) Plaintiffs have failed to allege facts plausibly suggesting that Defendants Rooks possessed the authority to extend the settlement agreement beyond its stated time frame and, even if he did, that the extended settlement agreement prevented Defendant APA from bringing a new enforcement proceeding; and (4) to the extent this claim arises under the Due Process Clause, Plaintiffs have not alleged facts plausibly suggesting that the breach of the settlement agreement constituted a violation of a fundamental constitutional right or, even if it did, that they were deprived of any of the process that they were due.  (Dkt. No. 42, Attach. 2, at 35-37 [attaching pages "27" through "29" of AC Defs.' Memo. of Law].)

---

[39]      The Court notes that the "special damages" requirement of a prima facie tort claim appears distinct from the "special injury" requirement of a malicious-prosecution claim or an abuse-of-process claim.  *See, e.g., Tray Wrap, Inc. v. Pacific Tomato Growers Ltd.*, 856 N.Y.S.2d 503, at *12 (N.Y. Sup. Ct., Bronx Cnty. 2008) (describing "special injury" requirement of a malicious-prosecution claim).

Generally, in their opposition memorandum of law, Plaintiffs argue that, on a "class of one" theory of liability, Paragraphs 204 through 206 of their Complaint alleges facts plausibly suggesting that (1) Defendant Ruder treated them differently than he treated others similarly situated, and (2) such differential treatment was for an impermissible reason rather than for a rational, good-faith reason.  (Dkt. No. 56, Attach. 3, at 37-39 [attaching pages "25" through "27" of Plfs.' Opp'n Memo. of Law].)

Generally, in their reply, the AC Defendants argue that, under a "class of one" theory of liability, Plaintiffs must still allege, but fail to allege, facts plausibly suggesting (1) what individuals were situated similarly as compared to them, and (2) that they were, in fact, treated differently than them.  (Dkt. No. 67, at 10-11 [attaching pages "6" and "7" of AC Defs.' Reply Memo. of Law].)

After carefully considering the matter, the Court agrees that this claim should be dismissed for the first and second reasons offered by the AC Defendants in their memoranda of law.  The Court adds only that, while the Court finds that two reasons exist to dismiss this claim, neither of those reasons is third or fourth reason offered by the AC Defendants.

### j.      Unlawful-Search-and-Seizure Claim

As indicated above in Part III.B.2. of this Decision and Order, in support of their motion, the AC Defendants argue that Plaintiffs' unlawful-search-and-seizure claim against them should be dismissed because Plaintiffs have failed to allege facts plausibly suggesting that any of the AC Defendants entered onto Plaintiffs' property, or that the actions of the employees of the APA (an independent governmental agency) can somehow be imputed to the AC Defendants.  (Dkt. No. 42, Attach. 2, at 37 [attaching page "29" of AC Defs.' Memo. of Law].)  Liberally construed, Plaintiffs' opposition memorandum of law responds to the AC Defendants' arguments

on the ground that Plaintiffs have alleged facts plausibly suggesting that the Defendant Ruder's oral and written communications with Defendant Miller (at the APA) on March 21 and 22, 2007, and the AC Defendants "regular[] communicat[ions]" with the APA Defendants thereafter, caused APA Enforcement Officer Miller to enter Plaintiffs' land without prior permission on or about September 6, 2007.  (Dkt. No. 56, Attach. 3, at 40 [attaching page "28" of Plfs.' Opp'n Memo. of Law]; *see, e.g.,* Dkt. No. 1, at ¶¶ 103-118, 175, 219.)  Generally, in their reply, the AC Defendants do not appear to elaborate on their arguments regarding this claim.  (*See generally* Dkt. No. 67 [AC Defs.' Reply Memo. of Law].)

After carefully considering the matter, the Court agrees that Plaintiffs' unlawful-search-and-seizure claim against the AC Defendants should be dismissed for failure to state a claim. The Court adds two points.  First, with regard to Plaintiffs' unlawful-seizure claim, Plaintiffs fail to allege facts plausibly suggesting that they were "seized" or subjected to excessive force by anyone (much less the AC Defendants) during the search that occurred on September 6, 2007. Second, with regard to Plaintiffs' unlawful-search claim, the Court finds that, even if the actions of a private not-for-profit corporation could in certain circumstances be render it a state actor for purposes of an unlawful-search claim under the Fourth Amendment, here, the six-month delay between the only specific communications in question and the search in question render implausible any causal connection between the two events.

### k.        Conspiracy Claim

As indicated above in Part III.B.2. of this Decision and Order, in support of their motion, the AC Defendants assert the following two arguments: (1) with regard to Plaintiffs' Section 1985 conspiracy claim against the AC Defendants, Plaintiffs have failed to allege facts plausibly suggesting either (a) a racial or class-based discriminatory animus possessed by the AC

Defendants or (b) the commission of an overt act by the AC Defendants in further of a conspiracy to deprive Plaintiffs equal protection, or privileges and immunities, under the laws; and (2) with regard to Plaintiffs' Section 1983 conspiracy claim against the AC Defendants, Plaintiffs have failed to allege facts plausibly suggesting a damage-causing overt act taken by the AC Defendants in furtherance of a goal to inflict an unconstitutional injury.  (Dkt. No. 42, Attach. 2, at 40-41 [attaching pages "32" and "33" of AC Defs.' Memo. of Law].)  Liberally construed, Plaintiffs' opposition memorandum of law responds to the AC Defendants' arguments on the ground that have alleged "sufficient facts that, if proved, would establish collaboration between [the AC Defendants] and the APA Defendants resulting in the deprivation of a federal right."  (Dkt. No. 56, Attach. 4, at 14 [attaching pages "48" of Plfs.' Opp'n Memo. of Law].) Generally, in reply, the AC Defendants (1) elaborated on previously asserted arguments and (2) add that Plaintiffs fail to allege facts plausibly suggesting either that the AC Defendants are state actors or acted in concert with the APA Defendants to commit an unconstitutional act.  (Dkt. No. 67, at 8-10 [attaching pages "4" through "6" of AC Defs.' Reply Memo. of Law].)

After carefully considering the matter, the Court agrees that Plaintiffs' Section 1985 conspiracy claim against the AC Defendants should be dismissed for the reasons offered by the AC Defendants in their memoranda of law.  The Court adds one point.  Because Plaintiffs fail to sufficiently respond to the AC Defendants' argument for the dismissal this claim, the AC Defendants' burden with regard to that argument is modest; again, while the AC Defendants have met that modest burden with regard to their first and second reasons for dismissal of this claim, the Court would accept those reasons even if it were to subject them to the more rigorous scrutiny appropriate for a contested motion.

However, the Court disagrees with the AC Defendants regarding Plaintiffs' Section 1983 conspiracy claim.  Liberally construed, Plaintiffs' Complaint does allege facts plausibly suggesting, inter alia, a damage-causing overt act taken by the AC Defendants in furtherance of a goal to inflict an unconstitutional injury.  More specifically, Plaintiffs' Complaint alleges facts plausibly suggesting that, after the two men's telephone conversation on March 22, 2007 (reflecting an agreement that the APA Defendants would open a new enforcement proceeding against Plaintiffs notwithstanding the settlement of a previous such enforcement proceeding), Defendant Ruder committed the act of sending Defendant Miller a lengthy email message that, inter alia, (1) memorialized their mutual understanding of events and agreed-upon plan of action, (2) directed the APA Defendants to send a letter to Plaintiff Douglas about an alleged wetland violation, send another letter to two town officials on the subject, commence a new enforcement action against Plaintiffs (and to aggressively take other actions against Plaintiffs), request in writing that the town not grant Plaintiffs a subdivision permit, and copy Defendant Ruder on any such letters to town officials, (3) promised to conduct legal research on a related issue for the APA Defendants, and brief Defendant Miller on the results of that research, and (4) offered to "back [] up" the APA Defendants with Defendant Ruder's "own legal team," helping the APA Defendants "with research and other tasks."  (*See, e.g.,* Dkt. No. 1, at ¶¶ 94, 107; Dkt. No. 1, Attach. 1, at 17-18 [Ex. C to Plfs.' Compl.].)

### l.      Retaliation Claim

As indicated above in Part III.B.2. of this Decision and Order, in support of their motion, the AC Defendants argue that Plaintiffs' retaliation claim against them should be dismissed for the following three reasons: (1) Plaintiffs fail to allege facts plausibly suggesting what public statements they made that we protected by the First Amendment; (2) Plaintiffs fail to allege facts

plausibly suggesting how Plaintiffs' exercise of their First Amendment rights has been effectively chilled by the AC Defendants' actions; and (3) it is Plaintiffs who are attempting to retaliate against the AC Defendants, through the filing of this action.  (Dkt. No. 42, Attach. 2, at 41-42 [attaching pages "33" and "34" of AC Defs.' Memo. of Law].)  Plaintiffs' opposition memorandum of law appears devoid of any response to this argument.  (Dkt. No. 56, Attach. 3-4 [Plfs.' Opp'n Memo. of Law].)  Generally, in reply, the AC Defendants argue that, in their opposition memorandum of law, Plaintiffs have failed to oppose the AC Defendants' arguments in support the dismissal of this claim against them.  (Dkt. No. 67, at 12-13 [attaching pages "8" and "9" of AC Defs.' Reply Memo. of Law].)

After carefully considering the matter, the Court finds that this claim should be dismissed for the first two reasons offered by the AC Defendants in their initial memorandum of law.  The Court adds two points.  First, because Plaintiffs fail to sufficiently respond to the AC Defendants' argument, the AC Defendants' burden with regard to the argument is modest; again, while the AC Defendants have met that modest burden with regard to their first two reasons for the dismissal of this claim, the Court would accept those reasons even if it were to subject them to the more rigorous scrutiny appropriate for a contested motion for the reasons stated in the AC Defendants' initial memorandum of law.  Second, while the Court finds that numerous reasons exist to dismiss this claim, none of those reasons is third reason offered by the AC Defendants.

### m.     Due Process Claims

It does not appear that the AC Defendants specifically challenge the pleading sufficiency of the elements of Plaintiffs' due process claims against them in their initial memorandum of law (other than to challenge, for example, the sufficiency of the allegation that they were state actors for purposes of all of Plaintiffs' federal claims).  (*See generally* Dkt. No. 42, Attach. 2 [AC

Defs.' Memo. of Law].)  The closest they come to do so is by challenging the pleading sufficiency of the elements of Plaintiffs' substantive-due-process claims in their reply memorandum of law.  (Dkt. No. 67, at 11 [attaching page "7" of AC Defs.' Reply Memo. of Law].)  However, this argument is too new, and comes too late, to give Plaintiff a fair chance to respond to it; in addition, it does not address the pleading sufficiency of the elements of Plaintiffs' procedural due process claims.  As a result, the Court is inclined to leave Plaintiffs' due-process claims against the AC Defendants untouched by this Decision and Order.

However, the Court cannot help but note that Plaintiffs' procedural due process claim against the AC Defendants suffers from the same pleading defects assigned by the APA Defendants to Plaintiffs' procedural due process claims against them, as well as those assigned by Defendant Ruder to Plaintiffs' procedural due process claim against him.  (*See, supra,* Part III.A.3.e. of this Decision and Order; *see, infra,* Part III.D.3.c. of this Decision and Order.)  The Court also cannot help but note that Plaintiffs responded to all Defendants' arguments for the dismissal of their claims in one opposition memorandum of law, with little if any distinction as to which response addressed which argument raised by which Defendant.  (Dkt. No. 56, Attach. 3-4 [Plfs.' Opp'n Memo. of Law].)  Moreover, Plaintiffs' opposition memorandum of law discussed their due process claims (albeit only their substantive due process claim).  (Dkt. No. 56, Attach. 3, at 39-42 [attaching pages "27" through "30" of Plfs.' Opp'n Memo. of Law].)  Under the circumstances, the Court finds that Plaintiffs received adequate notice and opportunity to be heard regarding the possible dismissal of their procedural due process claim against the AC Defendants.  *See Wachtler v. Herkimer Cnty.*, 35 F.3d 77, 82 (2d Cir. 1994); *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam).

For all of these reasons, the Court dismisses Plaintiffs' procedural due process claim against the AC Defendants.  However, Plaintiffs' substantive due process claim against the AC Defendants remains pending for the reasons set forth in Parts III.A.3.e. and III.D.3.c. of this Decision and Order.

### C.       Defendant Hawkeye's Motion to Dismiss Plaintiffs' Claims Against It for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6)

#### 1.       Plaintiffs' Claims Against Defendant Hawkeye

As stated above in Part I of this Decision and Order, Plaintiffs' Complaint asserts the following 10 claims against Defendant Hawkeye: (1) a claim for selective enforcement, denial of equal protection, and/or denial of due process (in violation of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. §§ 1983, 1985); (2) a claim  for unlawful search and seizure (in violation of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983); (3) a claim for malicious prosecution of an APA enforcement proceeding (in violation of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983); (4) a claim for malicious prosecution of an APA enforcement proceeding (in violation of state law); (5) a claim for abuse of process in an APA enforcement proceeding and criminal action (in violation of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983); (6) a claim for abuse of process in an APA enforcement proceeding and criminal action (in violation of state law); (7) a claim for conspiracy (pursuant to 42 U.S.C. §§ 1983, 1985); (8) a claim for intentional/reckless infliction of emotional distress (in violation of state law); (9) a claim for prima facie tort (in violation of state law); and (10) a claim for retaliation (in violation of the First Amendment, pursuant to 42 U.S.C. § 1983).  (Dkt. No. 1.)

### 2.      Summary of Defendant Hawkeye's Arguments on Its Motion

In support of its motion, Defendant Hawkeye asserts arguments based on the following

six grounds: (1) the fact that Defendant Hawkeye is not a "state actor" for purposes of 42 U.S.C.

§ 1983; (2) the absence of one or more elements of a conspiracy claim; (3) the absence of one or

more elements of a malicious prosecution claim; (4) the Court's discretion to not exercise

supplemental jurisdiction over Plaintiffs' state-law claims, should it dismiss all of Plaintiffs'

federal claims; (5) the absence of one or more elements of a state-law claim of abuse of process,

malicious prosecution, intentional infliction of emotional distress, and prima facie tort; and (6)

the one-year limitations period governing a state-law claim of abuse of process and malicious

prosecution.  (*See generally* Dkt. No. 43, Attach. 1 [Def. Hawkeye's Memo. of Law].)

### 3.      Court's Findings and Conclusions

#### a.      Selective-Enforcement Claim

As indicated above in Part III.C.2. of this Decision and Order, in support of its motion,

Defendant Hawkeye argues that Plaintiffs' selective-enforcement claim against it should be

dismissed for failing to allege facts plausibly suggesting that Defendant Hawkeye is a state actor

for purposes of 42 U.S.C. § 1983.  (Dkt. No. 43, Attach. 1, at 4-7 [attaching pages "4" through

"7" of Def. Hawkeye's Memo. of Law].)  Generally, Plaintiffs oppose this argument on the

ground that (1) a private individual may be subject to liability if he willfully collaborated or

conspired with an official state actor in the deprivation of a federal right, and (2) here, Plaintiffs

have alleged that Defendant Hawkeye collaborated or conspired with the APA Defendants in the

deprivation of a federal right.  (Dkt. No. 56, Attach. 4, at 14 [attaching page "48" of Plfs.' Opp'n

Memo. of Law].)  Defendant Hawkeye did not file a reply with regard to its motion.  (*See*

*generally* Docket Sheet.)

After carefully considering the matter, the Court finds that this claim should be dismissed for the reasons offered by Defendant Hawkeye in its memorandum of law.  The Court adds two points.  First, the Complaint mentions Defendant Hawkeye by name in only 12 out of its 375 paragraphs.  (Dkt. No. 1, at ¶¶ 43, 44, 52, 53, 54, 55, 64, 103, 116, 140, 143, 153.)  Moreover, five of those 12 paragraphs present mere background information about Defendant Ruder's position as an officer and director of Defendant Hawkeye, Hawkeye's corporate status, Plaintiffs' understanding of Hawkeye's "mission," and Hawkeye's employment of John Does 1 through 10.  (*Id.* at ¶¶ 43, 44, 52, 53, 55.)  The Complaint's allegations about Defendant Hawkeye's involvement in the constitutional violations alleged and "symbiotic" relationship with the APA Defendants are conclusory and/or based on "information and belief."  (*Id.* at ¶¶ 54, 64, 143, 153.)  The closest Plaintiffs come to alleging such involvement is by alleging that Defendant Ruder sent conspiratorial emails of March 21 and 22, 2007, to various APA Defendants Miller, "as a member, officer and director of Hawkeye."  (*Id.* at ¶ 103, 116, 140.)  However, this conclusory allegation is rendered implausible by the conspicuous absence of any other allegations suggesting that Defendant Ruder was acting on behalf of Defendant Hawkeye rather than the AC Defendants at the time.  For example, factual allegations exist plausibly suggesting that the AC Defendants knew of, and acquiesced in, Hawkeye's emails.  (*See, e.g.,* Dkt. No. 1, at ¶¶ 26, 27, 184-91; Dkt. No. 1, Attach. 5 [attaching Ex. H to Plfs.' Compl.].)  No such allegations exist plausibly suggesting such knowledge by Defendant Hawkeye.  (*See generally* Dkt. No. 1.)

Second, in the alternative, the Court bases its dismissal of this claim against Defendant Hawkeye on the following two grounds: (1) Plaintiffs have failed to allege facts plausibly suggesting that Defendant Hawkeye possessed the enforcement authority necessary for it to have

been able to selectively enforce anything (nor have Plaintiffs alleged facts plausibly suggesting

that Defendant Hawkeye even participated in the administrative enforcement proceeding); (2)

Plaintiffs have failed to allege facts plausibly suggesting that Defendant Hawkeye treated any

other developer in the Adirondack Park differently than he treated Plaintiffs.

**b.       Unlawful-Search-and-Seizure Claim**

As indicated above in Part III.C.2. of this Decision and Order, in support of its motion,

Defendant Hawkeye argues that Plaintiffs' unlawful-search-and-seizure claim against it should

be dismissed for failing to allege facts plausibly suggesting that Defendant Hawkeye is a state

actor for purposes of 42 U.S.C. § 1983.  (Dkt. No. 43, Attach. 1, at 4-7 [attaching pages "4"

through "7" of Def. Hawkeye's Memo. of Law].)  Again, generally, Plaintiffs oppose this

argument on the ground that (1) a private individual may be subject to liability if he willfully

collaborated or conspired with an official state actor in the deprivation of a federal right, and (2)

here, Plaintiffs have alleged that Defendant Hawkeye collaborated or conspired with the APA

Defendants in the deprivation of a federal right.  (Dkt. No. 56, Attach. 4, at 14 [attaching page

"48" of Plfs.' Opp'n Memo. of Law].)  Again, Defendant Hawkeye did not file a reply with

regard to its motion.  (*See generally* Docket Sheet.)

After carefully considering the matter, the Court finds that this claim should be dismissed

for the reasons offered by Defendant Hawkeye in its memorandum of law.  The Court adds two

points.  First, with regard to Plaintiffs' unlawful-seizure claim, Plaintiffs fail to allege facts

plausibly suggesting that they were "seized" or subjected to excessive force by anyone (much

less Defendant Hawkeye) during the search that occurred on September 6, 2007.  Second, with

regard to Plaintiffs' unlawful-search claim, the Court agrees finds that, even if the actions of a

private not-for-profit corporation could in certain circumstances be render it a state actor for

purposes of an unlawful-search claim under the Fourth Amendment, here, the six-month delay between the only specific communications in question and the search in question render implausible any causal connection between the two events.

### c.      Malicious-Prosecution Claim

As indicated above in Part III.C.2. of this Decision and Order, in support of its motion, Defendant Hawkeye argues that Plaintiffs' malicious-prosecution claim against it should be dismissed for three reasons: (1) failure to allege facts plausibly suggesting that Defendant Hawkeye is a state actor for purposes of 42 U.S.C. § 1983; (2) failure to allege facts plausibly suggesting that Defendant Hawkeye initiated any criminal prosecution against Plaintiffs; and (3) failure to allege facts plausibly suggesting that Plaintiffs sustained a post-arraignment confinement or restriction of movement.  (Dkt. No. 43, Attach. 1, at 4-9 [attaching pages "4" through "9" of Def. Hawkeye's Memo. of Law].)  Again, generally, Plaintiffs oppose Defendant Hawkeye's first reason for dismissal on the ground that (1) a private individual may be subject to liability if he willfully collaborated or conspired with an official state actor in the deprivation of a federal right, and (2) here, Plaintiffs have alleged that Defendant Hawkeye collaborated or conspired with the APA Defendants in the deprivation of a federal right.  (Dkt. No. 56, Attach. 4, at 14 [attaching page "48" of Plfs.' Opp'n Memo. of Law].)  While Plaintiffs assert various arguments regarding other parties' challenges to this claim in their opposition memorandum of law, Plaintiffs do not specifically address Defendant Hawkeye's second and third reasons for dismissal.  (Dkt. No. 56, Attach. 3, at 42-46 [attaching pages "30" through "34" of Plfs.' Opp'n Memo. of Law]; Dkt. No. 56, Attach. 4, at 1 [attaching page "35" of Plfs.' Opp'n Memo. of Law].) Again, Defendant Hawkeye did not file a reply with regard to its motion.  (*See generally* Docket Sheet.)

After carefully considering the matter, the Court finds that this claim should be dismissed for the first two reasons offered by Defendant Hawkeye in its memorandum of law.  The Court adds two points.  First, because Plaintiffs fail to sufficiently respond to Defendant Hawkeye's second reason for the dismissal of this claim, Defendant Hawkeye's burden with regard to that reason is modest; again, while Defendant Hawkeye has met that modest burden with regard to that reason, the Court would accept that reasons even if it were to subject it to the more rigorous scrutiny appropriate for a contested motion for the reasons stated in Defendant Hawkeye's memorandum of law.  Second, while the Court finds that two alternative reasons exist to dismiss this claim, neither of those reason is the third reason offered by Defendant Hawkeye, which appears to apply only to claims based on criminal prosecutions, not claims based on civil prosecutions.

### d.    Abuse-of-Process Claim

As indicated above in Part III.C.2. of this Decision and Order, in support of its motion, Defendant Hawkeye argues that Plaintiffs' abuse-of-process claim against it should be dismissed for failing to allege facts plausibly suggesting that Defendant Hawkeye is a state actor for purposes of 42 U.S.C. § 1983.  (Dkt. No. 43, Attach. 1, at 4-7 [attaching pages "4" through "7" of Def. Hawkeye's Memo. of Law].)  Again, generally, Plaintiffs oppose this argument on the ground that (1) a private individual may be subject to liability if he willfully collaborated or conspired with an official state actor in the deprivation of a federal right, and (2) here, Plaintiffs have alleged that Defendant Hawkeye collaborated or conspired with the APA Defendants in the deprivation of a federal right.  (Dkt. No. 56, Attach. 4, at 14 [attaching page "48" of Plfs.' Opp'n Memo. of Law].)  Again, Defendant Hawkeye did not file a reply with regard to its motion.  (*See generally* Docket Sheet.)

After carefully considering the matter, the Court finds that this claim should be dismissed

for the reasons offered by Defendant Hawkeye in its memorandum of law.  The Court adds two

points.  First, to the extent this claim is based on a criminal proceeding, that claim is dismissed

on the alternative ground that Plaintiffs have failed to allege facts plausibly suggesting that

Defendant Hawkeye used any process in that proceeding.  Second, to the extent this claim is

federal in nature and based on a civil proceeding, that claim is dismissed on the alternative

ground that the use of process in a civil proceeding does not give rise to a Section 1983 abuse-of-

process claim.

### e.      Conspiracy Claim

As indicated above in Part III.C.2. of this Decision and Order, in support of its motion,

Defendant Hawkeye argues that Plaintiffs' conspiracy claim against it should be dismissed for

two reasons: (1) failure to allege facts plausibly suggesting that Defendant Hawkeye is a state

actor for purposes of 42 U.S.C. § 1983; and (2) failure to allege facts plausibly suggesting that

Defendant Hawkeye entered into a prior agreement with the APA Defendants to wrongfully

arrest or prosecute Plaintiff or commit some other constitutional violation.  (Dkt. No. 43, Attach.

1, at 4-8 [attaching pages "4" through "8" of Def. Hawkeye's Memo. of Law].)  Again,

generally, Plaintiffs oppose Defendant Hawkeye's first reason for dismissal on the ground that

(1) a private individual may be subject to liability if he willfully collaborated or conspired with

an official state actor in the deprivation of a federal right, and (2) here, Plaintiffs have alleged

that Defendant Hawkeye collaborated or conspired with the APA Defendants in the deprivation

of a federal right.  (Dkt. No. 56, Attach. 4, at 14 [attaching page "48" of Plfs.' Opp'n Memo. of

Law].)  In addition, liberally construed, Plaintiffs' opposition memorandum of law responds to

Defendant Hawkeye's second reason for dismissal on the ground that they have alleged

"sufficient facts that, if proved, would establish collaboration between [Defendant Hawkeye] and the APA Defendants resulting in the deprivation of a federal right."  (Dkt. No. 56, Attach. 4, at 14 [attaching pages "48" of Plfs.' Opp'n Memo. of Law].)  Again, Defendant Hawkeye did not file a reply with regard to its motion.  (*See generally* Docket Sheet.)

After carefully considering the matter, the Court finds that this claim should be dismissed for the reasons offered by Defendant Hawkeye in its memorandum of law.  The Court adds only that, to the extent Plaintiffs' conspiracy claim against Defendant Hawkeye is based on 42 U.S.C. § 1985, that claim is dismissed on the related ground that Plaintiffs have failed to allege facts plausibly suggesting a racial or class-based discriminatory animus possessed by Defendant Hawkeye.

### f.      Retaliation Claim

As indicated above in Part III.C.2. of this Decision and Order, in support of its motion, Defendant Hawkeye argues that Plaintiffs' retaliation claim against it should be dismissed for failing to allege facts plausibly suggesting that Defendant Hawkeye is a state actor for purposes of 42 U.S.C. § 1983.  (Dkt. No. 43, Attach. 1, at 4-7 [attaching pages "4" through "7" of Def. Hawkeye's Memo. of Law].)  Again, generally, Plaintiffs oppose Defendant Hawkeye's argument on the ground that (1) a private individual may be subject to liability if he willfully collaborated or conspired with an official state actor in the deprivation of a federal right, and (2) here, Plaintiffs have alleged that Defendant Hawkeye collaborated or conspired with the APA Defendants in the deprivation of a federal right.  (Dkt. No. 56, Attach. 4, at 14 [attaching page "48" of Plfs.' Opp'n Memo. of Law].)  Again, Defendant Hawkeye did not file a reply with regard to its motion.  (*See generally* Docket Sheet.)

After carefully considering the matter, the Court finds that this claim should be dismissed for the reasons offered by Defendant Hawkeye in its memorandum of law.  The Court adds only that, in the alternative, Plaintiffs' retaliation claim against Defendant Hawkeye is dismissed for the following two reasons: (1) Plaintiffs fail to allege facts plausibly suggesting what public statements they made that we protected by the First Amendment; (2) Plaintiffs fail to allege facts plausibly suggesting how Plaintiffs' exercise of their First Amendment rights has been effectively chilled by Defendant Hawkeye's actions.

### g.  State-Law Claims

As indicated above in Part III.C.2. of this Decision and Order, in support of its motion, Defendant Hawkeye argues that Plaintiffs' state-law claims against it should be dismissed for the following six reasons: (1) the Court's discretion to not exercise supplemental jurisdiction over Plaintiffs' state-law claims, should it dismiss all of Plaintiffs' federal claims against Defendant Hawkeye; (2) failure to allege facts plausibly suggesting the "employs regularly used legal process" element of a state-law abuse-of-process claim against Defendant Hawkeye; (3) failure to allege facts plausibly suggesting the "initiation of a prosecution" element of a state-law malicious-prosecution claim against Defendant Hawkeye; (4) failure to allege facts plausibly suggesting the "extreme and outrageous" element of a state-law intentional-infliction-of-emotional-distress claim against Defendant Hawkeye; (5) failure to allege facts plausibly suggesting the "intentional infliction of harm resulting in special damages" elements of a state-law prima-facie-tort claim against Defendant Hawkeye; and (6) the fact that, based on Plaintiffs' factual allegations, their state-law abuse-of-process and malicious-prosecution claims against Defendant Hawkeye are barred by the applicable one-year limitations period.  (Dkt. No. 43, Attach. 1, at 9-10 [attaching pages "9" and "10" of Def. Hawkeye's Memo. of Law].)

Generally, in their opposition memorandum of law, Plaintiffs do not appear to specifically respond to Defendant Hawkeye's first, third, fourth, fifth or sixth reasons for dismissal.  (*See generally* Dkt. No. 56, Attach. 3-4 [Plfs.' Opp'n Memo. of Law].)  Furthermore, with regard to Defendant Hawkeye's second reason for dismissal (regarding Plaintiffs' abuse-of-process claim), Plaintiffs merely argue that they have alleged (for example, in Paragraph 276 of their Complaint) facts plausibly suggesting that Defendant Hawkeye employed the regularly issued processes in the APA enforcement proceeding; Plaintiffs do not appear to specifically respond to Defendant Hawkeye's argument to the extent it is based on the criminal proceeding against Plaintiffs.  (Dkt. No. 56, Attach. 4, at 1-4 [attaching pages "35" through "38" of Plfs.' Opp'n Memo. of Law].)

Again, Defendant Hawkeye did not file a reply with regard to its motion.  (*See generally* Docket Sheet.)

After carefully considering the matter, the Court finds that these claims should be dismissed for the reasons offered by Defendant Hawkeye in its memorandum of law.  The Court adds one point.  Because Plaintiffs fail to sufficiently respond to Defendant Hawkeye's first, third, fourth, fifth and sixth reasons for dismissal (and half of their second reason for dismissal), Defendant Hawkeye's burden with regard to those reasons is modest; again, while Defendant Hawkeye has met that modest burden with regard to those reasons for dismissal, the Court would accept those reasons even if it were to subject them to the more rigorous scrutiny appropriate for a contested motion for the reasons stated in Defendant Hawkeye's memorandum of law.  For example, the Court disagrees that Paragraph 276 of their Complaint) alleges facts plausibly suggesting that Defendant Hawkeye employed the regularly issued processes in the APA enforcement proceeding.

### h.      Due Process Claims

It does not appear that Defendant Hawkeye specifically challenges the pleading sufficiency of the elements of Plaintiffs' due process claims against it in its motion to dismiss (other than to challenge the sufficiency of the allegation that it was a state actor for purposes of all of Plaintiffs' federal claims).  (*See generally* Dkt. No. 43, Attach. 1, at 3 [Def. Hawkeye's Memo. of Law].)  The closest that Defendant Hawkeye comes to doing so is by arguing that the Supreme Court has "rejected the notion that a claim of 42 U.S.C. § 1983 for malicious prosecution could be predicated upon a theory of substantive due process under the Fourteenth Amendment."  (*Id*. at 9 [attaching page "9" of Def. Hawkeye's Memo. of Law].)  However, this argument does not address the possibility that Plaintiffs have alleged a substantive due process claim distinct from a malicious-prosecution claim.  Defendant Hawkeye's oversight of Plaintiffs' due process claims appears based on his interpretation of the First Cause of Action in the Complaint as asserting only a selective-enforcement claim in violation of the Equal Protection Clause.  (*Id*. at 3 [attaching page "3" of Def. Hawkeye's Memo. of Law].)  The Court does not so interpret the First Cause of Action, which is expressly based on a violation of "due process." (Dkt. No. 1, at Heading of "First Cause of Action" and ¶¶ 154, 208, 212.)  The Court's interpretation appears shared by the APA Defendants and Defendant Ruder, who did specifically challenge the pleading sufficiency of the elements of Plaintiffs' due process claims.  (*See, supra,* Part III.A.3.e. of this Decision and Order; *see, infra,* Part III.D.3.c. of this Decision and Order.) As a result, the Court is inclined to leave Plaintiffs' due-process claims against Defendant Hawkeye untouched by this Decision and Order.

However, the Court cannot help but note that Plaintiffs' procedural due process claim against Defendant Hawkeye suffers from the same pleading defects assigned by the APA Defendants to Plaintiffs' procedural due process claims against them, as well as those assigned by Defendant Ruder to Plaintiffs' procedural due process claim against him. (*Id*.) The Court also cannot help but note that Plaintiffs responded to all Defendants' arguments for the dismissal of their claims in one opposition memorandum of law, with little if any distinction as to which response addressed which argument raised by which Defendant. (Dkt. No. 56, Attach. 3-4 [Plfs.' Opp'n Memo. of Law].) Moreover, Plaintiffs' opposition memorandum of law discussed their due process claims (albeit only their substantive due process claim). (Dkt. No. 56, Attach. 3, at 39-42 [attaching pages "27" through "30" of Plfs.' Opp'n Memo. of Law].) Under the circumstances, the Court finds that Plaintiffs received adequate notice and opportunity to be heard regarding the possible dismissal of their procedural due process claim against Defendant Hawkeye. *See Wachtler*, 35 F.3d at 82; *Thomas*, 943 F.2d at 260.

For all of these reasons, the Court dismisses Plaintiffs' procedural due process claim against Defendant Hawkeye. However, Plaintiffs' substantive due process claim against Defendant Hawkeye remains pending for the reasons set forth in Parts III.A.3.e. and III.D.3.c. of this Decision and Order.

### D.    Defendant Ruder's Motion to Dismiss Plaintiffs' Claims Against Him for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6)

#### 1.    Plaintiffs' Claims Against Defendant Ruder

As stated above in Part I of this Decision and Order, Plaintiffs' Complaint asserts the following 10 claims against Defendant Ruder: (1) a claim for selective enforcement, denial of equal protection, and/or denial of due process (in violation of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. §§ 1983, 1985); (2) a claim  for unlawful search (in

violation of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983); (3) a claim

for malicious prosecution of an APA enforcement proceeding (in violation of the Fourth and

Fourteenth Amendments, pursuant to 42 U.S.C. § 1983); (4) a claim for malicious prosecution of

an APA enforcement proceeding (in violation of state law); (5) a claim for abuse of process in an

APA enforcement proceeding and criminal action (in violation of the Fourth and Fourteenth

Amendments, pursuant to 42 U.S.C. § 1983); (6) a claim for abuse of process in an APA

enforcement proceeding and criminal action (in violation of state law); (7) a claim for conspiracy

(pursuant to 42 U.S.C. §§ 1983, 1985); (8) a claim for intentional/reckless infliction of emotional

distress (in violation of state law); (9) a claim for prima facie tort (in violation of state law); and

(10) a claim for retaliation (in violation of the First Amendment, pursuant to 42 U.S.C. § 1983).

(Dkt. No. 1.)

## 2.    Summary of Defendant Ruder's Arguments on His Motion

In support of his motion, Defendant Ruder asserts arguments based on the following 15

grounds: (1) protection from liability by the *Noerr-Pennington* Doctrine; (2) the fact that he is

not a "state actor" for purposes of 42 U.S.C. § 1983; (3) the fact that Plaintiffs' due process

claims are not ripe for adjudication and that, in any event, an Article 78 proceeding provided

Plaintiffs all the process they were due under the circumstances; (4) the fact that, under state law,

Plaintiffs have failed to meet their burden of proving at this time that those claims have a

substantial basis, and the fact that "certain" of Plaintiffs' state-law claims are barred by the one-

year limitations period governing intentional torts; (5) the absence of one or more elements of

claim for selective enforcement; (6) the absence of one or more elements of claim for a violation

of unlawful search and seizure; (7) the absence of one or more elements of claim for malicious

prosecution; (8) the absence of one or more elements of claim for abuse of process; (9) the

absence of one or more elements of claim for intentional infliction of emotional distress; (10) the

absence of one or more elements of claim for prima facie tort; (11) the absence of one or more

elements of claim for retaliation; (12) the absence of one or more elements of claim for

conspiracy; (13) the fact that Plaintiff Douglas lacks standing to asserting an unlawful-search-

and-seizure claim for property owned by Plaintiff Douglas Corporation, and the fact that Plaintiff

Douglas Corporation lacks standing to assert a claim for intentional infliction of emotional

distress; (14) all of the grounds for dismissal asserted by the APA Defendants and the AC

Defendants in their respective memoranda of law; and (15) the fact that permitting any of

Plaintiffs' claims to survive Defendant Ruder's motion to dismiss would "fundamentally . . .

conflict with our entire system of government."  (*See generally* Dkt. No. 52, Attach. 1 [Def.

Ruder's Memo. of Law].)

### 3.      Court's Findings and Conclusions

#### a.      *Noerr-Pennington* Doctrine

As indicated above in Part III.D.2. of this Decision and Order, in support of his motion,

Defendant Ruder argues that all of Plaintiffs' claims against him should be dismissed because of

the presence of factual allegations plausibly suggesting that the AC Defendants are protected

from liability as a matter of law by *Noerr-Pennington* Doctrine, which protects objectively

reasonable petitioning, and to which there is no "conspiracy" exception.  (Dkt. No. 52, Attach. 1,

at 11-13 [attaching pages "4" through "6" of Def. Ruder's Memo. of Law].)   Generally,

Plaintiffs oppose this argument on the following four grounds: (1) the Second Circuit has not

applied the *Noerr-Pennington* doctrine in cases other than antitrust cases; (2) the doctrine applies

only in cases of governmental petitioning that was public in nature, unlike the case here; (3) the

doctrine applies only in cases in which the petitioning party sought administrative, judicial or

legislative relief from the government, which did not happen here; and (4) even where the doctrine applies, an exception to it exists where, as here, (a) the petitioner's conduct leads to public official misconduct or an unconstitutional result, or (b) the petitioning involved unlawful corrupt or unethical means.  (Dkt. No. 56, Attach. 3, at 6-9 [attaching pages "40" through "45" of Plfs.' Opp'n Memo. of Law].)  Generally, in reply, Defendant Ruder asserts the following two arguments: (1) Plaintiffs have misstated the case law regarding the type of petitioning protected by the *Noerr-Pennington* Doctrine; and (2) based on Plaintiffs' factual allegations, the "sham" exception to the *Noerr-Pennington* Doctrine do not apply to this case.  (Dkt. No. 68, at 6-10 [attaching pages "2" through "6" of Def. Ruder's Reply Memo. of Law].)

After carefully considering the matter, the Court rejects Defendant Ruder's reliance on the *Noerr-Pennington* doctrine as a ground for the dismissal of Plaintiffs' claims against for the third and fourth reasons offered by Plaintiffs (i.e., the doctrine applies only in cases in which the petitioning party sought administrative, judicial or legislative relief from the government, which is not the case here, and, in any event, one or both of two exceptions to the doctrine apply under the circumstances).  The Court adds three points.  First, the Court rejects Defendant Ruder's reading of *Ridgeview Partners, LLC v. Entwhistle*, 227 F. App'x 80 (2d Cir. 2007), as holding that, for the *Noerr-Pennington* Doctrine to apply, a defendant must *either* (1) complain to public officials *or* (2) seek administrative, judicial or legislative relief.  (Dkt. No. 68, at 7 [attaching page "3" of Def. Ruder's Reply Memo. of Law].)[40]  For the sake of much-needed brevity, the Court will not linger on this issue other than to add that inherent in the notion of petitioning the

---

[40]     All that the Second Circuit held in *Ridgeview* was that "Appellant's claim that appellees have violated its right to petition the government for redress of grievances is legally insufficient because appellant's site-plan application does not purport to complain to public officials or to seek administrative or judicial relief from their actions."  *Ridgeview*, 227 F. App'x at 82 [internal quotation marks and citations omitted].

government for redress would appear to be a requirement that there is a request for administrative, judicial or legislative relief.  Based on the allegations of the Complaint, Defendant Ruder was seeking something other than mere "administrative relief."

Second, in any event, the Court finds that, based on the facts alleged in Plaintiffs' Complaint, Defendant Ruder's conduct led to public official misconduct or an unconstitutional result, and/or the petitioning involved unlawful corrupt or unethical means (e.g., a directive to the APA Defendants to commence a new enforcement action against Plaintiffs in disregard of the settlement of a previous such enforcement proceeding, accompanied by an agreement to extend legal assistance to the APA Defendants if they would do so).

Third, under the circumstances, Defendant Ruder's *Noerr-Pennington* doctrine argument is more appropriately relied on by him on a motion for summary judgment than a motion to dismiss for failure to state a claim.

### b.      Status as "State Actor"

As indicated above in Part III.D.2. of this Decision and Order, in support of his motion, Defendant Ruder argues that all of Plaintiffs' federal claims against him should be dismissed because Plaintiffs' Complaint lacks factual allegations plausibly suggesting that he is a "state actor" for purposes of 42 U.S.C. § 1983.  (Dkt. No. 52, Attach. 1, at 14-19 [attaching pages "7" through "12" of Def. Ruder's Memo. of Law].)  More specifically, Defendant Ruder asserts the following four arguments: (1) Plaintiffs have failed to meet the "heightened pleading requirement" for claims asserted under 42 U.S.C. § 1983; (2) Plaintiffs do not allege facts plausibly suggesting that the APA Defendants received any unique benefit from Defendant Ruder; (3) based on Plaintiffs' factual allegations, the APA Defendants exercised their own independent judgment in taking actions against Plaintiffs, as evidenced by the fact that

Defendant Van Cott instructed an APA employee to open a new enforcement action against Plaintiffs at 2:29 p.m. on March 22, 2007, 44 minutes *before* Defendant Ruder sent Defendants Miller and Van Cott an allegedly conspiratorial email message; and (4) Plaintiffs do not allege facts plausibly suggestion that Defendant Ruder took any action (much less state action) against Plaintiffs with regard to the search of their property on September 6, 2007, and the subsequent criminal proceeding against Plaintiff Douglas.  (*Id.*)

Generally, Plaintiffs oppose these arguments on the ground that (1) a private individual may be subject to liability if he willfully collaborated or conspired with an official state actor in the deprivation of a federal right, and (2) here, Plaintiffs have alleged that Defendant Ruder collaborated or conspired with the APA Defendants in the deprivation of a federal right.  (Dkt. No. 56, Attach. 4, at 14 [attaching page "48" of Plfs.' Opp'n Memo. of Law].)

Generally, in his reply, Defendant Ruder does not appear to elaborate on his previously asserted arguments.  (*See generally* Dkt. No. 68 [Def. Ruder's Reply Memo. of Law].)

After carefully considering the matter, the Court accepts his argument that Plaintiffs do not allege facts plausibly suggestion that Defendant Ruder took any action (much less state action) against Plaintiffs with regard to the search of their property on September 6, 2007, and the subsequent criminal proceeding against Plaintiff Douglas, for the reasons stated in his memorandum of law.   The Court adds one point.  Because Plaintiffs fail to sufficiently respond to this precise argument asserted by Defendant Ruder, Defendant Ruder's burden with regard to that argument is modest; again, while Defendant Ruder has met that modest burden with regard to this argument, the Court would accept that argument even if it were to subject it to the more rigorous scrutiny appropriate for a contested motion.  As a result, to the extent any of Plaintiffs'

claims against Defendant Ruder are premised on the search of Plaintiffs' property on September 6, 2007, or the subsequent criminal proceeding against Plaintiff Douglas, those claims are dismissed.

However, the Court must reject Defendant Ruder's other arguments for the reasons stated above in Part III.B.3.a. of this Decision and Order.  The Court adds three points.  First, there is no "heightened pleading requirement" for claims asserted under 42 U.S.C. § 1983.  Rather, all claims, except those asserted under Fed. R. Civ. P. 9, are subject to the same plausibility standard articulated by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Indeed, the Supreme Court in *Twombly* expressly recognized that the Second Circuit's use of a heightened pleading standard in Title VII was "contrary to the Federal Rules' structure of liberally pleading requirements."  *Twombly*, 550 U.S. at 570 (internal quotation marks and citation omitted).  The Supreme Court expressly stated that what is required is not "specifics," but only enough facts to render a claim plausible.  *Id*.  The case cited by Defendant Ruder predates *Twombly* by more than 30 years.  *See Koch v. Yunich*, 533 F.2d 80, 85 (2d Cir. 1976) ("Complaints relying on the civil rights statutes are plainly insufficient unless they contain some specific allegations of fact indicating a deprivation of civil rights, rather than state simple conclusions.").

Second, liberally construed, Plaintiffs' Complaint has alleged facts plausibly suggesting that the APA Defendants received a unique benefit from Defendant Ruder: (1) the promise to conduct (if not the actual conducting of) legal research on a related issue for the APA Defendants, and brief Defendant Miller on the results of that research; and (2) the offer to "back [] up" (if not the act of backing up) the APA Defendants with Defendant Ruder's "own legal team," helping the APA Defendants "with research and other tasks."  (*See, e.g.,*  Dkt. No. 1, at ¶ 107; Dkt. No. 1, Attach. 1, at 17-18 [Ex. C to Plfs.' Compl.].)

Third, liberally construed, Plaintiffs' Complaint has alleged facts plausibly suggesting that the APA Defendants did not, in fact, exercise their own independent judgment in taking actions against Plaintiffs.  The Court notes that Defendant Ruder's email message to Defendants Miller and Van Cott at 3:13 p.m. on March 22, 2007, plausibly suggests that, *earlier that day*, Defendant Ruder had a phone conversation with Defendants Miller and Van Cott, during which the men reached a mutual understanding of events and agreed-upon plan of action, which included the commencement of a new enforcement action against Plaintiffs (and the promise of legal assistance by Defendant Ruder), notwithstanding the settlement of a previous such enforcement proceeding.  (*See, e.g.,* Dkt. No. 1, at ¶ 94, and Attach. 1, at 17-18 [attaching Ex. C to Plfs.' Compl., alleging that the APA issued a "non-jurisdictional letter" when it entered into the Settlement Agreement in November of 2006, and attaching an email message indicating that Def. Ruder knew of, but disregarded, the "letter of non-jurisdiction sent to Douglas in November, 2006"].)

### c.    Due Process Claims

As indicated above in Part III.D.2. of this Decision and Order, in support of his motion, Defendant Ruder argues that Plaintiffs' due process claims against him fail for two reasons: (1) they are not ripe for adjudication, because (a) no final decision has been reached in that proceeding, and/or (b) Plaintiffs have not pursued all state remedies regarding any such final decision; and (2) in any event, the availability of a post-deprivation Article 78 proceeding provided Plaintiffs all the process they were due under the circumstances.  (Dkt. No. 52, Attach. 1, at 19-22 [attaching pages "12" through "15" of Def. Ruder's Memo. of Law].)  Generally, Plaintiffs oppose this argument on the ground that they have alleged facts plausibly suggesting a substantive due process claim against the APA Defendants.  (Dkt. No. 56, Attach. 3, at 39-42

[attaching pages "27" through "30" of Plfs.' Opp'n Memo. of Law].)  In addition, liberally

construed, Plaintiffs' opposition papers argue that, while the resolution of Administrative

Enforcement Proceeding No. E2005-200 is being overseen by an administrative law judge at the

New York State Department of Environmental Conservation, Administrative Enforcement

Proceeding No. E2007-047 (which gives rise to the essence of this action) has been discontinued

with prejudice.  (Dkt. No. 56, Attach. 3, at 45-47 [attaching pages "33" through "35" of Plfs.'

Opp'n Memo. of Law]; Dkt. No. 74, at ¶¶ 6-14 [Plfs.' Suppl. Opp'n to Motion to Disqualify];

Dkt. No. 82, Attach. 1 [Ltr. from ALJ].)  Generally, in his reply, Defendant Ruder does not

appear to elaborate on his previously asserted arguments.  (*See generally* Dkt. No. 68 [Def.

Ruder's Reply Memo. of Law].)

        After carefully considering the matter, the Court accepts Defendant Ruder's ripeness and

post-deprivation-process arguments to the extent they challenge Plaintiffs' procedural due

process claim against him, for the reasons stated in Defendant Ruder's memorandum of law.

The Court adds only that, by arguing for the preservation of merely his substantive due process

claim in his opposition memorandum of law, Plaintiffs have conceded the pleading defects in,

and/or effectively abandoned, the procedural due process claim contained in their Complaint.

*Dottolo*, 2010 WL 2560551, at *7, n.13.

        However, the Court rejects Defendant Ruder's ripeness and post-deprivation-process

arguments to the extent they challenge Plaintiffs' substantive due process claim against him, for

the reasons stated in Plaintiffs' opposition papers.  The Court adds one point.  The Court

acknowledges that the ripeness test announced in *Williamson Cnty. Reg'l Planning Comm'n v.*

*Hamilton Bank of Johnson City*, 473 U.S. 172, 194-95 (1985), has been applied to substantive

due process cases asserted in the context of land-use challenges.  *See Dougherty v. Town of N.*

*Hemstead Bd. of Zoning Appeals*, 282 F.3d 83, 88-89 (2d Cir. 2002) (citing cases).  However, the Court has found no such cases specifically applying the pursuit-of-adequate-state-remedy prong of that ripeness test to a substantive due process claim arising from the intentional or reckless disregard of an agreement to settle an administrative proceeding (through the filing of a second administrative proceeding).  In any event, even if that prong did apply under such a circumstance, the Court has not been persuaded that, here, there existed any adequate state remedy that Plaintiffs could have pursued other than the remedy they did pursue (namely, litigating the second administrative proceeding to settlement).  For example, with regard to the availability of an Article 78 proceeding, "a state court entertaining an Article 78 proceeding does not have the power to award the full measure of relief available in [a] subsequent Section 1983 litigation."  *Vargas v. City of New York*, 377 F.3d 200, 205 (2d Cir. 2004).  Moreover, Plaintiffs' substantive process claim does not appear premised on the random and/or arbitrary denial of process, but the use of that very process (i.e., the filing of a second enforcement proceeding) to destroy Plaintiffs' property interest in the settlement agreement.  As a result, it does not appear that the mere availability of further state process, through a post-deprivation Article 78 proceeding, would have constituted an adequate remedy under state law.  *Kraebel v. New York City Dep't of Hous. Preservation and Dev.*, 959 F.2d 395, 403-04 (2d Cir. 1992).  While the Court is open to revisiting this issue during a motion for summary judgment, the Court simply cannot agree with Defendant Ruder on that issue based on the parties' current briefing.

### d.      State-Law Claims

As indicated above in Part III.D.2. of this Decision and Order, in support of his motion, Defendant Ruder argues that Plaintiffs' state-law claims against him fail for two reasons: (1) the fact that, under state law, Plaintiffs have failed to meet their burden of *proving* at this time that

those claims have a substantial basis as required by N.Y. C.P.L.R. Rule 3211(g) and N.Y. Civil

Rights Law § 76-a, and (2) the fact that "certain" of Plaintiffs' state-law claims are barred by the

one-year limitations period governing intentional torts.  (Dkt. No. 52, Attach. 1, at 22-24, 39

[attaching pages "15" through "17," and page "32," of Def. Ruder's Memo. of Law].)  Generally,

Plaintiffs oppose this argument on the ground that N.Y. C.P.L.R. Rule 3211(g) and N.Y. Civil

Rights Law § 76-a and do not apply for four reasons: (1) N.Y. C.P.L.R. Rule 3211(g) does not

apply in federal court; (2) N.Y. Civil Rights Law § 76-a merely permits a defendant to maintain

an action, claim or cross-claim for damages against a plaintiff who violates the statute, and does

not provide grounds for dismissal of the plaintiff's claims against the defendant; (3) N.Y. Civil

Rights Law § 76-a does not apply to Plaintiffs' state claims against Defendant Ruder in this

action, which arise solely from an administrative enforcement proceeding (and not the

application for a zoning or land-use permit); and (4) in any event, Plaintiffs' state-law claims

against Defendant Ruder have alleged facts plausibly suggesting that those claims have a

substantial basis in law.  (Dkt. No. 56, Attach. 4, at 9-14 [attaching pages "43" through "48" of

Plfs.' Opp'n Memo. of Law].)  Generally, in his reply, Defendant Ruder does not appear to

elaborate on his previously asserted arguments.  (*See generally* Dkt. No. 68 [Def. Ruder's Reply

Memo. of Law].)

After carefully considering Defendant Ruder's "substantial basis" argument, the Court

rejects that argument, for the reasons stated by Plaintiffs in their memorandum of law.  The

Court adds three points.  First, in reaching its conclusion that Fed. R. Civ. P. 12(b)(6) and not

N.Y. C.P.L.R. 3211(g) governs the Court's analysis, the Court relies not only on the case cited

by Plaintiffs on page 45 of their memorandum of law but on *Hanna v. Plumer*, 380 U.S. 460

(1965), in which the Supreme Court explained that, "[w]hen a situation is covered by one of the

Federal Rules, . . . the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions." *Hanna v. Plumer*, 380 U.S. 460, 471 (1965).

Second, in any event, the Court agrees with Plaintiffs' alternative argument that state-law claims against Defendant Ruder have alleged facts plausibly suggesting that those claims have a substantial basis in law (setting aside the statute of limitations issue discussed below).

Third, to the extent that Defendant Ruder is construing N.Y. C.P.L.R. Rule 3211(g) and N.Y. Civil Rights Law § 76-a  as requiring Plaintiffs to adduce proof at this stage of the action, that construction is in error.  Defendant Ruder filed his motion pursuant to Fed. R. Civ. P. 12(b)(6), not Fed. R. Civ. P. 56.

However, the Court accepts Defendant Ruder's statute-of-limitations argument for the reason stated by him in his memorandum of law.  Generally, Plaintiffs' Complaint asserts the following four state claims against Defendant Ruder: (1) a claim for malicious prosecution of an APA enforcement proceeding; (2) a claim for abuse of process in an APA enforcement proceeding and criminal action; (3) a claim for intentional/reckless infliction of emotional distress; and (4) a claim for prima facie tort.  (*See generally* Dkt. No. 1.)  Each of those claims is governed by the one-year limitations period set forth in N.Y. C.P.L.R. 215.  *See, supra,* note 23 of this Decision and Order.  Because the Complaint in this action was filed on March 15, 2010, and the Court finds that all of Plaintiffs' state-law claims against Defendant Ruder are in fact predicated on alleged events that occurred well before March 15, 2009 (e.g., the telephonic and email communications from Defendant Ruder in March of 2007), all of those state-law claims are dismissed based on the governing one-year statute of limitations.

97

The Court adds one point.  Because Plaintiffs fail to sufficiently respond to Defendant

Ruder's statute-of-limitations argument, Defendant Ruder's burden with regard to the argument

is modest; again, while Defendant Ruder met that modest burden with regard to that argument,

the Court would accept that argument even if it were to subject that argument to the more

rigorous scrutiny appropriate for a contested motion.

### e.   Selective-Enforcement Claim

As indicated above in Part III.D.2. of this Decision and Order, in support of his motion,

Defendant Ruder argues that Plaintiffs' selective-enforcement claim against him should be

dismissed because Plaintiffs have not alleged facts plausibly suggesting either (1) that Defendant

Ruder treated them differently than he treated others similarly situated, or (2) that any such

differential treatment was for an impermissible reason rather than for a rational, good-faith

reason.  (Dkt. No. 52, Attach. 1, at 25-26 [attaching pages "18" and "19" of Def. Ruder's Memo.

of Law].)   Generally, in their opposition memorandum of law, Plaintiffs argue that, on a "class

of one" theory of liability, Paragraphs 204 through 206 of their Complaint alleges facts plausibly

suggesting that (1) Defendant Ruder treated them differently than he treated others similarly

situated, and (2) such differential treatment was for an impermissible reason rather than for a

rational, good-faith reason.  (Dkt. No. 56, Attach. 3, at 37-39 [attaching pages "25" through "27"

of Plfs.' Opp'n Memo. of Law].)  Generally, in his reply, Defendant Ruder argues that, under a

"class of one" theory of liability, Plaintiffs must still allege, but fail to allege, facts plausibly

suggesting (1) what individuals were situated similarly as compared to them, and (2) that they

were, in fact, treated differently than them.  (Dkt. No. 68, at 17-19 [attaching pages "13" through

"15" of Def. Ruder's Reply Memo. of Law].)

After carefully considering the matter, the Court agrees that this claim should be dismissed for the reasons offered by Defendant Ruder in his memoranda of law.  The Court adds only that Plaintiffs have failed to allege facts plausibly suggesting that Defendant Ruder possessed the enforcement authority necessary for them to have been able to selectively enforce anything.

### f.    Wrongful-Search-and-Seizure Claim

As indicated above in Part III.D.2. of this Decision and Order, in support of his motion, Defendant Ruder argues that Plaintiffs' wrongful-search-and-seizure claim against him should be dismissed for three reasons: (1) Plaintiffs have not alleged facts plausibly suggesting that Defendant Ruder was a state actor; (2) Plaintiffs have not alleged facts plausibly suggesting that Defendant Ruder either (a) personally searched and/or seized their property or (b) caused Defendants Rooks and Miller to do so through his alleged communications with the APA Defendants in February and March of 2007 (more than six months before the alleged search and seizure); and (3) Plaintiff Douglas lacks standing to asserting an unlawful-search-and-seizure claim for property owned by Plaintiff Douglas Corporation.  (Dkt. No. 52, Attach. 1, at 26-28, 32 [attaching pages "19" through "21," and page "32," of Def. Ruder's Memo. of Law].)

Plaintiffs' response to Defendant Ruder's first argument is described above in Part III.D.3.b. of this Decision and Order.  With regard to Defendant Ruder's second argument, liberally construed, Plaintiffs' opposition memorandum of law responds to that argument on the ground that Plaintiffs have alleged facts plausibly suggesting that the Defendant Ruder's oral and written communications with Defendant Miller (at the APA) on March 21 and 22, 2007, and the AC Defendants "regular[] communicat[ions]" with the APA Defendants thereafter, caused APA Enforcement Officer Miller to enter Plaintiffs' land without prior permission on or about

September 6, 2007.  (Dkt. No. 56, Attach. 3, at 40 [attaching page "28" of Plfs.' Opp'n Memo. of Law]; *see, e.g.,* Dkt. No. 1, at ¶¶ 103-118, 175, 219.)  Finally, Plaintiffs' opposition memorandum of law does not appear to respond to Defendant Ruder's third argument.  (*See generally* Dkt. No. 56, Attach. 3-4 [Plfs.' Opp'n Memo. of Law].)

Generally, in his reply, Defendant Ruder does not appear to elaborate on his previously asserted arguments.  (*See generally* Dkt. No. 68 [Def. Ruder's Reply Memo. of Law].)

After carefully considering the matter, the Court agrees that this claim should be dismissed for the second and third reasons offered by Defendant Ruder in his memorandum of law.  The Court adds three points.  First, in addition to failing to allege facts plausibly suggesting that Defendant Ruder searched (or caused a search of) their property, Plaintiffs fail to allege facts plausibly suggesting that they were "seized" or subjected to excessive force during the search that occurred on September 6, 2007.  Second, because Plaintiffs fail to sufficiently respond to Defendant Ruder's third argument, Defendant Ruder's burden with regard to that argument is modest; again, while Defendant Ruder met that modest burden with regard to his third argument, the Court would accept that argument even if it were to subject that argument to the more rigorous scrutiny appropriate for a contested motion.  Third, while the Court finds that numerous reasons exist to dismiss this claim, the Court finds that none of those reasons is the first argument offered by Defendant Ruder, for the reasons stated above in Part III.D.3.b. of this Decision and Order.

g.     **Malicious-Prosecution Claim**

As indicated above in Part III.D.2. of this Decision and Order, in support of his motion, Defendant Ruder argues that Plaintiffs' malicious-prosecution claim against him should be dismissed for three reasons: (1) Plaintiffs have not alleged facts plausibly suggesting that

Defendant Ruder initiated Administrative Enforcement Proceeding No. E2007-047; (2) in any

event, Plaintiffs have not alleged facts plausibly suggesting that Defendant Ruder was aware of

the prior settlement agreement sufficient for him to be said to have lacked probable cause for any

such initiation; and (3) in any event, Plaintiffs have not alleged facts plausibly suggesting that

Administrative Enforcement Proceeding No. E2007-047 terminated in their favor.  (Dkt. No. 52,

Attach. 1, at 30-32 [attaching pages "23" through "25" of Def. Ruder's Memo. of Law].)

Generally, Plaintiffs oppose this argument on the following two grounds: (1) Plaintiffs have

alleged facts plausibly suggesting a lack of probable cause for Administrative Enforcement

Proceeding No. E2007-047; and (2) Plaintiffs have alleged facts plausibly suggesting that

Administrative Enforcement Proceeding No. E2007-047 terminated in their favor.  (Dkt. No. 56,

Attach. 3, at 42-46 [attaching pages "30" through "34" of Plfs.' Opp'n Memo. of Law]; Dkt. No.

56, Attach. 4, at 1 [attaching page "35" of Plfs.' Opp'n Memo. of Law].)  Plaintiffs do not appear

to specifically respond to Defendant Ruder's argument that Plaintiffs have not alleged facts

plausibly suggesting that Defendant Ruder initiated Administrative Enforcement Proceeding No.

E2007-047 against them.  (*Id.*)  Generally, in reply, Defendant Ruder argues that Plaintiffs'

responsive arguments are merely conclusory in nature, devoid of references to any factual

allegations in their Complaint.  (Dkt. No. 68, at 20 [attaching page "16" of Def. Ruder's Reply

Memo. of Law].)

     After carefully considering the matter, the Court rejects Defendant Ruder's second and

third arguments.  The Court adds two points.  First, with regard to Defendant Ruder's second

argument, Plaintiffs have alleged facts plausibly suggesting that, at the time he sent an email

communication in March 2007 directing Defendant Miller to commence a new enforcement

action against Plaintiffs, Defendant Ruder knew of the existing settlement agreement at issue in

this action.  (*See, e.g.,* Dkt. No. 1, Attach. 1, at 17-18 [attaching Ex. C to Plfs.' Compl.,

referencing a "letter" sent to Plaintiffs in November of 2006 agreeing to not exercise jurisdiction

over the dispute].)  In any event, such knowledge is of little materiality to the element of whether

probable cause for the proceeding actually existed.  Second, with regard to Defendant Ruder's

third argument, Plaintiffs do allege that Administrative Enforcement Proceeding No. E2007-047

terminated in their favor.  (Dkt. No. 1, at ¶¶ 238, 255.)  Whether or not that favorable termination

actually occurred depends on documents that may not be considered on Defendant Ruder's

motion to dismiss for failure to state a claim, for the reasons discussed above in Part III.A.3.h. of

this Decision and Order.

However, the Court accepts Defendant Ruder's first argument for the reasons stated in

his memoranda of law.  The Court adds one point.  Because Plaintiffs fail to sufficiently respond

to this argument, Defendant Ruder's burden with regard to that argument is modest; again, while

Defendant Ruder has met that modest burden with regard to that argument, the Court would

accept the argument even if it were to subject it to the more rigorous scrutiny appropriate for a

contested motion.

### h.       Abuse-of-Process Claim

As indicated above in Part III.D.2. of this Decision and Order, in support of his motion,

Defendant Ruder argues that Plaintiffs' abuse-of-process claim against him should be dismissed

for two reasons: (1) use of process in a civil proceeding cannot give rise to a Section 1983 abuse-

of-process claim; and (2) in any event, based on the factual allegations of the Complaint, there

was no regularly issued process that was used by Defendant Ruder, after the commencement of

the proceeding, to compel Plaintiffs to do or forbear from some act.  (Dkt. No. 52, Attach. 1, at

33-35 [attaching pages "26" through "28" of Def. Ruder's Memo. of Law].)  Generally,

Plaintiffs oppose this argument on the ground that, with regard to all of their abuse-of-process

claims, Plaintiffs have alleged (for example, in Paragraph 276 of their Complaint) facts plausibly

suggesting that, when Defendant Ruder employed the regularly issued processes in question, he

intended to harm Plaintiffs without excuse or justification, and he used the processes in a

perverted manner to obtain a collateral objective that is outside the legitimate ends of the

processes.  (Dkt. No. 56, Attach. 4, at 1-4 [attaching pages "35" through "38" of Plfs.' Opp'n

Memo. of Law].)  Generally, in reply, Defendant Ruder argues that Plaintiffs' responsive

arguments are merely conclusory in nature, devoid of any applicable case law or references to

any factual allegations in their Complaint.  (Dkt. No. 68, at 20-21 [attaching pages "16" and "17"

of Def. Ruder's Reply Memo. of Law].)

After carefully considering the matter, the Court accepts Defendant Ruder's argument for

the two reasons stated in his initial memorandum of law.  The Court adds one point: the first

reason stated by Defendant Ruder applies to only Plaintiffs' federal abuse-of-process claim, not

their state abuse-of-process claim.

### i.  Intentional-Infliction-of-Emotional-Distress Claim

As indicated above in Part III.D.2. of this Decision and Order, in support of his motion,

Defendant Ruder argues that Plaintiffs' intentional-infliction-of-emotional-distress claim against

him should be dismissed for two reasons: (1) the absence of factual allegations plausibly

suggesting the first element of such a claim (i.e., extreme and outrageous conduct); and (2) the

presence of merely conclusory allegations regarding the remaining three elements of such a

claim (i.e., intent to cause severe emotional distress, a causal connection between the conduct

and the injury, and severe emotional distress).  (Dkt. No. 52, Attach. 1, at 35-36 [attaching pages

"28" and "29" of Def. Ruder's Memo. of Law].)  Generally, in their opposition memorandum of

law, Plaintiffs do not appear to specifically address Defendant Ruder's arguments regarding this claim. (*See generally* Dkt. No. 56, Attach. 3-4 [Plfs.' Opp'n Memo. of Law].)  Generally, in reply, Defendant Ruder argues that Plaintiffs' opposition memorandum of law fails to even attempt to address the above-described pleading deficiencies in this claim.  (Dkt. No. 68, at 21 [attaching page "17" of Def. Ruder's Reply Memo. of Law].)

After carefully considering the matter, the Court agrees that this claim should be dismissed.  The Court adds three points.  First, because Plaintiffs fail to sufficiently respond to Defendant Ruder's arguments for the dismissal of this claim, Defendant Ruder's burden with regard to that argument is modest; Defendant Ruder has met that modest burden with regard to both of his arguments.  Second, while the Court ultimately agrees with Defendant Ruder that this claim should be dismissed, the Court notes the grounds for that dismissal present a close call. For example, while the Court agrees with Defendant Ruder that Plaintiff Douglas do not allege facts plausibly suggesting that he experienced emotional distress that was *severe* in nature, he does allege facts plausibly suggesting that he suffered at least some emotional distress.  (*See, e.g.,* Dkt. No. 1, at ¶¶ 236, 243, 248.)[41]  Third, while the Court agrees with Defendant Ruder that the alleged conduct does not rise to the level of being "beyond all bounds of possible decency" and "atrocious," the Court respectfully disagrees with him that the conduct in which he is alleged to have engaged (i.e., knowingly encouraging, if not directing, an administrative agency to disregard a prior settlement agreement with a property owner, and offering to assist, if not actually assisting, that agency in doing so) is "very common place" and "lauded" in our society.

---

[41]      As the Court found in Part III.B.3.g. of this Decision and Order, a corporate Plaintiff such as the Douglas Corporation cannot suffer emotional distress.

### j.    Prima-Facie-Tort Claim

As indicated above in Part III.D.2. of this Decision and Order, in support of his motion, Defendant Ruder argues that Plaintiffs' prima-facie-tort claim against him should be dismissed for two reasons: (1) Plaintiffs have failed to allege facts plausibly suggesting any exclusively malicious intent possessed by Defendant Ruder to inflict harm on Plaintiffs; and (2) Plaintiffs have failed to allege facts plausibly suggesting any specific special damages resulting from Defendant Ruder's alleged intentional infliction of harm on Plaintiffs.  (Dkt. No. 52, Attach. 1, at 36-37 [attaching pages "29" and "30" of Def. Ruder's Memo. of Law].)  Generally, in their opposition memorandum of law, Plaintiffs do not appear to specifically address Defendant Ruder's arguments regarding this claim.  (*See generally* Dkt. No. 56, Attach. 3-4 [Plfs.' Opp'n Memo. of Law].)  Generally, in reply, Defendant Ruder argues that Plaintiffs' opposition memorandum of law fails to even attempt to address the above-described pleading deficiencies in this claim.  (Dkt. No. 68, at 21 [attaching page "17" of Def. Ruder's Reply Memo. of Law].)

After carefully considering the matter, the Court accepts both of Defendant Ruder's reasons for the dismissal of this claim.  With regard to the first reason offered by Defendant Ruder, the Court finds that, liberally construed, the Complaint alleges facts plausibly suggesting that Defendant Ruder acted solely to restrict the needed, environmentally compatible development of the relevant area of the Adirondack State Park by Plaintiffs so that he could personally enjoy it exclusively.  (Dkt. No. 1, at ¶¶ 75-76, 137.)  Granted, the Court finds that these factual allegations plausibly a motivation other than one simply to protect the environment. *SRW Assoc.*, 517 N.Y.S.2d at 744 (motivation was, in part, protecting neighborhood from development).  However, the Court is persuaded by cases explaining that even seven selfish motives, such as "profit" and "self-interest," defeat a cause of action for prima facie tort.  *Squire Records, Inc.*, 268 N.Y.S.2d at 253-54.

With regard to the second reason offered by Defendant Ruder, the Court finds that, even when construed with the utmost of special liberality, the Court is unable to find special damages alleged consisting of a specific and measurable loss that is ordinarily not able to be recovered through a traditional tort claim.  *See, e.g., Squire Records*, 19 N.Y.2d at 798-99 (finding that complaint sufficiently alleged special damages for purposes of prima facie tort claim, where it named specific customers lost).  For example, the Court notes that the physical, psychological, or financial demands of defending the second enforcement proceeding does not appear to be enough.  *See, e.g., Cardo*, 817 N.Y.S.2d at 317 (ruling that condominium board failed to establish a cause of action for prima facie tort, absent allegations of special damages beyond the physical, psychological or financial demands of defending the lawsuit by condominium owner seeking judgment declaring invalid an assessment imposed by the board).

### k.      Retaliation Claim

As indicated above in Part III.D.2. of this Decision and Order, in support of his motion, Defendant Ruder argues that Plaintiffs' retaliation claim against him should be dismissed for two reasons: (1) Defendant Ruder's were sufficiently serious to chill Plaintiffs' speech for purposes of the First Amendment, and (2) any such adverse action was taken because of Plaintiffs' protected speech, as opposed to being taken for some other, legitimate reason.  (Dkt. No. 52, Attach. 1, at 38 [attaching page "31" of Def. Ruder's Memo. of Law].)  Plaintiffs' opposition memorandum of law appears devoid of any response to this argument.  (Dkt. No. 56, Attach. 3-4 [Plfs.' Opp'n Memo. of Law].)  Generally, in reply, Defendant Ruder appears to argue that Plaintiffs' opposition memorandum of law fails to even attempt to address the above-described pleading deficiencies in this claim.  (Dkt. No. 68, at 19-22 [attaching pages "15" through "18" of Def. Ruder's Reply Memo. of Law].)

106

After carefully considering the matter, the Court agrees with Defendant Ruder for the reasons stated by him in his memoranda of law.  The Court adds one point.  Because Plaintiffs fail to sufficiently respond to Defendant Ruder's argument, Defendant Ruder's burden with regard to the argument is modest; again, while Defendant Ruder has met that modest burden with regard to that argument, the Court would accept that argument even if it were to subject that argument to the more rigorous scrutiny appropriate for a contested motion for the reasons stated Defendant Ruder's memoranda of law.

### l.     Conspiracy Claim

As indicated above in Part III.D.2. of this Decision and Order, in support of his motion, Defendant Ruder argues that Plaintiffs' conspiracy claim against him should be dismissed because (1) due to the dismissal of Plaintiffs' other constitutional claims, there were constitutional violations in which Defendant Ruder could have conspired, and (2) Plaintiffs have failed to allege facts plausibly suggesting either an agreement between the APA Defendants and Defendant Ruder to act together to inflict constitutional injury or an overt act taken by Defendant Ruder in furtherance of that conspiracy.  (Dkt. No. 52, Attach. 1, at 38 [attaching pages "31" and "32" of Def. Ruder's Memo. of Law].)  Plaintiffs' opposition memorandum of law appears devoid of any response to this argument.  (Dkt. No. 56, Attach. 3-4 [Plfs.' Opp'n Memo. of Law].)  Generally, in reply, Defendant Ruder appears to argue that Plaintiffs' opposition memorandum of law fails to even attempt to address the above-described pleading deficiencies in this claim.  (Dkt. No. 68, at 19-20 [attaching pages "15" and "16" of Def. Ruder's Reply Memo. of Law].)

After carefully considering the matter, the Court must reject Defendant Ruder's argument with regard to Plaintiffs' Section 1983 conspiracy claim against him, for the reasons stated above in Part III.B.3.k. of this Decision and Order. The Court adds only that there does, in fact, remain another constitutional claim against Defendant Ruder (i.e., a substantive due process claim).

However, the Court agrees that Plaintiffs' Section 1985 conspiracy claim against Defendant Ruder should be dismissed, for the reasons stated above in Parts III.A.3.k. and III.B.3.k. of this Decision and Order.

### m.   Attempted Incorporation of Other Parties' Arguments

As indicated above in Part III.D.2. of this Decision and Order, in support of his motion, Defendant Ruder attempts to incorporate by reference all of the grounds for dismissal asserted by the APA Defendants and the AC Defendants in their respective memoranda of law. (Dkt. No. 52, Attach. 1, at 40 [attaching page "33" of Def. Ruder's Memo. of Law].)

The Court rejects this attempt for two reasons. First, it is violative of the page limitation on memoranda of law established by Local Rule 7.1(b)(1). *See, supra,* note 32 of this Decision and Order. The Court notes that Defendant Ruder's memorandum of law is already 34 pages in length.[42] While Defendant Ruder was granted leave to file a memorandum of law of 65 pages in length (*see* Text Order filed May 28, 2010), permitting the incorporation attempted would balloon the effective length of that memorandum of law to some 171 pages.

Second, Defendant Ruder qualifies his request by stating that it is made "to the extent [the other parties' arguments] . . . are not in conflict with the [arguments] set forth [in his own memorandum of law]." (Dkt. No. 52, Attach. 1, at 40 [attaching page "33" of Def. Ruder's

---

[42]     It appears that Defendant Ruder's memorandum of law is not double spaced, but one-and-a-half spaced. If that is the case, defense counsel is respectfully reminded of Local Rule 10.1(a)(3) during future filings.

Memo. of Law].)  It is neither the Court's function nor Plaintiffs' duty to hazard a guess as to

which of those numerous arguments are "in conflict" with Defendant Ruder's arguments.

### n.      Purported Impact of Ruling on "System of Government"

As indicated above in Part III.D.2. of this Decision and Order, in support of his motion,

Defendant Ruder argues that Plaintiffs' claims against him should be dismissed on the

alternative ground that permitting any of Plaintiffs' claims to survive Defendant Ruder's motion

to dismiss would "fundamentally . . . conflict with our entire system of government."  (Dkt. No.

52, Attach. 1, at 44 [attaching page "33" of Def. Ruder's Memo. of Law].)

The Court rejects that argument.  Under the circumstances, an appeal to the "the policies

and principles embodied in . . . [our system of] government" would lead as likely to a result in

favor of Plaintiffs as it would to a result in Defendant Ruder's favor.

Finally, the Court notes that one of the attorneys appearing for Defendant Ruder in this

action is listed on the letterhead of one or more documents in the record as a director of the

Adirondack Council.  Now that Plaintiffs' claims arising from Defendant Ruder's alleged

promise of his legal team's assistance to the Adirondack Council have not been dismissed,

defense counsel is respectfully reminded of any obligations that he may have under Rule 3.7 of

the New York State Rules of Professional Conduct, should they happen to apply under the

circumstances.  *See* N.Y. Rule of Prof. Conduct 3.7(a); *cf.* N.Y. Rule of Prof. Conduct

3.4(d)(2),(3).

### E.      Plaintiffs' Cross-Motion for Leave to Amend Their Complaint Pursuant to Fed. R. Civ. P. 15(a)(2)

### 1.      Plaintiffs' Proposed Amended Claims

As stated above in Part I of this Decision and Order, Plaintiffs' proposed Amended

Complaint (1) adds a request for prospective injunctive relief to the Thirteenth Cause of Action

in their original Complaint (asserting a claim for retaliation pursuant to the First Amendment and

42 U.S.C. § 1983), (2) adds a claim against the AC Defendants, Defendant Hawkeye and

Defendant Ruder for tortious interference with contract (in violation of state law), and (3) adds a

claim against all Defendants for failure to prevent a conspiracy and wrongful acts (pursuant to 42

U.S.C. §§ 1985, 1986).  (Dkt. No. 56, Attach. 18-19.)

    Otherwise, the proposed Amended Complaint makes only minor edits to the factual

allegations giving rise to Plaintiffs' claims.  For example, the proposed Amended Complaint

changes the term "Complaint" to "Amended Complaint."  (*See, e.g.,* Dkt. No. 58, Attach. 18, at

¶¶ 14, 16, 20, 22, 25, 57, 172.)  It changes to lowercase the spelling of the word "complaint" in

reference to an administrative complaint filed by the APA Defendants.  (*Id.* at ¶ 122.)  It adds

more information regarding the non-jurisdictional letter issued in November of 2006.  (*Id.* at ¶

94.)  It deletes a citation to the ex parte rules allegedly violated by the APA Defendants.  (*Id.* at ¶

154.)  It also deletes an allegation that the APA Defendants filed the criminal complaint against

Plaintiff Douglas in a retaliatory fashion.  (*Id.* at 182.)

## 2.    Parties' Arguments Regarding Plaintiffs' Cross-Motion

    Generally, in support of their cross-motion to amend, Plaintiffs argue that they should be

allowed to amend their Complaint because in their proposed Amended Complaint Plaintiffs

allege all of the elements of a claim for tortious interference with a contract (none of which is

that Defendants procured the breach without justification).  (Dkt. No. 56, Attach. 4, at 16-20

[attaching pages "50" through "54" of Plfs.' Memo. of Law].)  Their memorandum of law is

devoid of (1) any argument regarding their proposed expansion of their retaliation claim, (2) any

argument regarding their addition of a claim for failure to prevent a conspiracy and wrongful

acts, and (3) any discussion of the legal standard governing a motion to amend a complaint.  (*Id.*)

Generally, in opposition to Plaintiffs' cross-motion to amend, the APA Defendants argue that Plaintiffs' cross-motion should be denied as futile for the following two reasons: (1) the proposed Amended Complaint does not correct the pleading deficiencies in the original Complaint (including the deficiencies in the equal protection claim, due process claim, malicious-prosecution claim, abuse-of-process claim, unlawful-search claim, and supervisory-liability claim); and (2) there can be no claim under 42 U.S.C. § 1986 without a viable claim under 42 U.S.C. § 1985 (which, here, there is not).  (Dkt. No. 65, at 5-7, 13-22 [attaching pages "1" through "3," and pages "9" through "18," of APA Defs.' Opp'n Memo. of Law].)

Generally, in opposition to Plaintiffs' cross-motion to amend, the AC Defendants argue that Plaintiffs' cross-motion should be denied as futile for the following three reasons: (1) the proposed Amended Complaint does not correct the pleading deficiencies in the original Complaint (including the deficiencies in their retaliation claim); (2) Plaintiffs' proposed new claim for tortious interference with contract is barred by (a) the *Noerr-Pennington* Doctrine, (b) New York Civil Rights Law §§ 70-a and 76-a, and/or (c) the absence of any factual allegations plausibly suggesting that the AC Defendants' efforts to have government officials enforce environmental laws were "improper" or "without justification"; and (3) Plaintiffs' proposed new claim for violation of 42 U.S.C. § 1986 is barred by (a) the *Noerr-Pennington* Doctrine and/or (b) the fact that there can be no claim under 42 U.S.C. § 1986 without a viable claim under 42 U.S.C. § 1985 (which, here, there is not).  (Dkt. No. 67, at 5, 12-14 [attaching page "1," and pages "8" through "10," of the AC Defs.' Opp'n Memo. of Law].)

Generally, in opposition to Plaintiffs' cross-motion to amend, Defendant Ruder argues as follows: (1) while he "is not opposing the amendment of the complaint to include the tortious interference claim," he "reserves any rights that may exist to contest the sufficiency of the

tortious interference claim should an amendment be allowed"; and (2) Plaintiffs' proposed claim under 42 U.S.C. § 1986 is deficient because, as Defendant Ruder previously argued in his motion to dismiss, no conspiracy claim against him exists under either 42 U.S.C. § 1983 or 42 U.S.C. § 1985.  (Dkt. No. 68, at 22 [attaching page "18" of Def. Ruder's Opp'n Memo. of Law].)

Generally, in opposition to Plaintiffs' cross-motion to amend, Defendant Hawkeye argues as follows: (1) the proposed Amended Complaint does not correct the pleading deficiencies in the original Complaint (including a failure to allege any facts plausibly suggesting that Defendant Hawkeye was a state actor or engaged in conduct that would violate 42 U.S.C. § 1983); and (2) Plaintiffs' new proposed claims suffer from the same pleading deficiencies that plagued their original claims.  (Dkt. No. 58, at ¶¶ 3-4 [Def. Hawkeye's Opp'n Affid.].)

### 3.    Procedural Posture of Plaintiffs' Proposed Amended Complaint

As an initial matter, a few words are necessary regarding the procedural posture of Plaintiffs' proposed Amended Complaint.  The AC Defendants have stated that, under the circumstances, Plaintiffs were free to file an Amended Complaint "as a matter of right."  (Dkt. No. 67, at 13, n.3 [attaching page "9" of the AC Defs.' Opp'n Memo. of Law].)

While a plaintiff has a right to amend its pleading once "as a matter of course" within a certain period of time after the service of a motion to dismiss filed under Fed. R. Civ. P. 12(b), that period of time is only 21 days.  Fed. R. Civ. P. 15(a)(1)(B).  Here, the APA Defendants' motion to dismiss was served on June 1, 2010; the AC Defendants' motion to dismiss was served on June 1, 2010; Defendant Hawkeye's motion to dismiss was served on June 1, 2010; and Defendant Ruder's motion to dismiss was served on July 15, 2010.  (Dkt. Nos. 41, 44, 45, 53.) However, Plaintiffs' Amended Complaint was not filed until August 16, 2010–76 days after the first three motions were served, and 32 days after the fourth motion was served.  (Dkt. No. 56.)

As a result, Plaintiffs may not file their Amended Complaint "as a matter of course"; rather, before Plaintiffs' Amended Complaint is accepted for filing, Plaintiffs must either (1) obtain "the opposing party's written consent" to the amendment or (2) receive the leave of the Court to file the amendment.  Fed. R. Civ. P. 15(a)(2).

Here, all Defendants have opposed Plaintiffs' (1) new request for prospective injunctive relief with regard to their retaliation claim, and (2) new claim pursuant to 42 U.S.C. § 1986.  *See, supra,* Part III.E.2. of this Decision and Order.  As a result, before Plaintiffs may assert those two new claims in this action, Plaintiffs must receive the leave of the Court to file the amendment pursuant to Fed. R. Civ. P. 15(a)(2).

However, with regard to Plaintiffs' remaining proposed new claim (for tortious interference with contract), the AC Defendants and Defendant Ruder have attempted to walk a fine line between agreeing to that proposed amendment "on procedural grounds" (apparently due to their prior agreement in a related state court action to permit Plaintiffs to stay their pursuit of that claim in that action and assert it in this action) and opposing that proposed amendment on the ground of pleading deficiencies contained in it.[43]  In effect, they have waived a right to discuss the issues of undue delay, bad faith, dilatory motive, and undue prejudice identified above in Part II.D. in this Decision and Order, while focusing on the futility issue.

Granted, Defendant Ruder does not specify his challenge to the pleading sufficiency of Plaintiffs' tortious-interference-with-contract claim, attempting to "reserve" his right to do so at

---

[43]      (Dkt. No. 67, at 13 [attaching page "9" of the AC Defs.' Opp'n Memo. of Law, arguing that, while the AC Defendants "do not oppose this cross-motion on procedural grounds," they oppose that cross-motion on the ground that the claims asserted therein are "deficient as a matter of law"]; Dkt. No. 68, at 22 [attaching page "18" of Def. Ruder's Opp'n Memo. of Law, arguing that, while Ruder "is not opposing the amendment of the complaint to include the tortious interference claim," he "reserves any rights that may exist to contest the sufficiency of the tortious interference claim should such an amendment be allowed"].)

a future time, "should an amendment be allowed."[44]  For the sake of brevity, the Court will not

linger on whether a defendant can place such a condition on his "written consent" to an

amendment under Fed. R. Civ. P. 15(a)(2).[45]  Nor will the Court linger on the fact that, by

recognizing that the amendment in question must be "allowed" by the Court in order to occur,

Defendant Ruder has indicated his understanding that the filing of that claim is by motion

pursuant to Fed. R. Civ. P. 15(a)(2), not by consent pursuant to Fed. R. Civ. P. 15(a)(1).  More

important is the fact that the AC Defendants and Defendant Hawkeye have specified their

challenges to the pleading sufficiency of Plaintiffs' tortious-interference-with-contract claim.

*See, supra,* Part III.E.2. of this Decision and Order.

As a result, the Court will address the pleading sufficiency of Plaintiffs' proposed

tortious-interference-with-contract claim (along with the pleading sufficiency of their other

proposed claims).

### 4.    Court's Findings and Conclusions

After carefully considering the matter, the Court finds that the proposed Amended

Complaint does not correct the pleading deficiencies described above in Parts III.A. through

III.D. of this Decision and Order.  Moreover, the Court agrees that Plaintiffs' proposed request

for prospective injunctive relief with regard to their retaliation claim is futile for the reasons

offered by Defendants in their opposition memoranda of law (and the reasons offered by the

Court above in Parts III.A.3.g., III.B.3.l., III.C.3.f., and III.D.3.k. of this Decision and Order).

Furthermore, the Court agrees that Plaintiffs' proposed conspiracy claim against Defendants

---

[44]      *See, supra,* note 43 of this Decision and Order.

[45]      *Cf. Kamanou v. Exec. Sec'y of Com'n of Econ. Cmty. of W. African States*, 10-CV-7286, 2012 WL 868700, at *3, n.3 (S.D.N.Y. March 14, 2012) ("Plaintiff's attempt to condition her consent to dismiss claims on the Court's granting her informal request for leave to amend is wholly improper.").

pursuant to 42 U.S.C. § 1986 is futile for the reasons offered by Defendants in their opposition memoranda of law (and the reasons offered by the Court above in Parts III.A.3.k., III.B.3.k., III.C.3.e., and III.D.3.l. of this Decision and Order).

However, the Court disagrees with Defendants that Plaintiffs' proposed tortious-interference-with-contract claim against the AC Defendants, Defendant Hawkeye and Defendant Ruder (in violation of state law) is defective due to (a) the *Noerr-Pennington* Doctrine, (b) New York Civil Rights Law §§ 70-a and 76-a, and/or (c) the absence of any factual allegations plausibly suggesting that those Defendants' efforts to have government officials enforce environmental laws were "improper" or "without justification," for the reasons offered by the Court above in this Decision and Order.  *See, e.g.,* Parts III.B.3.b., III.B.3.d., and III.D.3.a. of this Decision and Order.

For all of these reasons, the Court grants in part, and denies in part, Plaintiffs' motion for leave to file an Amended Complaint.  For the sake of expediency, the Court will not direct Plaintiffs to file an Amended Complaint that comports will all of the rulings contained in this Decision and Order.  Rather, Plaintiffs' shall promptly file a signed, unmarked-up copy of their current Amended Complaint.  Upon that filing, the following claims shall be deemed dismissed from that Amended Complaint without further Order of the Court: (1) the request for prospective injunctive relief contained in their retaliation claim; (2) Plaintiffs' conspiracy claim against Defendants pursuant to 42 U.S.C. § 1986; and (3) all of the claims that were dismissed by the Court in Parts III.A. through III.D. of this Decision and Order.

**ACCORDINGLY,** it is

**ORDERED** that the APA Defendants' motion to dismiss and/or disqualify counsel (Dkt.

No. 40) is **GRANTED in part and DENIED in part**, such that the APA Defendants' motion to

disqualify counsel is **DENIED** and only the following claims against the APA Defendants are

**DISMISSED**:

(1) Plaintiffs' claims for damages against the APA Defendants in their official capacities;

(2) Plaintiffs' claims against the Adirondack Park Agency under 42 U.S.C. § 1983;

(3) Plaintiffs' claims against Defendants Stiles and Wray to the extent they arise from the

factual allegations asserted in Paragraphs 129 and 190 of Plaintiffs' Complaint;

(4) Plaintiffs' claims against Defendants Van Cott and Banta to the extent they are arise

from their prosecution of Administrative Enforcement Proceeding No. E2007-047, as

referenced in Paragraphs 99, 100, 103, 111, 115, 183, 198 and 199 of Plaintiffs'

Complaint;

(5) Plaintiffs' claims against Defendants APA, Banta, Stiles, and Wray arising from the

factual allegations asserted in Paragraph 156 of Plaintiffs' Complaint;

(6) Plaintiffs' due-process claims against the APA Defendants to the extent that they are

premised on acts of retaliation and/or unlawful search and seizure;

(7) Plaintiffs' procedural-due-process claims against the APA Defendants;

(8) Plaintiffs' equal-protection claims against the APA Defendants;

(9) Plaintiffs' retaliation claims against the APA Defendants;

(10) Plaintiffs' claims against the APA Defendants for malicious prosecution arising

from the criminal complaint lodged against Plaintiff Douglas;

116

(11) Plaintiffs' federal abuse-of-process claims arising from Administrative Enforcement

Proceeding No. E2007-047;

(12) Plaintiffs' wrongful-seizure claim against the APA Defendants;

(13) Plaintiffs' claim against the APA Defendants for class-based conspiracy pursuant to

42 U.S.C. § 1985;

(14) Plaintiffs' state-law claim against the APA Defendants for malicious prosecution of

an APA enforcement proceeding;

(15) Plaintiffs' state-law claim against the APA Defendants for abuse of process in an

APA enforcement proceeding and criminal action;

(16) Plaintiffs' state-law claim against the APA Defendants for intentional/reckless

supervisory misconduct;

(17) Plaintiffs' state-law claim against the APA Defendants for intentional/reckless

infliction of emotional distress; and

(18) Plaintiffs' state-law claim against the APA Defendants for prima facie tort;[46] and it

is further

---

[46]      All other claims against the APA Defendants listed in Part III.A.1.of this Decision
and Order survive the APA Defendants' motion to dismiss.  More specifically, surviving are
Plaintiffs' following six claims against the APA Defendants to the extent they are asserted
against them either in their individual capacities or in an effort to obtain injunctive relief (*except*
any federal claims against the APA, any claims against Defendants Stiles and Wray arising from
Paragraphs 129 and 190 of the Complaint, any claims against Defendants Van Cott and Banta
arising from their prosecution of Administrative Enforcement Proceeding No. E2007-047, and
any claims against Defendants APA, Banta, Stiles, and Wray arising from Paragraph 156 of the
Complaint): (1) Plaintiffs' substantive-due-process claim; (2) Plaintiffs' federal malicious-
prosecution claim arising from Administrative Enforcement Proceeding No. E2007-047; (3)
Plaintiffs' federal abuse-of-process claims arising from their criminal prosecution; (4) Plaintiffs'
unlawful-search claim; (5) Plaintiffs' conspiracy claim pursuant to 42 U.S.C. § 1985; and (6)
Plaintiffs' state-law claim for breach of contract.

**ORDERED** that the AC Defendants' motion to dismiss (Dkt. No. 42) is **GRANTED in part and DENIED in part**, such that only the following claims against the AC Defendants are **DISMISSED**:

(1) Plaintiffs's federal claim against the AC Defendants for malicious prosecution;

(2) Plaintiffs' state-law claim against the AC Defendants for malicious prosecution;

(3) Plaintiffs' federal claims against the AC Defendants for abuse of process;

(4) Plaintiffs' state-law claims against the AC Defendants for abuse of process;

(5) Plaintiffs' claim against the AC Defendants for intention/reckless infliction of emotional harm;

(6) Plaintiffs' claim against the AC Defendants for prima facie tort;

(7) Plaintiffs' claim against the AC Defendants for selective enforcement;

(8) Plaintiffs' claim against the AC Defendants for unlawful search and seizure;

(9) Plaintiffs' claim against the AC Defendants for conspiracy pursuant to 42 U.S.C. § 1985; and

(10) Plaintiffs' claim against the AC Defendants for conspiracy;[47] and it is further

**ORDERED** that Defendant Hawkeye's motion to dismiss (Dkt. No. 43) is **GRANTED**, such that the following claims against Defendant Hawkeye are **DISMISSED**:

(1) Plaintiffs' claims against Defendant Hawkeye for selective enforcement;

---

[47]    All other claims against the AC Defendants listed in Part III.B.1.of this Decision and Order survive the AC Defendants' motion to dismiss (along with the surviving claim described in Part III.E. of this Decision and Order).  More specifically, surviving are Plaintiffs' following three claims against the AC Defendants: (1) Plaintiffs' substantive-due-process claim; (1) Plaintiffs' conspiracy claim pursuant to 42 U.S.C. § 1983; and (3) Plaintiffs' state-law tortious-interference-with-contract claim.

(2) Plaintiffs' claim against Defendant Hawkeye for unlawful search and seizure;

(3) Plaintiffs' claim against Defendant Hawkeye for malicious prosecution;

(4) Plaintiffs' claim against Defendant Hawkeye for abuse of process;

(5) Plaintiffs' claims against Defendant Hawkeye for conspiracy pursuant to 42 U.S.C. §

1983 and 42 U.S.C. § 1985;

(6) Plaintiffs' claims against Defendant Hawkeye for retaliation; and

(7) Plaintiffs' state-law claims against Defendant Hawkeye;

(8) Plaintiffs' procedural-due-process claim against Defendant Hawkeye;[48] and it is

further

**ORDERED** that Defendant Ruder's motion to dismiss (Dkt. No. 52) is **GRANTED in**

**part and DENIED in part**, such that only the following claims against Defendant Ruder are

**DISMISSED**:

(1) Plaintiffs' claim against Defendant Ruder for unlawful search and seizure;

(2) Plaintiffs' claim against Defendant Ruder for malicious prosecution arising from the

criminal proceeding;

(3) Plaintiffs' claim against Defendant Ruder for abuse of process arising from the

criminal proceeding;

(4) Plaintiffs' procedural-due-process claims against Defendant Ruder;

(5) Plaintiffs' claim against Defendant Ruder for selective enforcement;

---

[48]    All other claims against Defendant Hawkeye listed in Part III.C.1.of this Decision
and Order survive Defendant Hawkeye's motion to dismiss (along with the surviving claim
described in Part III.E. of this Decision and Order).  More specifically, surviving are Plaintiffs'
following two claims against Defendant Hawkeye: (1) Plaintiffs' substantive-due-process claim;
and (2) Plaintiffs' state-law tortious-interference-with-contract claim.

(6) Plaintiffs' claim against Defendant Ruder for malicious prosecution;

(7) Plaintiffs' claim against Defendant Ruder for intentional infliction of emotional distress;

(8) Plaintiffs' claim against Defendant Ruder for prima facie tort;

(9) any of Plaintiffs' remaining state-law claims against Defendant Ruder;

(10) Plaintiffs' claim against Defendant Ruder for retaliation; and

(11) Plaintiffs' claim against Defendant Ruder for conspiracy;[49] and it is further

**ORDERED** that Plaintiffs' cross-motion for leave to amend (Dkt. No. 56) is **GRANTED in part and DENIED in part**, such that Plaintiffs are **GRANTED** leave to file, by 9/18/12, a signed, unmarked-up copy of their current Amended Complaint, at which time the following claims shall be deemed **DISMISSED** from that Amended Complaint without further Order of the Court:

(1) the request for prospective injunctive relief contained in their retaliation claim;

(2) Plaintiffs' conspiracy claim against Defendants pursuant to 42 U.S.C. § 1986; and

(3) all of the claims that were dismissed by the Court in Parts III.A. through III.D. of this Decision and Order; and it is further

**ORDERED** that Defendants file an answer to Plaintiffs' amended complaint within fourteen (14) days from the date it is filed; and it is further

---

[49]   All other claims against Defendant Ruder listed in Part III.D.1.of this Decision and Order survive Defendant Ruder's motion to dismiss (along with the surviving claim described in Part III.E. of this Decision and Order).  More specifically, surviving are Plaintiffs' following three claims against Defendant Ruder: (1) Plaintiffs' substantive-due-process claim; (2) Plaintiffs' conspiracy claim pursuant to 42 U.S.C. § 1983; and (3) Plaintiffs' state-law tortious-interference-with-contract claim.

**ORDERED** that this case is referred back to Magistrate Judge Treece for a Rule 16

conference and the management of pretrial deadlines.

Dated: September 11, 2012
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge